UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-12324-MLW |
| | ) | |
| BIOCHEMICS, INC., JOHN J. MASIZ, CRAIG MEDOFF and GREGORY S. KRONING, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**JOINT REPORT
PURSUANT TO COURT'S 9-12-18 ORDER (Doc. #441)**

Pursuant to the Court's September 12, 2018 Order (Doc. #441), the Parties and ADEC

submit the following:

**I.       9-12-18 ORDER**

The Court by Order dated September 12, 2018 (Doc. #441), directed the Parties and

ADEC to:

**1) By September 21, 2018:**

[C]onfer and report, jointly if possible but separately if necessary, on whether they have reached an agreement to resolve the outstanding issues in this case.  If no agreement has been reached, the report shall state whether the parties and ADEC request until October 2, 2018, to continue their discussions.

**2)  By October 2, 2018**

If the parties and ADEC have not previously reached an agreement, they shall, by October 2, 2018, confer and report again, jointly if possible but separately if necessary, on whether they have reached an agreement to resolve the outstanding issues in this case. If no agreement has been reached, the report shall identify the issues that they request the court decide, and the parties and ADEC shall submit supplemental memoranda concerning their positions on those issues.

3) **October 9, 2018**

If necessary, a hearing shall be held on October 9, 2018 at 2:00PM.

## II.   BIOCHEMICS REPORT

On September 20, 2018 BioChemics, the Commission, and ADEC conferred by phone.  Prior to the call, BioChemics sent a draft statement regarding satisfaction of the liens.  In that draft BioChemics stated:

"BioChemics and Inpellis, and the Masiz Family Interests, acting for themselves and other asserted lienholders, ("BioChemics Sellers") have an agreement to sell all of the intellectual property assets for consideration that includes cash payments of at least $17.2 million and $5 million to enable, with court approval, the transfer of the intellectual property assets free and clear of the government and ADEC liens ("BioChemics Asset Sale").  The agreement allows for, with court approval, partial payments for specific applications of the technology such as acquisition of the technology applied to the transdermal transmission of herb based substances. It is anticipated that there will be by September 28, 2018 at least $1 million, and a date certain, for an additional $4 million, that could be provided to the BioChemics Sellers for the acquisition, with court approval, of the application of the technology to the transmission of herb based substances.

Depending on the state of the BioChemics Asset Sale as of September 28, 2018 and the respective positions of the government and ADEC, BioChemics and Inpellis will express at that time their position as to whether it is appropriate for BioChemics and Inpellis to file under Chapter 11."

Following the call, BioChemics sent a copy of a proposed modification of the proposed transfer of the technology regarding herb based substances that had been previously reviewed by

the Parties regarding previous anticipated transactions concerning that specific application.  In addition, BioChemics sent a copy of the agreement between the "BioChemics Sellers" regarding a sale of the assets.  The purpose of sending the agreement was to demonstrate that the inter-related parties had ordered their affairs to ensure that title when transferred from BioChemics and Inpellis will be accomplished with court approval and appropriate UCC signoff by the government and ADEC ensuring any transfer of title is no longer subject to the liens securing the Judgment and ADEC obligation.  A question was raised whether title had been transferred pursuant to the agreement.  It has not and cannot be transferred.  The agreement explicitly states in Article 2 that: "Title to the Purchased Patents shall transfer … upon delivery of the Transaction Documents … and the payment to the Seller … of the purchase payment".  Unless and until all the Transaction documents which include UCC signoffs by the government and ADEC and the upfront cash payment anticipated, no transfer can take place.  This is not an issue.

### Position Regarding Continued Discussions

The Parties and ADEC did not come to an agreement and several issues have been raised which the Parties and ADEC should continue to discuss.  For that reason, BioChemics believes it is in the interest of the Parties and ADEC to continue their discussions through next week to see based on developments regarding the proposed sale of at least a portion of the assets and the likelihood of additional transactions in the near term whether the Parties and ADEC can come to an agreement on outstanding issues.

## III.   COMMISSION

The Commission is reviewing the documents that it received yesterday from BioChemics.  We had a call with BioChemics' counsel on September 21, 2018 to ask some of our initial questions, and are likely to have additional questions as we continue to review those

materials. The Commission's counsel thinks it would be useful to continue having discussions with BioChemics and ADEC over the next week to see if at least some of the outstanding issues can be resolved, and whether BioChemics will actually obtain the funding that it is expecting to obtain for the contemplated transaction.

## IV.    ADEC

Earlier this week Mr. Schlichtmann spoke by telephone with ADEC's counsel concerning a proposed transaction, which he described as a potential licensing arrangement, in which a counterparty would provide "$1-5 million," through which a patented transdermal pain delivery system would be used to deliver cannabinoids. He did not identify the counterparty, provide transaction documents, describe which intellectual property would and would not be involved, or advise to what extent the technology to be licensed was developed with funds provided to Inpellis by ADEC and the other Inpellis investors. On Thursday afternoon, Mr. Schlichtmann spoke again with counsel for ADEC as well as the SEC. Both parties again requested documentation. Following that call, late on Thursday, Mr. Schlichtmann provided a copy of an executed May, 2018 "IP Purchase and Sale Agreement," ("P&S") and related documents, along with unsigned draft language which, apparently, was intended for the SEC's and ADEC's consideration. No executed or draft licenses were included relating to the proposed cannabinoid application. Rather, the executed P&S represented a promise to convey what appears to be substantially all of the intellectual property estates of each of BioChemics *and Inpellis*, and raises considerable concern for ADEC.

*First,* it is crystal clear from the documents that BioChemics was and still is seeking to convey *property of Inpellis*. Inpellis obtained certain intellectual property through a 2015 Intellectual Property Purchase Agreement and a 2012 License Agreement, each of which

contains broad grants to Inpellis of ownership and development rights in BioChemics patents and "Know-How" directly related thereto. In its November 10, 2015 draft S-1, Inpellis described its intellectual property in broad terms, stating that it was "developing transdermal product candidates for treating pain resulting from musculoskeletal disorders and peripheral neuropathy," and that it has acquired "full or joint ownership of transdermal formulations which utilize the endel™ … transdermal drug delivery system … and to patents, patent applications and know how related to the transdermal delivery system" (emphasis added). Various of the patents proposed to be transferred in the P&S identify at least one person formerly employed by Inpellis as "inventor." The draft IPO language clearly embraces technology included in the May, 2018 P&S, to *which Inpellis was made a party seller*.

*Second*, while counsel has represented that the conveyances contemplated in the May, 2018 documents have not closed, one of the documents provided suggests that assets may *already* have been transferred (either outright or in escrow). ADEC sought clarification on that point on September 21, and has not obtained it.

*Third,* the transaction originally described in the May, 2018 documents is with a new shell company *controlled by the Masiz family*. No written evidence has been provided to ADEC of any effort to market assets to any party at arms' length. The logical inference from what has been provided is that the ultimate equity holders -- who have kept both the SEC and Inpellis creditors at bay for years with promises of a sale process -- have limited their efforts to retaining their ownership.

*Fourth*, no evidence has been provided of a financing commitment, or that the putative buying entity has any access to funds. The passage of time since May, 2018 casts considerable

doubt on the putative buyer's ability ever to close a transaction, even if a transaction were approved by the necessary courts.

*Fifth*, the documentation provided – which contemplates an all-asset sale – is inconsistent with the preliminary transaction described to the Court on September 11 (in which BioChemics/Inpellis would purport to convey some undefined interest, in some *subset* of the intellectual property of the two corporations, in connection with a transdermal cannabinoid application).  How the orally-described transaction fits within the May, 2018 proposed all-asset sale, is not described in any way intelligible to ADEC in the documents provided.  Nor is it clear how such a transaction would protect Inpellis (or BioChemics) as to other applications of the relevant patents and intellectual property.  A significant concern is that, through these arrangements, a Masiz interest could obtain outright ownership of a patent or other property that has value in excess of any cannabinoid application.

*Sixth*, Mr. Schlichtmann has advised that none of the cash provided by the Inpellis Noteholders remains.  ADEC believes that all or part of those funds were swept into BioChemics for use in its own development activities.  The means that both Inpellis and the Noteholders will have claims of constructive trust and conversion against BioChemics and its assets developed with the Noteholder proceeds.

For all of the reasons summarized, ADEC views the current situation as very damaging to the interests of Inpellis and its creditors.  To the extent that any of the current proposals involves Inpellis assets in which ADEC and the Noteholders have security interests, or Inpellis itself, and does not provide for the simultaneous payment in cash of all claims of the Inpellis creditors, ADEC will object to the transactions.  A payment into the Court of a trivial amount of the total

debt owed, in exchange for transfers to insiders of property rights, could gravely injure the

interests of Inpellis, BioChemics, and their respective creditors.

Dated: September 21, 2018

Respectfully submitted by:

**BioChemics**

/s/ Jan R. Schlichtmann
Jan R. Schlichtmann, Esq. (BBO #445900)
Jan R. Schlichtmann Atty At Law
PO Box 233
Prides Crossing, Massachusetts 01965
Telephone: (978) 927-1037
Email: jan@schlichtmannlaw.com
Attorney for BioChemics

**Commission:**

/s/ David H. London
Kathleen Burdette Shields (BBO No. 637438)
David H. London (BBO No. 638289)
Securities and Exchange Commission
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
Telephone: (617) 573-8904 (Shields direct)
Email: shieldska@sec.gov
londond@sec.gov

**ADEC:**

/s/ Elizabeth M. Bresnahan
MORGAN LEWIS & BOCKIUS LLP
P. Sabin Willett
BBO No. 542519
Elizabeth M. Bresnahan
BBO No. 672577
One Federal Street
Boston, MA 02110
Telephone: (617) 341-7700
Facsimile: (617) 341-7701
sabin.willett@morganlewis.com
elizabeth.bresnahan@morganlewis.com

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that, on September 21, 2018 a true and correct copy of the foregoing document was served on counsel for the Commission and ADEC by electronic service through the CM/ECF.

Dated: September 21, 2018

Respectfully submitted,

BioChemics
By its attorney

/s/ Jan R. Schlichtmann
Jan R. Schlichtmann, Esq. (BBO #445900)
Jan R. Schlichtmann Atty At Law
PO Box 233
Prides Crossing, Massachusetts 01965
Telephone: (978) 927-1037
Email: jan@schlichtmannlaw.com

**Electronic Service:**

**Commission:**

Kathleen Burdette Shields (BBO No. 637438)
David H. London (BBO No. 638289)
Securities and Exchange Commission
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
Telephone: (617) 573-8904 (Shields direct)
Email: shieldska@sec.gov
londond@sec.gov

**Counsel For ADEC:**

MORGAN LEWIS & BOCKIUS LLP
P. Sabin Willett
BBO No. 542519
One Federal Street
Boston, MA 02110
Telephone: (617) 341-7700
Facsimile: (617) 341-7701
sabin.willett@morganlewis.com