UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-12324-MLW |
| BIOCHEMICS, INC., JOHN J. MASIZ, CRAIG MEDOFF and GREGORY S. KRONING, | ) ) ) ) ) | |
| Defendants. | ) ) | |

### ~~[REVISED PROPOSED] ORDER~~ APPOINTING RECEIVER

**WHEREAS** this matter has come before this Court upon motion of plaintiff Securities and Exchange Commission ("SEC" or "Commission") to appoint a receiver (the "Motion");

**WHEREAS** defendant BioChemics, Inc. ("BioChemics") and its related party, the Shareholder Resolution Trust ("Trust"), have had the opportunity to be heard; and

**WHEREAS** the Court finds that, based on the record in these proceedings, appointment of a receiver in this action is necessary and appropriate for the purposes of marshalling and liquidating all of the assets of BioChemics and the Trust that are subject to the first priority security interests held by the Commission; and,

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over BioChemics, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. This Court hereby takes exclusive jurisdiction and possession of all property of whatever kind and wherever situated, of defendant BioChemics, Inc., as well as the property of

1

the Shareholder Resolution Trust in which the Commission has first-priority security interests (collectively "Receivership Assets" or "Receivership Estate").

2. Until further Order of this Court, Mark DeGiacomo is hereby appointed to serve without bond as the receiver (the "Receiver") to assume control of, marshal, pursue, and preserve the Receivership Assets with the objective of maximizing the recovery of assets, and, to the extent that assets recovered are inadequate to make defrauded investors whole, ensuring that the distribution of those assets is as just and equitable as practicable.

## I. General Powers and Duties of Receiver

3. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, and managers of BioChemics under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed. R. Civ. P. 66.

4. The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of BioChemics are hereby dismissed and the powers of any partners, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to BioChemics' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of BioChemics and shall pursue and preserve all of its claims.

5. No person holding or claiming any position of any sort with BioChemics or the Trust shall possess any authority to act by or on behalf of any of the Receivership Assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume control of all Receivership Assets.

6. Subject to the specific provisions in Sections II through XIII, below, the Receiver shall have the following general powers and duties:

A. To use reasonable efforts to determine the nature, location and value of all property interests of BioChemics, including, but not limited to, intellectual property, know-how, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which BioChemics owns, possesses, has a beneficial interest in, or controls directly or indirectly (which shall be included in Receivership Assets);

B. To take custody, control, and possession of all Receivership Assets and records relevant thereto from BioChemics and the Trust; and to sue for and collect, recover, receive and take into possession from third parties all Receivership Assets and records relevant thereto;

C. To manage, control, operate and maintain BioChemics while winding it down as quickly as appropriate and to hold in his possession, custody and control all Receivership Assets, pending further Order of this Court;

D. To use Receivership Assets for the benefit of the Receivership, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of BioChemics;

F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G. To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

H. To issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Fed. R. Civ. P. 26(d)(1);

I. To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver after obtaining Court approval;

J. To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted concerning the Receivership Assets; and

K. To take such other action as may be approved by this Court.

## II. Access to Information

7. BioChemics and its past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, BioChemics and/or all Receivership Assets; such information shall include but not be limited to books, records, general ledgers, accounting files, research, documents, accounts and all other instruments and papers.

8. Within 14 days of the entry of this Order, BioChemics shall serve upon the Receiver a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Assets; (b) all employees (and job titles thereof), contractors, officers, directors, trustees, attorneys, accountants and any of its other agents or contractors, including the contact information for all investment banks or other business brokers that it has employed since 2015 to attempt to monetize its assets; (c) the names, addresses and amounts of claims of all known creditors of BioChemics; (d) the names, addresses and electronic contact information for all parties who are known to claim any rights to any Receivership Assets; (e) names, addresses, and most recent contact information for all of the Series E investors known to BioChemics; and (f) the names, addresses and electronic contact information of all individuals and entities that BioChemics, the Trust, or an agent working on their behalf, has contacted in an attempt to

license, sell, lease, transfer, partner with, obtain an investment from, or otherwise enter into a transaction with, any portion of the Receivership Assets.

9. Within 14 days of the entry of this Order, BioChemics and the Trust shall provide to the Receiver copies of their federal income tax returns for the last five years, including all relevant and necessary underlying documentation, and shall also provide copies of all marketing materials, forecasts, technology summaries, business plans or similar documents that BioChemics, the Trust, or any of their agents sent to third parties since 2015 in an attempt to monetize the Receivership Assets.

10. BioChemics and the Trust are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

11. The past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities of BioChemics and the Trust shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of BioChemics and the Trust, or any other matter relevant to the operation or administration of the Receivership or the collection of funds due to BioChemics and the Trust. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make his discovery requests in accordance with the Federal Rules of Civil Procedure.

### III. Access to Books, Records and Accounts

12. The Receiver is authorized to take immediate possession of any bank accounts,

brokerage accounts, or other financial accounts owned by BioChemics or relating to the Receivership Assets. All persons and entities having control, custody or possession of any Receivership Assets are hereby directed to turn such property over to the Receiver.

13. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of the Receivership Assets that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

> A. Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of BioChemics except upon instructions from the Receiver;
>
> B. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court; and
>
> C. Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

### IV. Access to Real and Personal Property

14. The Receiver is authorized to take immediate possession of all personal property of BioChemics, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

15. The Receiver is authorized to take immediate possession of any real property of BioChemics, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the

course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

16. In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. BioChemics, or any other person acting or purporting to act on its behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

17. The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of BioChemics, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

## V. Notice to Third Parties

18. The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of BioChemics, as the Receiver deems necessary or advisable to effectuate the operation of the receivership and to any bank, brokerage firm, or other financial institution that may hold assets of BioChemics.

19. All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to BioChemics shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and his receipt of such payments shall have the same force and effect as if BioChemics had received such payment.

20. In furtherance of his responsibilities in this matter, the Receiver is authorized to

communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Assets. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

21. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of BioChemics (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the BioChemics. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. BioChemics shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual employee of BioChemics, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by BioChemics. BioChemics shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

22. Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to BioChemics shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VI. Injunction Against Interference with Receiver

23. BioChemics, the Trust, and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

    A. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

    B. Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

    C. Dissipate or otherwise diminish the value of Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against any Receivership Assets or BioChemics or the Trust, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by BioChemics or the Trust, or which otherwise affects the Receivership Assets; or,

    D. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Assets.

24. BioChemics and the Trust shall cooperate with and assist the Receiver in the performance of his duties.

25. The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VII. Stay of Litigation

26. As set forth in detail below, the following proceedings -- <u>excluding</u> the instant proceeding, all police or regulatory actions, and actions of the Commission related to the above-captioned enforcement action -- are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) BioChemics or the Trust, including subsidiaries and partnerships; or, (d) any of the past or present officers, directors, managers, agents, or general or limited partners of BioChemics or the Trust sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

[Handwritten margin note: "other than in pella. mw 10/9/18"]

27. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

28. All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of BioChemics or the Trust against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## VIII. Managing Assets

29. The Receiver shall establish one or more custodial accounts at a federally insured bank, to hold all cash-equivalent Receivership Assets and the proceeds from Receivership Assets. The account(s) shall be entitled "Receiver's Account, Estate of BioChemics, Inc." together with the name of this action.

30. Within 90 days of the entry date of this Order the Receiver will develop a plan for the liquidation of the Receivership Assets (the "Liquidation Plan"), and will file with the Court the Liquidation Plan and a motion seeking the Court's approval of the Liquidation Plan.

31. After obtaining the Court's approval for the Liquidation Plan, the Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Assets, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership, and with due regard to the realization of the true and proper value of such Receivership Assets.

32. Subject to Paragraph 33, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of any real property among the Receivership Assets, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership, and with due regard to the realization of the true and proper value of such real property.

33. Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property among the Receivership Assets.

34. Any instrument executed by the Receiver transferring Receivership Assets will be sufficient to transfer such property, and any receipt or aquittance given by the Receiver will be a sufficient discharge in favor of the person to whom it is given.

35. The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of BioChemics, including communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

36. The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.

37. The Receiver shall have exclusive control of, and the right to use, all tax identification numbers of BioChemics. The Receiver is authorized to communicate with, negotiate with, and serve as sole representative of BioChemics to, all taxing authorities.

## IX. Investigate and Prosecute Claims

38. Subject to the requirement, stated in paragraph 6.I. above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with the Commission's counsel, be advisable or proper to recover and/or conserve Receivership Assets.

39. Subject to the obligation to expend Receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the BioChemics were conducted and, after obtaining leave of this Court, to institute such actions and legal proceedings as the Receiver deems necessary and appropriate to recover funds transferred from BioChemics; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. The Receiver should provide prior notice to counsel for the Commission before commencing investigations and/or actions and should obtain the Court's authorization

before commencing any legal action or proceeding.

40. The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## X. Bankruptcy Filing

41. The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for BioChemics. If BioChemics is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate BioChemics as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 3 above, the Receiver is vested with management authority for BioChemics and may therefore file and manage a Chapter 11 petition.

42. The provisions of Section VII above bar any person or entity, other than the Receiver, from placing BioChemics or the Trust in bankruptcy proceedings.

## XI. Liability of Receiver

43. Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

44. The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel,

nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

45. This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

46. In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XII. Recommendations and Reports

47. The Receiver must keep the Commission's counsel apprised at reasonable intervals of developments concerning the operation of the Receivership, and provide to the SEC, upon request, copies of any documents or tangible things under the control of the Receiver.

48. Within thirty (30) days after the end of each calendar quarter, the Receiver shall file with the Court a full report and accounting of the Receivership Assets (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations upon the Receivership Assets.

49. The Quarterly Status Report shall contain the following:

    A. A summary of the operations of the Receiver;

    B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

  C. A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

  D. A description of all known Receivership Assets, including approximate or actual valuations, and anticipated or proposed dispositions;

  E. A description of liquidated and unliquidated claims held by the Receivership, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

  F. A list of all Series E investors with the amounts of their investments, and other known creditors;

  G. The status of any proceedings relating to any investors' or creditors' claims; and,

  H. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

50. On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

51. If the Receiver in his sole discretion believes that it would assist in the performance of his duties under this Order, the Receiver may share information about his work with the BioChemics Series E investors.

52. Once some or all of the Receivership Assets have been liquidated, the Receiver should propose to the Court a plan to use those funds to satisfy, in whole or in part, the Modified Judgment and to distribute those funds to the harmed BioChemics Series E investors. Such plan may also propose to distribute any excess funds to creditors of BioChemics and/or the Trust, or to return any excess funds to them if all creditors' claims have been satisfied.

53.  The Receiver may apply to the Court from time to time for such further directions or orders as the Receiver, in the exercise of his business judgment, may deem necessary or appropriate.

### XIII. Fees, Expenses and Accountings

54.  Subject to paragraphs 55 to 61, the Receiver need not obtain Court approval prior to the disbursement of Receivership Assets for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

55.  Subject to Paragraph 56 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

56.  The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

57.  Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Assets (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by the Commission's staff.*

*The SEC shall submit the Fee Application to the court with an evaluation of it and a recommendation concerning the amount that should be paid. /s/ MLW 10/9/18

58. All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

59. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

60. Each Quarterly Fee Application shall:

    A.    Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

    B.    Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of fair distribution of the Receivership Assets; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Assets, or any sharing thereof.

61. At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by the Commission's staff, as well as the Receiver's final application for compensation and expense reimbursement.

IT IS SO ORDERED, this 9th day of October, 2018.

*[signature]*
UNITED STATES DISTRICT JUDGE

*[handwritten annotation]* * 63 This order may be modified in response to a motion or by the court sua sponte after providing notice and an opportunity to be heard. /s/ MLW 10/9/18