UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 12-12324-MLW |
| BIOCHEMICS, INC., JOHN J. MASIZ, CRAIG MEDOFF and GREGORY S. KRONING, | ) ) ) ) ) |
| Defendants. | ) |

**COMMISSION'S OPPOSITION TO ADEC'S MOTION FOR
RELIEF FROM STAY OF LITIGATION**

The Securities and Exchange Commission ("Commission") hereby opposes Non-Party ADEC Private Equity Investment's ("ADEC") motion for relief from stay of litigation ("Motion"). *See* Dkt. No. 480. ADEC's Motion seeks relief from the provision contained in this Court's Order Appointing Receiver, that stays "[a]ll civil legal proceedings of any nature, including . . . .actions of any nature involving . . . any of the past or present officers, directors, managers, agents, or general or limited partners of BioChemics or the Trust sued for, or in connection with, any action taken by them while acting in such capacity of any nature" and prevents the institution of litigation involving such claims. Dkt. No. 452, ¶¶26, 27. ADEC does not dispute that its proposed claims are against individuals who were, in fact, "officers, directors, managers, agents, or general or limited partners of BioChemics or the Trust," but claims that its claims are against those people acting in their "individual capacities or while acting on behalf of entities other than BioChemics or the Trust." Motion at ¶19. The Commission believes this asserted distinction is inaccurate when considering the claims ADEC is seeking to bring. Further, there is no justification for allowing ADEC relief from the litigation stay to pursue their

proposed claims at this point in time. The Receiver has proposed a liquidation plan in which he, acting jointly with the bankruptcy trustee who currently controls Inpellis' assets, will sell the intellectual property in which both companies have an interest. *See* Dkt. No. 484. That sale is proposed to take place as soon as reasonably possible. That sale will determine how much money is available to pay the competing claims of the Commission, ADEC, and any other claimants. Those claims can be determined, whether by litigation or settlement, after the amount of available funds is established by the sale. There is no reason why ADEC needs relief from the stay of litigation at this point in time when it can easily await the conclusion of the sale process to bring its proposed claims. Its attempt through ancillary litigation to sidetrack the sale process should not be condoned by this Court.

Though not relevant to the substance of its Motion, ADEC again attempts to suggest that information about its investment in Inpellis should have been disclosed to this Court at the time this Court entered the Modified Judgment. *See* Motion, ¶5. As the Commission has previously argued, that suggestion is meritless. *See* Dkt. No. 401 at 1-3. When the Commission settles with defendants and their affiliates in its cases, or compromises claims against them, it is highly likely that those defendants and affiliates have unsecured creditors, just like ADEC was at the time. Not only does the Commission not make it a regular practice to investigate the claims of all potential unsecured creditors who may also have claims against the parties with whom they are settling, but also, its status as an existing judgment creditor means that it had the right to execute on its judgment, thus monetizing its claims and taking precedence over the claims of unsecured creditors. ADEC was just one of many potential unsecured creditors, and information relating to its potential claims were not relevant to the settlement between the Commission, BioChemics, the Trust, and Inpellis.

### A. ADEC's Proposed Claims Are Barred by the Order Appointing Receiver.

ADEC's Motion is premised on the assertion that contemplated litigation against the Proposed Defendants will be "personal" in nature. *See* Motion, ¶¶12, 18, 19, 20, 21. This is an attempt at misdirection, however, as ADEC's intent is to sue the principals of the entities in the receivership and their affiliates, and the actions that those individuals took in their capacity as such; recharacterizing the conduct to be charged to label it "individual" rather than "official capacity" is a distinction without a difference.

ADEC acknowledges that its contemplated claims "arise from its investment in Inpellis made in 2015." Motion, ¶21. Specifically, ADEC seeks to file a Massachusetts state lawsuit under Chapter 93A (Regulation of Business Practices for Consumers Protection) pertaining to the "Defendants' unlawful scheme to induce ADEC into making a $3 million investment in Inpellis…" Dkt. 480-1, at 2 (ADEC's Mass. Gen. L. Ch. 93A "Demand Letter"). To support its position, ADEC's Demand Letter is replete with factual assertions concerning the alleged conduct of the Proposed Defendants. Upon closer inspection, however, the Demand Letter's facts belie ADEC's position. ADEC's lengthy recitation of facts illuminates that the potential claims against the Proposed Defendants are based on their actions in their official business capacities.

The following are examples quoted directly from ADEC's Demand Letter detailing the corporate actions taken by the Proposed Defendants in what is commonly understood to be actions in an official capacity (with the pertinent language italicized for ease of reference):

- "…Schlichtmann, Glosband, Altshuler, and BioChemics *hired* independent management and an independent Board of Directors for Inpellis..." *Id.*

- "[T]he Trust, through its *counsel*, Jack Altshuler, *moved* for the approval of an amended trust and the appointment of Daniel Glosband and Jack Altshuler as additional trustees." *Id.*, at 4.

- "Schlictmann had a variety of other relationships with BioChemics [including being] *charged with the responsibility of attempting to resolve any potential or actual controversies or claims* among the BioChemics shareholders [and he] *acted as an attorney* for BioChemics." *Id.*, at 10; *see also id.*, at 20 (discussing business transactions that Schlichtmann was working on).

- "Inpellis' independent management *agreed to purchase* BioChemics' intellectual property…" *Id.*, at 13.

- "[In connection with the sale of intellectual property to Inpellis], BioChemics' *principal negotiators* were its President Marshall Sterman, John Masiz, and Schlichtmann. Thomas Barrette of Holland & Knight *drafted* the documents as *counsel* for Inpellis." *Id.*; *see also id.*, at 18 (discussing actions taken by Barrette as Inpellis' attorney).

- "Joseph McGonagle *signed* the Forbearance Agreement and related Security Agreement *as CEO* on behalf of Inpellis." *Id.*, at 20.

- "the 2015 Intellectual Property Purchase Agreement between BioChemics and Inpellis (which was *signed* by Sterman with Masiz *negotiating* by his side_..." *Id.*, at 23.

- "[I]n June 2017 Schlichtmann, Masiz, and Sterman *formally incorporated* at least one new company called BioPhysics Pharma, Inc., [and] *hired* Inpellis chief scientist [as] an employee…" *Id.*, at 27.

As illustrated by the selections quoted above, ADEC's anticipated litigation against the Proposed Defendants is substantially premised on their actions as corporate officers, businessmen, and attorneys, and, as such, are barred by the Order Appointing Receiver.

**B.  The Court Should Not Exercise Its Discretion to Lift the Bar and Allow ADEC's Claims to Proceed at This Time.**

ADEC argues that, even if this Court concludes that the Order Appointing Receiver bars its proposed claims, this Court should exercise its discretion to lift that bar and allow it to file suit on its claims. *See* Motion, ¶¶22-28. Other courts reviewing similar requests have typically applied a three-factor test articulated by the Ninth Circuit in *SEC v. Wencke*, 742 F.2d 1230 (9th Cir. 1984). That test balances: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *Id*. at 1231; *see also SEC v. Stanford Int'l Bank Ltd.*, 465 Fed. Appx. 316, 320 (5th Cir. 2012) (noting that the *Wencke* factors are "a useful set of considerations in determining whether a stay should be modified or lifted"). Courts applying this test place the burden on the movant to prove that the three factors weigh in favor of lifting the stay. S*ee SEC v. Platinum Management (NY) LLC*, No. 16-cv-6848, 2018 WL 3442550, *2 (E.D.N.Y. July 17, 2018) (denying motion to lift stay by non-party seeking indemnification from receivership); *United States v. JHW Greentree Capital, L.P.*, No. 12-cv-116, 2014 WL 1669261, *2 (D. Conn. Feb. 10, 2014) (denying motion to lift stay). Courts should also weigh the interests of the Receiver, which are "very broad and include not only protection of the receivership *res*, but also protection of defrauded investors and considerations of judicial economy." *SEC v. Universal Financial,* 760 F.2d 1034, 1048 (9th Cir. 1985) (affirming district court's denial of motion to lift receivership stay). ADEC has not carried its

burden of proving that the first two of these factors, which courts appear to weigh most heavily, justifies lifting the stay in this case. *See Platinum*, 2018 WL 3442550, *2.

First, ADEC has articulated no theory as to why it will be injured if the stay is not lifted now. *See* Motion at ¶26. It only retreats to its first argument – that the people it wants to sue are not subject to the stay at all. *See id*. ADEC's argument also assumes that the stay will somehow permanently shield the people it wants to sue from liability. *See id*. That is clearly not so, as once the Receiver has completed his work of liquidating the Receivership assets, the need for the stay will substantially diminish and ADEC can bring its claims at that time. It is not facing an imminent statute of limitations. ADEC will suffer no injury at all if forced to wait at least until the conclusion of the Receivership's sale process until it is able to bring its proposed claims. *See JHW Greentree*, 2014 WL 1669261, at *4 (general delay to movants in finalizing a judgment against their opponents is not a specific substantial injury that supports lifting the stay). ADEC's proposed claims seek monetary recovery from individuals to compensate it for an investment it made in Inpellis. Depending on how much money is recovered as a result of the receivership's sale process, which has been proposed to operate jointly with the bankruptcy trustee's sale process (*see* Dkt. No. 484), ADEC may even be paid back part (or perhaps even all) of the value of its investment. Thus, judicial economy weighs in favor of continuing the stay of ADEC's claims until the sale has been completed. *See Platinum*, 2018 WL 3442550, *2 (denying motion to stay because part or all of claim may become moot).

As to the second factor, the Receivership is still early in its work and there is no justification for disrupting the Receiver's efforts to investigate and understand the assets he controls, and implementing a plan to sell those assets. *See Universal Financial*, 760 F.2d at 1039 (stay should remain in place because four years after Receiver was appointed, he was still

discovering relevant information and resolving factual and legal issues). The people that ADEC wishes to sue are the past officers, directors, managers, agents of BioChemics and the Trust and are the people who know the most about the intellectual property and assets that the Receivership is charged with marshalling and liquidating. They are obligated to, and have been, cooperating with the Receiver in his efforts. *See* Dkt. No. 452, ¶¶10, 11. The claims that ADEC seeks to bring will likely have an adverse effect on the Receiver's efforts to perform his duties, by redirecting the energies of those people who are available as resources to the Receiver, and who, to date, have been willing to bear certain costs that would otherwise be paid by the Receivership. *See* Dkt. No. 467, 470. Again, ADEC offers no reason why this factor should weigh in its favor, other than repeating its mistaken mantra that the people it wishes to sue are not involved with BioChemics or the Trust. *See* Motion, ¶27.

The Court need not reach the third prong of the *Wencke* test – whether ADEC's claims are meritorious. This factor has been least heavily weighed by other courts analyzing similar motions, and given that the other two factors weigh strongly in favor of continuing the stay, this factor alone, even if it were found to support ADEC, does not compel a different conclusion. *See Platinum*, 2018 WL 3442550, *2 (court need not reach issue of merits of movants' claim because the other two factors are determinative); *Universal Financial*, 760 F.2d at 1039 (even after some movants' claims had succeeded at trial, that was not sufficiently significant to lift the stay).

## CONCLUSION

For the reasons set forth above, the Commission requests that the Court deny ADEC's motion for relief from the stay contained in the Order Appointing Receiver.

Dated: January 30, 2019

SECURITIES AND EXCHANGE COMMISSION,
By its attorneys,

/s/ Kathleen Burdette Shields
Kathleen Burdette Shields (BBO #637438)
David H. London (BBO #638289)
Securities and Exchange Commission
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
Telephone: (617) 573-8904 (Shields direct)
Telephone: (617) 573-8997 (London direct)
E-mail: shieldska@sec.gov
londond@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2019, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Kathleen Burdette Shields
Kathleen Burdette Shields