UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-12324-MLW |
| | ) | |
| BIOCHEMICS, INC., JOHN J. MASIZ, CRAIG MEDOFF and GREGORY S. KRONING, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MOTION BY DEFENDANT MASIZ
FOR AN ORDER TO ADEC TO SHOW CAUSE
WHY IT SHOULD NOT BE HELD TO HAVE KNOWINGLY VIOLATED
THE COURT'S 10-9-18 ORDER (Doc. #452)
And Why Sanctions Should Not Be Imposed**

Defendant Masiz on behalf of himself and the non-party Respondents affected by

ADEC's Motion for relief from the stay (Doc. #480)[1] moves for an order for ADEC to show

cause why it should not be found to have knowingly violated the Court's 10-9-18 Order (Doc.

#452)(Receiver Order) and why sanctions should not be imposed (Show Cause Motion).

I.     SUMMARY

As detailed in the 1-30-19 Opposition by Masiz to ADEC's motion to lift the stay (Doc,

#499) and the 1-30-19 Objection by Inpellis to ADEC's motion in the *Inpellis* bankruptcy case[2]

---

[1] ADEC has undertaken action on its purported "claims" against: The Trustees of the Shareholder Resolution Trust (Jack Altshuler, Esq., Daniel Glosband, Esq., and Jan Schlichtmann); the former officers, directors, managers of BioChemics (Marshall Sterman, Frank Manguso, Jan Schlichtmann, Zhen Zhu) and Inpellis (Marshall Sterman, Frank Manguso, Joseph McGonagle, Zhen Zhu); John Masiz; and BioPhysics Pharma Inc. (Respondents).  See, ADEC 12-17-18 "Demand Letter" (Doc. #480-1); Also, in violation of the Receiver Order, ADEC commenced an action in the *Inpellis* Bankruptcy Court to conduct investigatory examinations under FRBP Rule 2004 against Jan Schlichtmann and Zhen Zhu.  1-10-19 ADEC motion for FRBP Rule 2004 examinations (*Inpellis* Doc. #63 at **Ex. 2**).

[2] *In Re Inpellis, Inc.,* USBC DMa CA No. 18-12844-JNF (*Inpellis*).

for FRBP Rule 2004 investigation examinations of certain Respondents (*Inpellis* Doc. #68 at **Ex. 1**)[3], ADEC has asserted "claims" and employed process against Respondents that are enjoined and stayed by the Court's 10-9-18 Order appointing the Receiver (Doc. #452) as well as the *Inpellis* 11 USC §362 automatic stay.  ADEC's two filings (Doc. #480 and *Inpellis* Doc. #63 at **Ex. 2**); the responsive filings in this Court by the SEC (Doc. #493), the Receiver (Doc. #496), and the Inpellis Bankruptcy Trustee (Doc. #494); and ADEC's 2-8-19 "Reply" (Doc. #502) make manifest that: 1) ADEC knowingly violated the Court's 10-9-18 Order appointing the Receiver (**Section IIA** below); 2) ADEC tried to justify its misconduct by flatly misrepresenting to this Court that Respondents were "*unwilling*[]" to agree to a tolling of ADEC's "claims while the stay is in place" (Doc. #502 p. 9) when Respondents' clearly stated position to ADEC, the SEC, the Receiver, and the Trustee is the opposite[4]; and, 3) ADEC's knowing violation is a material interference with the functions of the Receiver as well as the Trustee and the ability of the Respondents to fulfill their ongoing obligation to assist and cooperate with the Receiver as well as the Trustee (**Section IIB** below).[5]

---

[3] 1-10-19 motion to conduct FRBP Rule 2004 examinations of Jan Schlichtmann and Zhen Zhu in *In Re Inpelli*s, USBC DMa CA No. 18-12844-JNF (*Inpellis* Doc. #63 at **Ex. 2**).

[4]  In response to ADEC's query, Respondents informed ADEC that they would agree to acknowledge the preservation of ADEC's rights during the period of the stay – a position that was also clearly conveyed to the SEC, the Receiver, and the Trustee.  See, 2-8-19 Affidavit of Jeffrey Sternklar at **Ex. 3**;  Respondents' position is in keeping with basic equitable principles that toll the statute of limitations during the period a litigant's rights are stayed by a court ordered stay.  *Menominee Indian Tribe Of Wisconsin*, 136 S. Ct. 750, 752 (2016)(" To be entitled to equitable tolling of a statute of limitations, a litigant must establish (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing").

[5] ADEC compounds its knowing violation by *retroactively* seeking on 1-2-19 to get relief from the Receiver Order stay for its assertion of its "claims"against Respondents in its 12-17-19 "Demand Letter," then filing a week later its 1-10-19 *Inpellis* Rule 2004 action against Respondents without first seeking relief from this Court for *that* action in violation of the stay.

The Court has the inherent power to determine and remedy inequitable conduct and violations of its orders.  In order to do so, ADEC should be required to show cause why there should not be a finding that ADEC knowingly violated the Receiver Order and why sanctions should not be imposed.  Upon such a finding, appropriate sanctions should include denying ADEC the benefit of its continued wrongful assertion of its stayed "claims" by: 1) an order striking the "Demand Letter" (Exhibit A Doc. #480-1) and ADEC's "Reply" (Doc. 502), and denying ADEC's motion (Doc. #480); and, 2) enjoining ADEC from engaging in any further assertion of its "claims" until further order of the Court.  See **Section III** below.

## II.    GROUNDS FOR A SHOW CAUSE ORDER

A Show Cause Order to ADEC is warranted in light of the filings by ADEC in this court (Doc. #480 and #502) and in the *Inpellis* bankruptcy action (*Inpellis* Doc. #63)[6] and the statements in the responsive filings in this Court by the SEC (Doc. #493); the Receiver (Doc.#496), and the Trustee (Doc. #494) regarding ADEC's express admissions in words and by conduct.  ADEC's filings and its admissions to the court appointed officers of the respectvie estates remove any doubt regarding the knowing nature of ADEC's violation of the Court's 10-9-18 Order (Doc. #452), as well as the 11 USC §362 automatic stay, and the fact that the knowing

---

[6] By motion dated 1-10-19 (*Inpellis* Doc. #63) attached at **Ex. 2**, ADEC without first obtaining a lifting of the Receiver Order stay (Doc. #452) imposed by this Court, has moved to conduct purported FRBP Rule 2004 investigatory examinations of Respondents former BioChemics Director and Shareholder Resolution Trustee Jan Schlichtmann and former BioChemics and Inpellis and present BioPhysics Pharma Inc. science officer Zhen Zhu regarding ADEC's "claims".  Such an examination of Respondents necessarily entails  examination of their respective activities on behalf of the Trust and BioChemics and the property and claims of BioChemics.  ADEC's assertion of its "claims" and attempted use of FRBP Rule 2004 to circumvent this Court's Order is also being opposed by Respondents Schlichtmann and Zhu in the *Inpellis* court as an improper use of FRBP Rule 2004 and a violation of the automatic stay imposed by 11 USC §362.  See, 1-30-19 Objection by Inpellis on behalf of Respondents (*Inpellis* Doc. #68 at **Ex. 1**) (*Inpellis* Objection is attached *without* supporting exhibits which are *BioChemics* documents before this Court).

violation materially interferes with the Receiver's and Trustee's functions and Respondents' cooperation obligations.

### IIA.   ADEC's Conduct Is A Knowing Violation Of Court's 10-9-18 Order

The Receiver Order and the Bankruptcy stay barred ADEC from asserting claims against Respondents involving the BioChemics and Inpellis estates.  ADEC knew that the assertion of its "claims" against Respondents was enjoined and stayed by both the Court's 10-9-18 Order (Doc. #452) and the 11 USC §362 automatic stay.  Despite this knowledge, ADEC asserted, in its "Demand Letter" (Doc. #480-1) and FRBP Rule 2004 motion (*Inpellis* Doc. #63 at **Ex.2**), "claims" against Respondents that are on their face claims involving the property of the respective estates.

**Receiver Order Enjoined/Stayed Actions Against Respondents involving BioChemics/Trustee Assets/Claims.**  The District Court, on the Commission's motion, *supported* by ADEC, entered the Receiver Order October 9, 2018 (Doc. #452).  ADEC attended the Hearing on the Commission's motion and participated in a line by line review of the Commission's proposed order with the Court.  Doc. #452.  The Receiver Order granted the Receiver full power over the assets of the Shareholder Resolution Trust (SRT Trust)[7] and

---

[7] The Shareholder Resolution Trust held BioChemics ownership of Inpellis in Trust for the benefit of BioChemics' interest holders subject to the Commission's Judgment and the claims of BioChemics creditors.

BioChemics.[8]  This included full authority to evaluate any claims pertaining to those assets.[9]

The Receiver Order commanded  the SRT Trustees and BioChemics officers, directors, and

representatives to assist and cooperate with the Receiver.[10]   The Order *enjoined* and *stayed* any

action of any nature by others (including ADEC) against the people ordered to assist and

cooperate pertaining to *BioChemics* assets/claims.  Receiver Order Doc. #452 par. 23, 24, 26, 27.

The Receiver Order in pertinent part prohibited:

> All civil legal proceedings *of any nature, including but not limited to. . . actions of any nature involving. . .* any of the past or present officers, directors, managers, agents or general or limited partners of Biochemics or the [Shareholder Resolution] Trust . . . or in connection with, any action taken by them while acting in such capacity *of any nature* . . . (such proceeding are hereinafter referred to as "Ancillary Proceedings").

Receiver Order Doc. #452 par. 26 (emphasis added).  The Receiver Order enjoined

ADEC "from commencing or continuing any such legal proceeding, or from taking *any*

*action*, in connection with any such proceeding, including, but not limited to, the issuance

or employment of process." Receiver Order Doc. #452 par. 27 (emphasis added).

---

[8] In the 10-9-18 Receiver Order, the Court found that the appointment was "necessary and appropriate for the purpose of marshalling and liquidating all of the assets of BioChemics and the Trust that are the subject of the first priority security interests held by the Commission …". Doc. #452 p. 1.  The Receiver was empowered to: assume control of, marshall, pursue and preserve the Receivership Assets with the objective of maximizing the recovery of assets, and, to the extent  that assets recovered are inadequate to make defrauded investors whole, ensuring that the distribution of those assets is as just and equitable as practicable".  Id. par. 2.

[9] The Order directed that: "The Receiver shall assume and control the operation of BioChemics and shall pursue and preserve all of its claims"; granted the Receiver full powers and duties over and to determine the nature and value of such assets/claims; and, granted the Receiver "full access to information" regarding the assets/claims.  Receiver Order Doc. #452 par. 4, 6, 7.

[10] BioChemics and the SRT Trust, and all of their officers, directors, agents, and  representatives were "required to assist the Receiver in fulfilling his duties and obligations" and "shall cooperate with and assist the Receiver in the performance of his duties".  Receiver Order Doc. #452 par. 10-11, 24.

**Automatic Stay Prohibited Actions Involving Estate Assets/Claims.** ADEC initiated the *Inpellis* Chapter 7 action and was well aware of the automatic stay provision contained in 11 USC §362 and its immediate effect.[11] ADEC knew that the automatic stay prohibited anyone, including ADEC, from asserting any claims regarding Inpellis estate property. ADEC acknowledged the prohibition against any action by anyone regarding Inpellis estate property in its 8-27-18 Memorandum to this Court regrading the implications of its Ch. 7 filing (Doc. #435):

> [T]he filing of the petition on July 26, 2018 established a bankruptcy case (assigned to the   Honorable Joan N. Feeney) and triggered the so-called 'automatic stay.' 11 U.S.C. § 362(a) provides, in relevant part, that 'a petition filed under section … 303 of this title ... operates as a stay, applicable to all entities, of – [eight enumerated categories of proceeding, enforcement, act, or setoff]' against the debtor – in this case, Inpellis – or its property. *By its terms, the automatic stay applies … to property of the Debtor's estate*.

8-27-18 ADEC Mem. regarding the implications of its Ch. 7 Petition p. 1-2 (Doc. #435) (emphasis added).

**Despite The Injunctions & Stays ADEC Asserted Its "Claims" and wrongfully filed its 1-10-19 *Inpellis* action Against Respondents** Despite ADEC's full knowledge regarding the Receiver Order's injunction and stay as well as the *Inpellis* bankruptcy stay it engaged in a concerted assertion of its "claims" against Respondents. ADEC's violative conduct can be summarized as follows:

### (1).   "Demand Letter" (Doc. #480-1) Asserting Enjoined/Stayed "Claims"

ADEC, by letter dated December 17, 2018, served a "Demand Letter" (Doc. #480-1) on: BioChemics; the SRT Trustees;[12] the former officers and directors of BioChemics and Inpellis;[13]

---

[11] 8-27-18 ADEC Mem. regarding the implications of its Ch. 7 Petition (Doc. #435).

[12] Jack Altshuler, Esq.; Daniel Glosband, Esq.; and Jan Schlichtmann, Esq.

[13] Frank Manguso, Joseph McGonagle, Jan Schlichtmann, and Marshall Sterman.

John Masiz; and BioPhysics Pharma Inc..  The "Demand Letter referred to all of the recipients as

"*Defendants*".  Doc. #480-1 p. 1-2 (ADEC "write[s] in connection with ADEC's claims against

[Respondents] (all together "the Defendants") arising from the Defendants' unlawful scheme

…").  The "Demand Letter" was served on each of the individuals and entities by overnight

delivery on the eve of the Bankruptcy Court's 11 USC §341 Meeting held December 19, 2019– a

meeting at which two of the Inpellis officers,[14] attended and were examined by both the Trustee

and ADEC's counsel.

ADEC's "Demand Letter" is premised on alleged activities of the BioChemics and

Inpellis officers and representatives and the SRT Trustees performed in their official capacities

and directly involves the assets and claims of the respective estates being administered by the

Receiver and Trustee.  ADEC's "Demand Letter" stated that it was intended to put "Defendants"

and their insurers on "notice" of ADEC's numerous "claims":

> This letter is intended to put you and all applicable insurers on notice of ADEC's claims which will include, without limitation, fraud, conversion, breach of fiduciary duty, negligent misrepresentation, tortious interference with contractual and advantageous relations, civil conspiracy, violation of the securities laws, and unfair and deceptive business practices in violation of G.L. c. 93A §11.

12-17-18 ADEC "Demand Letter" p. 3 (Doc. #480-1).  The assertions in the "Demand Letterr"

made it clear that the "claims" against the recipients directly concerned the Receivership estate

(BioChemics and the SRT Trust (which owned Inpellis)) and the Inpellis estate, the estates'

property and potential claims.

All of the "claims" ADEC has asserted concern Receiver and Inpellis property: purported

misrepresentations to ADEC by Respondents in their official capacity and by *Inpellis* in its

Registration Statement regarding ADEC's 'bridge loan' to *Inpellis*; the business decisions

---

[14] Marshall Sterman and Frank Manguso.  See, *In Re Inpellis* USBC DMa CA No. 18-12844-JNF Docket Entry #59.

Respondents in their official capacity and Inpellis made to settle the SEC action against Inpellis; and purported "*misappropriation*" or "*misuse*" by Respondents in their official capacity of *Inpellis* cash and intellectual property" for the benefit of BioChemics and themselves "including … creating BioPhysics, in hiring *Inpellis'* chief scientist [Zhen Zhu], and causing BioChemics to file a patent application that was a continuation to Inpellis' main patent …".  12-17-18 ADEC "Demand Letter" p. 2-3 (Doc. #480-1).  ADEC's "Demand Letter" ended by removing any doubt that the ADEC "claims" were, in fact, BioChemics and Inpellis estate claims: "In the final analysis, the Defendants, with assistance or acquiescence from the SEC, have converted all of *Inpellis'* assets … and left *Inpellis* … with nothing".  Id. p. 29.

The Commission, the Receiver and the bankruptcy Trustee, agree that the "claims" asserted in ADEC's "Demand Letter" are enjoined and stayed by both the Receiver Order and the 11 USC §362 automatic stay.  The Commission agrees that the "claims against the Proposed Defendants are based on their actions in their official business capacities" and ADEC's suggestion otherwise is "an attempt at misdirection."  Doc. #493 p. 3.  The Commission states "the claims that ADEC seeks to bring will likely have an adverse effect on the Receiver's efforts to perform his duties."  Doc. #493 p 7.  The Receiver states that "the claims sought to be asserted by ADEC may constitute claims the Receiver may also choose to pursue" and that the "claims against the Proposed Defendants (as defined by the ADEC Motion) is likely to adversely interfere with the Receiver's liquidation efforts in this case" and "interfere with the Receiver's rights and recoveries."  Doc. #496 p. 1, 3.  The bankruptcy Trustee states that the "claims referenced in the Stay Relief Motion constitute property of the Inpellis bankruptcy estate and, as such, certain of the actions proposed by ADEC are stayed by operation of law in the bankruptcy proceeding."  Doc. 494 par. 6.

### (2).    Failed To Withdraw "Demand Letter" & Cease Interference

Despite requests by the Receiver and Trustee to desist, ADEC continued to assert its "claims" against Respondents, refused to withdraw the "Demand Letter," and threatened to undertake additional actions against the Respondents.  In the days and weeks following service of its "Demand Letter", despite repeated efforts by the Receiver and the Trustee to dissuade ADEC from doing so, ADEC repeatedly threatened to take further action against the SRT Trustees and BioChemics and Inpellis representatives regarding ADEC's asserted "claims."

After he was served the 12-17-18 "Demand Letter" by ADEC, the Receiver informed ADEC that the "Demand Leter" violated the Stay as to BioChemics and as to the other parties protected by the stay and interfered with his duties as Receiver.  The Receiver requested that ADEC withdraw the Demand Letter as concerns _all parties_.  ADEC in response "confirmed" _only_ that it _would not pursue BioChemics_.  1-30-19 Receiver Opposition (Doc. #496) ("ADEC served its demand letter pursuant to MGL 93A (attached to the ADEC motion as Exhibit A) upon BioChemics and the Proposed Defendants.  After the Receiver advised ADEC of the stay imposed in the Receiver Order ADEC has confirmed that it is _not pursuing claims against BioChemics_") (emphasis added).

Similarly, the Bankruptcy Trustee "advised ADEC that he believes that certain of the claims referenced in the Stay Relief Motion (and further described in Exhibit A thereto) likely constituted assets of the Inpellis Chapter 7 bankruptcy estate and thus would be subject to the automatic stay currently in force in the Inpellis bankruptcy case."  1-30-19 Ch. 7 Trustee Statement par. 4 (Doc. #494).  The bankruptcy Trustee states that "in response to the Trustee's concerns, ADEC appears to acknowledge in communcations to the Trustee that any claims for conversion of proceeds of ADEC's investment in Inpellis are property of the bankruptcy estate" and "that the Trustee has the 'sole right to pursue fiduciaries and former fiduciaries of Inpellis

…".  Doc. #494 par. 5.  The Trustee states that "notwithstanding such acknowledgment"  ADEC continues to "maintain[] its belief that it possesses direct claims" against Respondents – a position with which the Trustee "does not agree."  Doc. #494 par. 5.

Despite the efforts of the Receiver and bankruptcy Trustee, ADEC's threats to continue its assertion of its "claims" against Respondents culminated in ADEC's filing its 1-2-19 motion to lift the stay (Doc. #480) and public filing of its "Demand Letter" (Doc. #480-1), and its 1-10-19 motion in the Bankruptcy Court to take discovery related to its "claims" in the form of a purported Rule 2004 "Examination" of Trustee/Director/Counsel Schlichtmann and former BioChemics/Inpellis science officer Zhen Zhu.[15]

### (3).    Filed Motion To Lift Stay Based On "Demand Letter" (Doc. #480)

Despite the fact that ADEC knew that the service of the 12-17-18 "Demand Letter" on Respondents and the continued assertion of its "claims" against Respondents was a violation of the Receiver Order and 11 USC §362 automatic stay, and despite the admonitions of the Receiver and the Trustee, ADEC filed its 1-2-19 Motion to lift the stay to prosecute its "claims" using the enjoined and stayed assertion of its "claims" and service of its "Demand Letter" as publicly filed Exhibit A.  Doc. #480, #480-1.

### (4).    Moved In *Inpellis* For FRBP Rule 2004 Exams (*Inpellis* Doc. #63)

On 1-10-19, without first obtaining leave in this Court to do so,[16] and contrary to the purpose of the Rule,[17] ADEC moved in the Bankruptcy Court (*Inpellis* Doc. #63 at **Ex. 2**) to take

---

[15] *In Re Inpellis* USBC DMa CA No. 18-12844-JNF (*Inpellis* Doc. #63 at **Ex. 2**).

[16] ADEC's 1-2-19 Motion for relief from the Receiver Order stay does not refer to its intention to move in the Bankruptcy Court for FRBP Rule 2004 investigatory examinations regarding its 12-17-18 "Demand Letter" "claims" or seek relief to do so.  See, 1-10-19 ADEC Motion for relief form the stay (Doc. #480).

[17] FRBP Rule 2004 is an *investigatory* tool to aid the Trustee and not a substitute for '*discovery*' which "can only take place in the context of dispute" whereas "a dispute *prevents recourse* to"

the FRBP Rule 2004 investigatory examinations of two of Respondents, Schlichtmann and Zhu.

The ADEC examination request was expressly based on its assertion of its 12-17-18 "Demand

Letter" "claims" (Doc. #480-1) that *Inpellis* property was wrongfully damaged or acquired by

BioChemics and Respondents acting in their official capacities.[18]  ADEC took this action,

despite the fact that it knew the Receiver Order expressly stayed ADEC from initiating

"proceedings *of any nature ... involving. . .* [BioChemics or Trust] officers, directors, managers,

agents [etc] of Biochemics or the [Shareholder Resolution] Trust . . . or in connection with, any

action taken by them while acting in such capacity *of any nature*".   Receiver Order par. 26 (Doc.

#452).

     ADEC took this action *three days after* the Receiver filed his report in this Court

describing the joint efforts of the Receiver and Trustee, with the full cooperation of Respondents,

to marshall and sell the assets of both estates.[19]  ADEC based its motion in the Bankruptcy Court

---

Rule 2004).  *In Re J&R Trucking, Inc.,*431 BR 818, 821 (Bankr. D. Del. 2010) (emphasis added).
FRBP Rule 2004 is "an investigatory device *trustees* can use in order to quickly gather the
information they need to do their job properly … to investigate the debtor, and the assets of and
claims against the bankruptcy estate, turn the assets into cash and distribute those funds to
creditors, all as expeditiously as possible."  Id. at 821.  It is a tool to be used *only* if there is a
need to compel because "[I]deally, those with knowledge of such things will voluntarily
cooperate with the trustee and give the trustee access to the information they have concerning the
debtor's affairs" – Rule 2004 is there if there is a need to "compel that cooperation".  Id.  at 822.

[18] 1-10-19 ADEC motion for Rule 2004 examinations par. 4-8 (Doc. #63 at **Ex. 2**)(Inpellis'
"Ibuprofen patent has purportedly been assigned to … BioChemics" and Zhu "was personally
involved in development of … Ibuprofen" transdermal technology; BioPhysics is alleged to be
"using" "transdermal … technology jointly owned with BioChemics"; "examination of Zhu … is
necessary to obtain … information related to … potential claims …"; and SRT "Trustee" and
BioChemics "counsel" "Board member[]" Schlichtmann "negotiated  with the SEC" regarding
the April, 2016 Settlement between SEC, BioChemics, Trust and Inpellis and has "knowledge of
interactions between [Inpellis] and numerous third parties including … BioChemics …".

[19] 1-7-19 Receiver Liquidation Plan (Doc. 3484-1).

on the false suggestion that the Receiver was acting on his own and therefore the Receiver's

efforts to sell the BioChemics assets might "impair" Inpellis property:

> The BioChemics *receiver is now in the process* of attempting to arrange for a sale or sales
> of assets that may be assets of the Debtor. *A prompt examination is essential to ensure
> that rights of the Debtor are not impaired.*

1-10-19 ADEC Motion (Doc. #63 at **Ex. 2**) (emphasis added).

ADEC made this false assertion knowing full well that the Receiver and the Trustee were

working together towards a *coordinated* sale with the full assistance and cooperation of the SRT

Trustees and BioChemics and Inpellis personnel.[20]  Just three days before ADEC's Inpellis

filing, the Receiver, in his report to the District Court regarding the "Liquidation Plan,"

described the prodigious efforts that were being made by the Receiver, the Trustee, and the SRT

Trustees and BioChemics and Inpellis personnel to evaluate the assets and the opportunities, and

the "agreement" between the Receiver and the Trustee that a "*coordinated* sale of the intellectual

property of both estates was in the best interest of both estates".  In pertinent part, the Receiver

informed the District Court:

>  Since the Receiver's appointment, he has spent a substantial amount of time discussing
> with many parties the best strategy for going forward with the liquidation of Biochemics'
> IP in a way that would produce the maximum value to the Receivership Estate within a
> reasonable timeframe. These discussions included … Jan Schlichtmann, Dan Glosband
> and Jeffrey Sternklar … efforts on behalf of John Masiz and his family … to purchase the
> BioChemics IP … .
> …
>
>  The Receiver has also met with the Trustee on several occasions … to discuss
> collaboration of efforts for the liquidation of the BioChemics IP and the Inpellis IP.  At
> this point, *the Receiver and the Trustee are in agreement that a* <u>*coordinated sale*</u> *of the
> intellectual property of both estates is in the* <u>*best interest of both estates*</u>.

1-7-19 Receiver Liquidation Plan par.  10-11 (Doc. #484-1) (emphasis added).

---

[20] See, 1-7-19 Receiver Liquidation Plan (Doc. #484-1) and 1-30-19 Receiver Opposition par. 6
(Doc. #496) ("Receiver and the Chapter 7 Trustee of Inpellis are working together to facilitate a
sale of the assets owned by both entities, which they believe would maximize the value for both
estates").

As affirmed by the Receiver in his 1-7-19 report (Doc. #484-1) and his 1-30-19 Objection (Doc. #496), from the outset of the Court's entry of the Receiver Order and the appointment of the Trustee, up to and including today, the SRT Trustees and the BioChemics and Inpellis personnel have fully cooperated with and assisted the Receiver and the Trustee in the carrying out of their functions.  This cooperation has included: promptly responding to all inquiries regarding assets/claims; providing on a pro-active basis the information necessary to maintain and preserve the BioChemics/Inpellis assets; ensuring the maintenance of the extensive BioChemics/Inpellis patent portfolio; voluntarily agreeing to cover certain ongoing expenses pertaining to BioChemics/Inpellis property; keeping the Receiver and Trustee informed of Respondent BioPhysics Pharma, Inc.'s efforts to acquire the BioChemics/Inpellis assets and satisfy the Judgment; and, materially assisting in the effort to liquidate the assets at issue by offering a "stalking horse" bid to both stimulate bidding and provide a floor.  See, Receiver filings:  Doc. #496, #484, #470, #468, #467.  The Receiver in his 1-30-19 Objection noted the assistance and "*full*" cooperation provided by the Respondents:

> Following the Receiver's appointment, agents of BioChemics including several of the named Proposed Defendants have *fully cooperated with the Receiver in carrying out his duties under the Receiver Order*, including marshalling of BioChemics' assets, responding to inquiries regarding the intellectual property and covering the Receiver's costs of maintaining BioChemics intellectual property assets.

1-30-19 Receiver Objection par. 5 (Doc. 496) (emphasis added).

Despite this record of cooperation which was well known to ADEC, it nevertheless sought the Bankruptcy Court's leave to carry out purported FRBP Rule 2004 Examinations by materially omitting the true state of affairs regarding the coordinated nature of the Receiver's and Trustee's activities and their intentions regarding the sale of the assets in question with the full assistance and cooperation of the people ADEC has wrongfully targeted for harassment.

ADEC's misrepresentation of the record of Respondents' cooperation is material

because, as ADEC well knows, the whole purpose of FRBP Rule 2004 investigatory

examinations are to assist the Trustee only in the event that the Trustee needs to "compel

cooperation."[21]  By omitting the true state of affairs regarding the joint cooperative effort by the

Receiver and Trustee with the full cooperation of Respondents, not to mention the efforts of the

Receiver and Trustee to dissuade ADEC from persisting in its violation of the respective stays,

ADEC deprived the *Inpellis* court of the material information required for the Bankruptcy Court

to "exercise its discretion" and "balance the interests" in determining whether ADEC, as

petitioning creditor, had demonstrated "good cause" for a Rule 2004 examination or whether a

dispute exists which "*prevents recourse to it*".[22]

### IIB.   ADEC's Violative Conduct Is A Material Interference With The Order

As noted by the Receiver and the Commission in their recent filings, ADEC's assertion

of its "claims" in violation of the Receiver Order and the 11 USC §362 automatic stay materially

interferes with the Receiver and Trustee's duties and their joint effort at marshalling the assets

for sale with the essential cooperation of the Respondents in that ongoing endeavor.[23]  The

---

[21] See, *In Re J&R Trucking, Inc.,* 431 BR 818, 822 (Bankr. D. Del. 2010) (Rule 2004 is there if there is a need to "*compel* that cooperation").

[22] A creditor seeking to examine non-parties has the burden of demonstrating "good cause," that the request furthers the interests of the estate, and is not just another means to further "private collection" efforts.  The existence of a dispute "prevents recourse to" FRBP Rule 2004.  See, 9 Collier on Bankruptcy 16th Ed., ¶ 2004.01; *In Re Millennium Holdings II, LLC*, 562 BR 614, 626-627 (Bankr. D. Del. 2016) (parties "do not have an absolute right to Rule 2004 examinations," granting leave is "dependent on the discretion of the court" and the "balancing of the competing interests," and "not available to creditors … to deal with their special problems"); and, *In Re J&R Trucking, Inc.,* 431 BR 818, 821 (Bankr. D. Del. 2010)(Rule 2004 is an investigatory tool to aid the Trustee and not a substitute for 'discovery' which "can only take place in the context of dispute" whereas "a *dispute prevents recourse* to" Rule 2004)(emphasis added).

[23] 1-30-19 Receiver Objection par. 5 (Doc. 496) (emphasis added); 1-30-19 Commission's Opposition p. 7 (Doc. #493).

Receiver points out that ADEC's targeting of Respondents comes at a particularly sensitive time in the process of the Receiver and Trustee's "working together to facilitate a sale of the assets owned by both entities":

> In connection with those efforts, the Receiver and the Trustee have received a substantial bid from BioPhysics Pharma, Inc. (one of the Proposed Defendants sought to be sued by ADEC) to purchase the assets of both estates. … The Receiver believes that if ADEC is permitted to proceed with the litigation of its claims, it may jeopardize the existing bid and chill counteroffers from other purchasers.

1-30-19 Receiver Objection par. 6 (Doc. #496).  Similarly, the Commission noted the Respondents' cooperation, that Respondents'cooperation was essential to the work of the Receiver, and that ADEC's assertion of its "claims" interferes with that essential cooperation mandated by the Receiver Order: [24]

> The people that ADEC wishes to sue are the past officers, directors, managers, agents of BioChemics and the Trust and are the people who know the most about the intellectual property and assets that the Receivership is charged with marshalling and liquidating. They are obliged to, and have been, cooperating with the Receiver in his efforts. … The claims that ADEC seeks to bring will likely have an adverse effect on the Receiver's efforts to perform his duties, by redirecting the energies of those people who are available as resources to the Receiver, and who, to date, have been willing to bear certain costs that would otherwise be paid by the Receivership.

1-30-19 Commission's Opposition p. 7 (Doc. #493).

Unfortunately, ADEC's conduct has systematically attempted to undermine the ability of the Respondents to fulfill their assistance and cooperation obligations mandated by the Receiver Order.  While Respondents are diligently performing their obligations, ADEC has persisted in its efforts to put Respondents in jeopardy of punishing legal action and expense – action intended to intimidate and coerce.  ADEC's persistence in asserting its deprecatory allegations against the

---

[24] The assistance and cooperation shown is consistent with the obligations of BioChemics and the SRT Trust, and all of their officers, directors, agents, and  representatives who were "required to assist the Receiver in fulfilling his duties and obligations" and "shall cooperate with and assist the Receiver in the performance of his duties".  10-9-18 Receiver Order par. 10-11, 24 (Doc. #452).

BioChemics, Inpellis, and SRT officers and representatives concerning how they carried out their official duties regarding BioChemics, Inpellis, and SRT Trust assets/claims -  allegations ADEC had no standing to bring against or on behalf of the respective estates at issue -  is calculated to intimidate and put people in fear of ruinous legal action, and coerce them into giving-in to ADEC's demands.  As documented in Respondents' 1-30-19 Opposition (Doc. #499 Section IID) ADEC has a history of engaging in such abusive conduct to get what it wants.  ADEC, in words and conduct, has expressly admitted that it uses the threat of  "multiple legal actions that would be lengthy, painful, expensive, and reputation ruining  …[and] very bad for everyone" in order to coerce others "to allow its debt against Inpellis be given first priority irrespective of any other interest including the Commission's lien securing the District Court Judgment.[25]

ADEC's "Demand Letter" was calculated to intimidate and coerce Respondents.  The "Demand Letter" began by referring to Respondents as "Defendants" and stated that unless there was an "immediate resolution … ADEC will pursue these claims …".  12-17-18 "Demand Letter" p. 1-2, 3 (Doc. #480-1) ("Absent an immediate resolution of this matter which makes ADEC whole, ADEC will pursue these claims to recover the value of its investment in Inpellis, as well as multiple damages, attorneys fees, and costs"; "litigation is likely here").  The 29 page "Demand Letter" ended with the admonition for the recipients to have their "legal counsel" contact ADEC to "resolve" the matter "short of litigation".  Id. p. 29 (Doc. #480-1) ("As to the damage claims of ADEC, I ask to hear from your legal counsel as soon as possible if there is any desire to resolve this matter short of litigation").

ADEC's malice was made manifest when, in the face of the repeated attempts by the Receiver and the Trustee over the holiday period to convince ADEC to stand down, ADEC filed

---

[25] See 1-30-19 Masiz Opposition (Doc. #499): Section IID; 6-5-17 Owsley Aff. par. 8 (Doc. #499-1); and, 6-8-17 Barrette Supp. Aff. par. 4 (Doc. #499-3 at Ex 2B).

its motion the day after New Years – a motion to lift the Receiver Order stay ADEC had

persisted in violating.   Adding insult to injury, ADEC supported its filing by making public its

"Demand Letter" (Doc. #480-1) and all its pejorative accusations.   Then, just to make sure

Respondents got the message and the work of the Receiver, the Trustee, and the Respondents

was made harder, ADEC moved a week later in the Bankruptcy Court to take discovery related

to its "claims" in the form of a purported Rule 2004 "Examination" of Trustee/Director/Counsel

Schlichtmann and former BioChemics/Inpellis science officer Zhen Zhu.[26]

 ADEC cannot point to any countervailing appropriate interest that justifies the

inequitable assertion of its "claims".   There is not and cannot be any good faith demonstration

that there should be a *de facto* devolvement of the functions of the Receiver and the Trustee to

ADEC.   Nor can ADEC make any showing that the SRT Trustees and the BioChemics and

Inpellis personnel have in any way not complied with their assistance and cooperation

obligations or executed them in anything other than a prompt and diligent manner.   In point of

fact, the recent filings by the SEC, the Receiver, and the Trustee remove any doubt regarding

ADEC's attempt to co-opt the claims of both the BioChemics and Inpellis estates and undermine

and interfere with the diligent assistance being provided the Receiver and the Trustee by the

targets of ADEC's misconduct.   SEC Opposition (Doc. #493);   Receiver's Objection (Doc.

#496)**;** and, Trustee's Statement  (Doc. #494).   Unfortunately, as documented in the 1-30-19

Masiz Opposition, such conduct by ADEC has been present from the outset of their involvement

in these proceedings.   1-30-19 Masiz Opposition (Doc. #499 Section IID).

 Nor should ADEC be allowed to obsuscate the nature of its wrong through the flat

misrepresentation to this Court in its 2-8-19 "Reply" (Doc. #502) that Respondents' were

---

[26] See, *In Re Inpellis* USBC DMa CA No. 18-12844-JNF (Doc. #63 at **Ex. 2**).

"*unwilling*[]" to agree to a tolling of ADEC's "claims while the stay is in place" (Doc. #502 p.

9).  Respondents' clearly stated position to ADEC, the SEC, the Receiver, and the Trustee is that

they would agree to the preservation of ADEC's rights regarding its "claims" *vis a vis* the statute

of limitations.[27]  Respondents' position is in keeping with basic equitable principles that toll the

statute of limitations during the period a litigant's rights are stayed by court order.  See,

*Menominee Indian Tribe Of Wisconsin*, 136 S. Ct. 750, 752 (2016)(" To be entitled to equitable

tolling of a statute of limitations, a litigant must establish (1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely

filing").  Respondents agree with the obvious.  The extraordinary circumstance of the stay of

ADEC's "claims" by operation of both the Receiver Order (Doc. #452) and the 11 USC §362

bankruptcy stay entitle any party whose purported "claims" are stayed from asserting, including

ADEC, are entitled to the equitable tolling of any applicable statute of limitations during the stay

period.

## III.   SHOW CAUSE ORDER REQUIRED TO DETERMINE WRONG & REMEDY

Court intervention is required to determine the knowing nature of ADEC's wrong and

fashion the appropriate remedies.

### A.  Court Has Inherent Power To Determine & Remedy Violations Of Its Orders

The Supreme Court has recognized that the Federal Courts have the inherent power to

determine and remedy inequitable conduct and violations of court orders.

> Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to
> manage their own affairs so as to achieve the orderly and expeditious disposition of
> cases.' [citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)] . That authority
> includes 'the ability to fashion an appropriate sanction for conduct which abuses the
> judicial process.' [citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)].

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).

---

[27]  See, 2-8-19 Affidavit of Jeffrey Sternklar at **Ex. 3**.

In order to ensure the orderly and expeditious disposition of ADEC's conduct regarding the Court's Receiver Order and to allow the Court the ability to efficiently fashion the appropriate sanction for a knowing abuse of judicial process, ADEC should be required to show cause why it should not be held to have knowingly violated the Court's 10-9-18 Order (Doc. #452) and why sanctions should not be imposed for such violation.

### B.  ADEC Should Not Be Allowed To Achieve Its Ends Through Inequitable Means

ADEC should not be allowed to profit from its inequitable conduct.  It is "well-established that a litigant who seeks equity must do equity."  *HDI-Gerling America Insurance Co. v. Navigators Insurance Co.*, 199 F. Supp. 3d 422, 430-431 ("That requirement closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief  ....") citing: *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (a party seeking equitable remedies must "come with clean hands"); *In re U.S. Lines*, Inc., 318 F.3d 432, 436 (2d Cir. 2003); *Grosch v. Kessler*, 256 N.Y. 477, 478, 177 N.E. 10 (1931) ("The plaintiff seeks the aid of equity, and must submit to the condition that he do equity himself.").  As the Supreme Court has made clear, "Th[e] doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith" and "This presupposes a refusal on its part to be 'the abetter of iniquity.'"  *Precision Instrument Mfg. Co., supra* at 814.

Under these circumstances, equity and the fair administration of justice requires that, upon a finding that ADEC knowingly violated the Court's Receiver Order (Doc. #452), ADEC not be allowed to benefit from its intentional misconduct.  For that reason, ADEC's 12-17-19 "Demand Letter", Exhibit A (Doc. #480-1) to its 1-2-19 Motion (Doc. 480) and its 2-8-19 "Reply" (Doc. #502), should be stricken.  In addition, since ADEC chose to base its 1-2-19 Motion (Doc. #480) on an assertion of "claims" that was in knowing violation of the Court's

Receiver Order as well as the flat misrepresentation of Respondents' position regarding its

"willingness" to acknowledge the equitable tolling of the statute of limiations, ADEC's 1-2-19

Motion (Doc. #480) should be denied.  And, to ensure that there is no further abuse of judicial

process and the interference in the functions of the Receiver and Respondents' cooperaton

obligations, ADEC should be enjoined from further violating the Court's Receiver Order until

further order of the Court.

## IV.    RELIEF REQUESTED

For these reasons, Masiz on behalf of himself and the non-party Respondents respectfully

requests the Court enter an order requiring ADEC to show cause why it should not be found to

have knowingly violated the Court's 10-9-18 Order (Doc. #452) and why sanctions should not be

imposed including:

- An order striking ADEC's 12-17-18 "Demand Letter" (Doc. #480-1) which was Exhibit A to its 1-2-19 Motion (Doc. #480) and ADEC's 2-8-19 "Reply" (Doc. #502);

- Denial of ADEC's 1-2-19 Motion (Doc. #480) that was based on the 12-17-18 "Demand Letter" (Doc. #480-1);

- An order enjoining ADEC from further violating the Court's Receiver Order (Doc. #452) until further order of the Court.

And, such other and further relief as the Court deems just

Dated: February 8, 2019

Respectfully submitted by his counsel on
behalf of John J. Masiz and the non-party
Respondents that are the subject of ADEC's
1-2-19 Motion (Doc. #480):

/s/ Jan Schlichtmann
Jan R. Schlichtmann, Esq. (BBO #445900)
Jan R. Schlichtmann Atty At Law
PO Box 233
Prides Crossing, Massachusetts 01965
Telephone: (978) 927-1037
Email: jan@schlichtmannlaw.com

**Rule 7.1 Certification**

Counsel for Defendant certifies that Defendant on February 4, 2019 provided a previous version of the Show Cause Motion to the parties for their review and has conferred with the parties in good faith to narrow or resolve this matter prior to Defendant filing his motion.  The SEC and the Receiver informed Defendant that they took "no position" regarding Defendant's motion.  However, Defendant and ADEC continued their discussions.  ADEC subsequently filed its 2-8-19 "Reply" (Doc. #502) containing the misrepresentation referred to in Defendant's 2-8-19 version of the Show Cause Motion.  Defendant provided a copy to the parties of Defendant's 2-8-19 version of the Show Cause Motion.   Because the Defendant and ADEC were not able to resolve their respective positions regarding the parties' disclosure obligations regarding the misrepresentation at issue, Defendant filed the 2-8-19 Show Cause Motion with the Court.  See, 2-8-19 Email from Howard Cooper, Esq. (which ADEC's counsel requested be attached to this Motion) and Respondents' response  both at **Ex. 4** attached.

Dated:  February 8, 2019

/s/ Jan Schlichtmann
Jan R. Schlichtmann, Esq. (BBO #445900)

# CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that, on February 8, 2019 a true and correct copy of the foregoing document was served on counsel for the Commission, the Receiver and ADEC by electronic service through the CM/ECF.

Dated: February 8, 2019

Respectfully submitted,

John J. Masiz
By his attorney

/s/ Jan Schlichtmann
Jan R. Schlichtmann, Esq. (BBO #445900)
Jan R. Schlichtmann Atty At Law
PO Box 233
Prides Crossing, Massachusetts 01965
Telephone: (978) 927-1037
Email: jan@schlichtmannlaw.com

**Electronic Service:**

**Commission:**

Kathleen Burdette Shields (BBO No. 637438)
David H. London (BBO No. 638289)
Securities and Exchange Commission
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
Telephone: (617) 573-8904 (Shields direct)
Email: shieldska@sec.gov
londond@sec.gov

**Counsel For ADEC:**

MORGAN LEWIS & BOCKIUS LLP
P. Sabin Willett
BBO No. 542519
One Federal Street
Boston, MA 02110
Telephone: (617) 341-7700
Facsimile: (617) 341-7701
sabin.willett@morganlewis.com

**Receiver**

Mark G. DeGiacomo, Esq. BBO #118170
Taruna Garg, Esq. BBO #654665
Murtha Cullina, LLP
99 High Street
Boston, MA 02110
O: 617-457-4000
F: 617-482-3868
mdegiacomo@murthalaw.com
tgarg@murthalaw.com

TODD & WELD LLP
Howard M. Cooper, Esq. BBO #543842
Joseph M. Cacace, Esq. BBO #672298
One Federal Street, 27th Floor
Boston, MA 02109
617-720-2626
hcooper@toddweld.com
jcacace@toddweld.com