UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE
COMMISSION,

                         Plaintiff,

   v.                                             Civil Action No. 12-12324-MLW

BIOCHEMICS, INC., ET AL.,

                         Defendants.

**NON-PARTY ADEC PRIVATE EQUITY INVESTMENTS, LLC'S
(i) OPPOSITION TO DEFENDANT MASIZ'S MOTION FOR ORDER TO
SHOW CAUSE,  (ii) CROSS-MOTION TO DISMISS REQUEST FOR AN
ORDER TO SHOW CAUSE, AND (iii) REQUEST FOR FEES UNDER THE
MASSACHUSETTS ANTI-SLAPP STATUTE, G.L.C. 231, SEC. 59H**

Howard M. Cooper (BBO #543842)
hcooper@toddweld.com
Joseph M. Cacace (BBO #672298)
jcacace@toddweld.com
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02109
(617) 720-2626

*Counsel to Non-Party ADEC Private Equity
Investments, LLC*

DATED:  February 22, 2019

Non-party ADEC Private Equity Investments, LLC ("ADEC") respectfully requests that the Court deny Defendant Masiz's Motion for Order to Show Cause (Doc. No. 506), dismiss Masiz's request for an order to show cause, and award ADEC its attorney's fees and costs under the Massachusetts Ant-SLAPP statute. *See* M.G.L. c. 231, § 59H. Masiz and the non-party "Respondents" for whom he purports to speak[1] improperly seek to use this Court's Stay of Litigation in its Order Appointing Receiver (Doc. No. 452) to somehow shield themselves from personal and individual liability to ADEC based upon their egregious wrongdoing. Masiz's motion is without merit or basis in fact or law. Indeed, Masiz incredibly seeks an order that ADEC show cause as to why it should not be sanctioned for knowingly violating this Court's Order despite the fact that ADEC has proactively sought this Court's authorization to bring certain claims against him and the other "Respondents" *before bringing them.* For the reasons discussed below, it is Masiz—not ADEC—who should be sanctioned under the Massachusetts Anti-SLAPP statute, M.G.L. c. 231, § 59H, for filing a frivolous motion in a clear effort to chill ADEC's protected petitioning activity under the First Amendment. Indeed, Masiz's desperate effort to avoid accountability to an investor is in keeping with his history of malfeasance towards investors as determined by the SEC over many years.[2]

## **FACTUAL BACKGROUND**[3]

Inpellis, Inc. ("Inpellis") was formed in March 2012 under Delaware law as a subsidiary

---

[1] Masiz purports to file the motion on his own behalf and on behalf of the following individuals and entities: Jan Schlichtmann, Daniel Glosband, Jack Altshuler, Marshall Sterman, Frank Manguso, Joseph McGonagle, Zhen Zhu, and BioPhysics Pharma, Inc. Masiz refers to himself and these individuals and entities collectively as the "Respondents." *See* Doc. No. 506 at 1 n.1.

[2] Masiz is no stranger to SEC enforcement actions. In addition to this action, which resulted in a judgment against Masiz, the SEC also sued Masiz in a 2004 enforcement action alleging false and misleading statements by VASO Active Pharmaceuticals, Inc., a former BioChemics subsidiary. That case resulted in a final judgment by consent against Masiz that permanently enjoined him from violating the antifraud provisions of the federal securities laws. Likewise, Masiz's representation to the Court that ADEC has misrepresented Respondents' position on tolling the statutes of limitation is of a similar character where, as discussed below, the emails between counsel on the issue make clear that Respondents have fabricated a non-existent and unnecessary issue.

[3] The factual basis for ADEC's claims is set forth exhaustively in ADEC's detailed December 17, 2018 demand letter and supporting exhibits. *See* Doc. No. 180-1. ADEC merely summarizes those detailed allegations here.

of BioChemics, Inc.  In November 2012, BioChemics granted Inpellis a perpetual, worldwide, royalty-free license to certain intellectual property owned at the time by BioChemics.  The intellectual property related to a transdermal drug delivery system including for the treatment of non-dermal pain.

In December 2012, the Securities and Exchange Commission ("SEC") brought this action against BioChemics and Masiz, its founder, then-President, CEO, and Chairman, and other individuals.  The SEC alleged violations of the securities laws related to misrepresentations made to BioChemics' investors by BioChemics and various officers and directors on matters unrelated to Inpellis or its intellectual property.  In September 2014 the Shareholder Resolution Trust (the "Trust") was created purportedly for the benefit of the persons and entities with an ownership interest in BioChemics.  The Trustees are Jan Schlichtmann, Daniel Glosband, and Jack Altshuler.  In January 2015, BioChemics transferred all of its shares in Inpellis to the Trust, making the Trust the sole stockholder of Inpellis.  On March 23, 2015, the SEC obtained a substantial consent judgment against BioChemics, requiring it to disgorge over $15 million, pay prejudgment interest of over $2 million, and pay a penalty of $750,000 (the "Judgment").  *See* Doc. No. 123.

In August 2015, ADEC invested $3 million in Inpellis by making a bridge loan to Inpellis to help fund an initial public offering ("IPO") of Inpellis stock.  Importantly, ADEC's Note with Inpellis was automatically convertible to shares of ADEC common stock if ADEC's IPO grossed $10 million or more.  The key considerations that caused ADEC to invest in Inpellis were: (1) the exclusive, perpetual, royalty-free worldwide rights that Inpellis had to BioChemics' intellectual property; (2) the SEC had already reviewed multiple drafts of Inpellis' registration statement; and (3) most importantly, that Inpellis was represented to be independent from

BioChemics and its liability to the SEC (i.e., independent management and board, no direct ownership in or control over Inpellis by Masiz or BioChemics, and Inpellis was not responsible in any way for the SEC's judgment against BioChemics).  ADEC had no reason to expect that the two supposedly independent Trustees of the Trust (Glosband and Altshuler) would go along with Schlichtmann's scheme to defraud ADEC and strip its investment in Inpellis of any value whatsoever.

In October 2015, just a few months after ADEC's investment, Inpellis agreed to purchase from BioChemics for $750,000 the legal title to the licensed intellectual property and joint ownership of certain other BioChemics intellectual property.  The effect of that transaction was to extinguish the license agreement between Inpellis and BioChemics and make Inpellis the owner of the intellectual property.  Through this purchase, Inpellis expressly acquired the patents, continuation rights, and "Know-How," which was broadly defined, related to certain patents and products, with the principal United States patent being for Ibuprofen for Topical Administration. *See* Doc. 480-1 at 12.  The intellectual property purchase agreement included confidentiality provisions that barred sharing confidential information with third parties and granted Inpellis a right of first refusal as to the discovery or development by BioChemics of any new drug compound, molecule or entity and/or new drug delivery or transport mechanism. *Id*.

BioChemics made its initial payment on the SEC's judgment in late 2015 but then missed its next installment payment in November 2015, which made all outstanding payments under the SEC's judgment immediately due and payable.  At that time, Inpellis' management and investment banker informed ADEC that the Inpellis IPO was being pushed out to the first quarter of 2016.  ADEC was told that the IPO had been put on hold—not that it would be called off.

At some point in early 2016, Schlichtmann (with the assistance or acquiescence of

Glosband and Altshuler) unilaterally agreed with the SEC to call off Inpellis' IPO. Schlichtmann, Glosband, and Altshuler did this without the approval of either Inpellis' independent management or board of directors.  Their termination of Inpellis' IPO process, however, left Inpellis without the prospect of raising capital or operational cash in the near term. It also meant that the triggering event for the conversion rights in ADEC's Note with Inpellis would not take place, which meant that ADEC would not become a shareholder of Inpellis.

In late February or early March 2016, Schlichtmann, Glosband, and Altshuler eliminated Inpellis' management and board of directors, unbeknownst to ADEC at the time.  Schlichtmann, Glosband, and Altshuler ignored admonitions from Inpellis' management and board to return the funds that ADEC loaned to Inpellis.  It is apparent to ADEC that Schlichtmann, Glosband, and Altshuler forced out Inpellis' independent management and directors after management began taking steps to move control of Inpellis' finances away from Frank Manguso, who was controlling both Inpellis' and BioChemics' finances, after Inpellis' newly hired CFO communicated concerns about what he perceived to be questionable financial transactions between Inpellis and BioChemics.  Schlichtmann, Glosband, and Altshuler installed a hand-picked director named Joseph McGonagle.

After removing Inpellis' management and directors, Schlichtmann, Glosband, and Altshuler then reached a modified settlement agreement between the SEC and BioChemics, which caused Inpellis to grant a security interest in its intellectual property to the SEC to secure the SEC's judgment *against BioChemics*.  On April 14, 2016, the SEC and BioChemics (with Schlichtmann acting as its attorney) jointly moved to modify the Judgment pursuant to a modified settlement agreement between the SEC, BioChemics, and the Shareholder Resolution Trust.  *See* Doc. No. 197.  The parties agreed that the Trust would "cause Inpellis to enter into [a]

Security Agreement" that would grant the SEC a security interest in Inpellis' intellectual property "to secure payment of the Modified Judgment" against BioChemics. *See* Doc. No. 307-1. A Modified Judgment was entered as an order of the Court on May 25, 2016. *See* Doc. No. 202. The purported security interest was granted in April 2016 without any consideration to Inpellis or ADEC and without any notice to Inpellis' creditors—including ADEC.

All the while Schlichtmann deliberately concealed from ADEC the existence of the SEC's security interest in Inpellis' intellectual property. In March 2016, E. Burke Ross, Jr., the manager of ADEC, had his first communication with Schlichtmann. During that conversation, Schlichtmann told Mr. Ross that he was working on a number of alternatives and his "first priority" was to "take care" of ADEC and the other noteholders. Schlichtmann claimed he could not discuss the settlement with the SEC until it was approved by this Court and he said *nothing* about the security interest that he intended to "cause" Inpellis to grant in favor of the SEC.

On June 1, 2016, ADEC received a letter from the Trustees stating that this Court approved the settlement between the SEC, BioChemics, and the Trust; the SEC had initiated a non-public investigation that had put the Inpellis IPO "on hold"'; the SEC investigation of Inpellis had been resolved as part of an agreement with the SEC, BioChemics, and the Trust; the Trust concluded that "it is not in the business interest of Inpellis to pursue an IPO at this time"; the Trust had reduced the Board to a single director (Joseph McGonagle); and Inpellis' independent CEO would no longer be an officer of the company. Doc. No. 480-1 at 18. Critically, the letter *did not inform ADEC that Inpellis had granted a security interest to the SEC*. Instead, the letter claimed that the "priority" was to meet the obligations to the noteholders. Doc. No. 480-21 at 1.

It now appears to ADEC that Schlichtmann, Glosband, Altshuler, Masiz, Sterman,

Manguso, and McGonagle were engaged in a deliberate effort to conceal from ADEC that Inpellis was going to grant to the SEC a security interest in Inpellis' intellectual property. Indeed, their efforts prevented ADEC from learning about the security interest until June 29, 2016, when ADEC was finally provided a copy of the April 14, 2016 Joint Motion in this case describing the settlement between the SEC, BioChemics, and the Trust. But even at that time, ADEC was only provided a copy of the *motion*—not a copy of the settlement agreement itself. Mr. Ross then spoke to certain members of Inpellis' ousted management and board. Based on those conversations, it became clear to ADEC that while Schlichtmann was telling ADEC that he could not reveal the terms of the modified settlement with the SEC and his "first priority" was to "take care" of ADEC and the noteholders, Schlichtmann and the others were actually pulling the rug out from underneath ADEC and the noteholders by agreeing to pledge to the SEC Inpellis' intellectual property (which was the principal asset to support repayment of their notes) and blocking an Inpellis IPO to extinguish ADEC's and the other noteholders' conversion rights.

As the Court is aware, ADEC sought to intervene in this action in May 2017. *See* Doc. No. 275. At least some of the proposed defendants were opposed to ADEC's request to intervene. After a number of hearings and extensive briefing, this Court denied ADEC's motion to intervene on procedural grounds on March 22, 2018, without ruling on the merits of ADEC's claims to avoid the SEC's security interest. *See* Doc. Nos. 411 & 412.

In July 2018, ADEC and other Inpellis creditors filed an involuntary bankruptcy petition against Inpellis in the Bankruptcy Court for the District of Massachusetts. *See In re: Inpellis, Inc.*, No. 18-12844 (Bankr. D. Mass.). ADEC's position is that Inpellis' grant of a security interest to the SEC is a voidable fraudulent transfer done to serve the interests of insiders affiliated with BioChemics, including Schlichtmann, Glosband, Altshuler, Masiz, Sterman,

6

McGonagle, and Manguso.

Since then, bankruptcy filings have revealed that certain Masiz-related entities and other creditors are currently claiming security interests in BioChemics' and Inpellis' intellectual property, which Schlichtmann, Glosband, Altshuler, Masiz, Sterman, McGonagle, and Manguso led ADEC and the noteholders, Inpellis, the SEC, and Inpellis' potential IPO investors to believe had been released no later than Inpellis' October 2015 purchase of BioChemics' intellectual property. Doc. No. 480-1 at 22-25. None of those security interests were disclosed in various agreements and representations made to ADEC, Inpellis, and Inpellis' investors. *Id.* It is clear to ADEC that Masiz, Sterman, Manguso, and Schlichtmann among others deliberately misrepresented that BioChemics owned its intellectual property free and clear of any liens. That was egregiously misleading. What is more, the recent Inpellis bankruptcy filings describe the asserted insider security interests as *undisputed* and as *not being held by related parties*. Concealing those security interests worked a fraud on ADEC and the noteholders, Inpellis, Inpellis' potential IPO investors, the SEC, the Receiver, and the Court in this action. *See id.*

ADEC also recently learned that Inpellis' principal Ibuprofen patent was assigned not to Inpellis but to BioChemics, which filed a "continuation" patent application in December 2016—just one month after the noteholders entered into a Forbearance Agreement with Inpellis which expressly prohibited such transactions. This action also violated several other agreements. *See id.* at 25-26.

ADEC also just recently learned that Schlichtmann, Glosband, Altshuler, Masiz, Sterman, McGonagle, and Manguso are involved in a *new venture* called *BioPhysics Pharma, Inc.*, which is using Inpellis' and BioChemics' intellectual property without permission. In June 2017, at least Schlichtmann, Masiz, and Sterman formally incorporated BioPhysics Pharma,

hired Inpellis' chief scientist (Zhen Zhu) as an employee, and took over Inpellis' lab in Beverly, Massachusetts.  Doc. No. 480-1 at 26-29; *see also* Exhibit 1, Excerpt of *Inpellis, Inc.* Meeting of Creditors at 74:14-75:13, 111:16-22, 112:3-4, 114:21-115:1, 135:12-20.  According to Manguso, Inpellis stopped operating on the last business day of 2017 and BioPhysics Pharma started operating on the first business day of 2018.  Exhibit 1 at 113:12-15.  BioPhysics Pharma's so-called "G4" technology for "transdermal drug delivery" appears to be the same as BioChemics' and Inpellis' technology, even though BioPhysics has no authorization to use that technology.  Doc. No. 480-1 at 26-29.  Masiz—a non-scientist with a demonstrated record of fraud—now claims that he developed the technology in an "epiphany" independently of BioChemics' and Inpellis' intellectual property.  That claim is absurd.  A comparison of BioPhysics' website with Inpellis' and BioChemics' technology reveals that BioPhysics must be using Inpellis' and BioChemics' intellectual property.  *See id*. at 27-28.  Moreover, Schlichtmann and his co-conspirators claimed to be putting together a transaction whereby BioPhysics would purchase BioChemics' and Inpellis' intellectual property for $26 million.  While that transaction was never consummated, the clear implication is that the intellectual property does not belong to BioPhysics.  Otherwise, there would be no reason to pay $26 million for the intellectual property.

The upshot of all this is that for the past several years, Schlichtmann and his co-conspirators have been telling the SEC, ADEC and the noteholders, and the Court in this action that they were close to a solution that would repay the SEC and the noteholders, while simultaneously conspiring to secretly establish BioPhysics Pharma to use Inpellis' and BioChemics' intellectual property at this purportedly separate entity free from any claims by ADEC and the noteholders.  Schlichtmann and his co-conspirators clearly engaged in this fraudulent scheme to enrich themselves at the expense of ADEC and the other noteholders.

As a result of this misconduct, on December 17, 2018, ADEC sent a demand letter through counsel to Jan Schlichtmann, Daniel Glosband, Jack Altshuler, John Masiz, Marshall Sterman, Joseph McGonagle, Frank, Manguso, BioPhysics Pharma, Inc., and BioChemics, Inc. Doc. No. 480-1.  The demand letter set forth in detail the facts summarized above.  The letter set forth ADEC's intent to bring *individual* claims against *non-receivership parties and assets*.  The claims set forth in the demand letter included, without limitation, fraud, conversion, breach of fiduciary duty, negligent misrepresentation, tortious interference with contractual and advantageous relations, civil conspiracy, violation of the securities laws, and unfair and deceptive business practices in violation of G.L. c. 93A, § 11.

The demand letter made clear that "[i]f necessary, ADEC will seek relief from the Order Appointing Receiver from BioChemics entered on October 9, 2018" in this action.  Doc. No. 480-1 at 2 n.1.  The demand letter also recognized that Inpellis was in bankruptcy and therefore ADEC "asserts no claims here against or  belonging to Inpellis."  *Id.* at 2.  Instead, the letter made clear that ADEC's claims are "personal, individual, and direct in nature, and arise out of the direct fraud and other wrongdoing . . . perpetrated on ADEC."  *Id.*

Counsel from Murtha Cullina LLP wrote to undersigned counsel on behalf of the BioChemics Receiver Mark DeGiacomo, Esq. shortly after receiving the letter.  Counsel from Murtha Cullina explained the Receiver's position that the Court's Order Appointing Receiver operates to stay claims by ADEC against various parties including BioChemics and the Shareholder Resolution Trust.

On October 9, 2018, this Court entered an Order Appointing Receiver.  *See* Doc. No. 452.  The Order Appointing Receiver contained a Stay of Litigation which provides that:

> the following proceedings—<u>excluding</u> the instant proceeding, all police or regulatory actions, and actions of the [SEC] related to the above-captioned

enforcement action—are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) BioChemics or the Trust, including subsidiaries and partnerships other than Inpellis; or, (d) any of the past or present officers, directors, managers, agents, or general or limited partners of BioChemics or the Trust sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

*See* Doc. No. 452 ¶ 26.

The Order Appointing Receiver goes on to state that "[t]he parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process." *Id*. ¶ 27.  The Order Appointing Receiver then states that: "All Ancillary Proceedings are stayed in their entirely, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court." *Id*. ¶ 28.

As a result of the Receiver having taken this position, ADEC promptly filed a motion in this Court (as ADEC explained it would in its demand letter) seeking relief from the Stay of Litigation in the Order Appointing Receiver.  Doc. No. 480.  ADEC set forth its position that its claims fall outside the scope of the stay of litigation in the Court's Order Appointing Receiver. *Id*.  ADEC also requested, to the extent the Court disagrees that ADEC's proposed claims fall outside the stay of litigation, that the Court permit ADEC's claims to go forward in the exercise of its discretion.  *Id*.  ADEC has taken no further action on those claims.  It has not filed any lawsuits nor has it employed process in furtherance of its proposed claims.

Responses or oppositions to ADEC's motion were filed by (1) the Securities and

Exchange Commission (Doc. No. 493), (2) the Receiver appointed for BioChemics, Inc. (Doc. No. 496), (3) the Chapter 7 Bankruptcy Trustee for Inpellis, Inc. (doc. No. 494), and (4) Defendant Masiz (Doc. No. 499).  ADEC filed its Reply brief on February 8, 2019.  Doc. No. 502.  Masiz responded with the pending Motion for Order to Show Cause.  Doc. No. 506.

Separately, ADEC filed in the Inpellis bankruptcy proceeding a routine motion for leave to conduct Bankruptcy Rule 2004 Examinations of Jan Schlichtmann and Zhen Zhu.  Doc. No. 506-2; Bankr. Doc. No. 63.  The Inpellis bankruptcy trustee did not object.  One objection was filed, nominally by Inpellis, the Debtor, but self-evidently the brainchild of its control parties, including Schlichtmann, one of the potential witnesses.  Doc. No. 506-1; Bankr. Doc. No. 68. The grounds for ADEC's motion are to discover—for the benefit of the Inpellis estate—facts concerning transfers and conversion of the Debtor's assets and intellectual property by and to insiders and related parties.  Exhibit 2, ADEC's Reply Br. in Support of Motion for Leave to Conduct Rule 2004 Examinations; Bankr. Doc. No. 71-1.  This Court modified the Order Appointing Receiver to permit the bankruptcy action and any process appropriately employed therein.  *See* Doc. No. 452 at 10 (carving out Inpellis from stay of litigation).  ADEC's motion to conduct the Rule 2004 examinations was proper and remains pending, subject to this Court's ruling on the Expedited Motion for Clarification of the Receivership Order.  Doc. No. 507.

## **ARGUMENT**

### I.   **ADEC Has Not Violated the Court's Order Appointing Receiver Because ADEC Is Not Asserting Claims Against BioChemics, Inc. or the Shareholder Resolution Trust**

From the outset ADEC has been clear about the claims that it is *not* intending to bring. Indeed, ADEC's December 17, 2018 demand letter explained that "the claims that ADEC intends to bring against [the proposed defendants] are personal, individual, and direct in nature, and arise out of the direct fraud and other wrongdoing [the proposed defendants] have

perpetrated on ADEC." *Id*.  ADEC also clearly stated that, "[i]f necessary, ADEC will seek relief from the Order Appointing Receiver for BioChemics entered on October 9, 2018 in the SEC Enforcement Action." *Id*. n.1.  That is exactly what ADEC has done.

ADEC repeated its position in the Motion for Relief from Stay of Litigation filed in this action.  Doc. No. 480.  In the Motion, ADEC again stated that because Inpellis was in bankruptcy, "ADEC asserts no claims here against or belonging to Inpellis."   Doc. No. 480 ¶ 12.  ADEC also made clear that "ADEC asserts no claims here against BioChemics or the [Shareholder Resolution] Trust." *Id*.  "Rather, the claims that ADEC intends to bring against the Proposed Defendants are personal, individual, and direct in nature, and arise out of the direct fraud and other wrongdoing the Proposed Defendants have perpetrated on ADEC." *Id*.  ADEC informed the Court and the parties that it "is not seeking leave to bring claims against BioChemics itself" and "[t]o the extent ADEC has claims against BioChemics, ADEC will either file those claims with the Receiver or pursue them only pursuant to leave of Court sought by a separate motion." *Id*. n.1.

Less than two weeks later, undersigned counsel wrote to Attorney Mark DeGiacomo, BioChemics' court-appointed receiver, to reiterate ADEC's position that "ADEC seeks no relief by means of the demand letter from BioChemics or the receivership estate."  Doc. No. 502-1.  Attorney Cooper went on to explain that "[p]ending Judge Wolf's review, [ADEC does] not plan to bring an action against any person who is within the scope of the stay provision of Judge Wolf's order." *Id*.

ADEC's position on these issues and the very fact that it is seeking permission to bring the claims described in ADEC's demand letter demonstrate that ADEC is doing everything it can to ensure *compliance* with this Court's Order Appointing Receiver.

**II.     ADEC Has Not Violated the Automatic Bankruptcy Stay Under 11 U.S.C. § 362 Because ADEC Is Not Asserting Any Claims Against or Belonging to the Inpellis Estate**

ADEC has taken and intends to take no action that will violate the automatic bankruptcy stay.  On January 15, 2019, ADEC's counsel at Morgan Lewis & Bockius LLP wrote by e-mail to Attorney John J. Aquino, the Chapter 7 trustee of the Inpellis estate, copying Inpellis' bankruptcy counsel.  Doc. No. 502-2.  Attorney Willett wrote to assure Attorney Aquino "that it is not the intention of ADEC or any noteholder to violate the [bankruptcy] stay." *Id*.  Attorney Willett explained in no uncertain terms that "ADEC and the noteholders . . . will not pursue (except by means of proof of claim filed with the Bankruptcy Court) any claims against Inpellis or its estate, including any causes of action that belong to Inpellis." *Id*.

**a.     ADEC Seeks to Bring a Direct Breach of Fiduciary Duty Claim Against Inpellis' Controlling Shareholders Based on Fiduciary Duties Owed Directly to ADEC, But Only If the Inpellis Chapter 7 Trustee or the Bankruptcy Court Permit Such Claims**

As explained in ADEC's demand letter, the Note between ADEC and Inpellis contains a "Mandatory Conversion" provision that states "the aggregate principal amount of this Note *shall be converted, automatically and without any further action on the part of the Holder, the Company or any other Person*" if ADEC "completes an underwritten public offering of its Common Stock with gross proceeds to the Company of not less than $10 million. " Doc. No. 480-11 § 4(b)  (emphasis added).

This automatic conversion feature means that Inpellis' controlling shareholders (i.e., Schlichtmann, Glosband, and Altshuler, who exercised control over a majority of Inpellis' shares and dominated the company's management) owed fiduciary duties *directly* to ADEC, separate and apart from any fiduciary duties they may have owed to Inpellis. *See Glinert v. Wickes Companies, Inc.*, 1990 WL 34703, at *9 (Del. Ch. Mar. 27, 1990) (holders of warrants with

automatic conversion feature deemed equitable shareholders who are owed fiduciary duties).

The conduct described in ADEC's demand letter sets out facts that support ADEC's direct

breach of fiduciary duty claims because ADEC suffered unique harm caused by the fraudulent

conduct described in the letter, and ADEC would receive a unique benefit of any recovery or

other remedy distinct from Inpellis or its shareholders generally.  *See, e.g.*, *Tooley v. Donaldson,*

*Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).  For example, the equitable

shareholders of Inpellis (ADEC and the noteholders) did not become shareholders only because

Schlichtmann with the assistance or acquiescence of Glosband and Altshuler unilaterally agreed

with the SEC to call off Inpellis' IPO, which prevented the triggering event that would have

converted the notes into shares, and which thereby froze ADEC and the other noteholders out of

Inpellis in breach of Schlichtmann's and the others' direct fiduciary duties to ADEC.  Those are

direct claims of ADEC that are not subject to the bankruptcy stay.  *See, e.g.*, *Sehoy Energy LP v.*

*Haven Real Estate Grp., LLC*, 2017 WL 1380619 (Del. Ch. Apr. 17, 2017) (direct breach of

fiduciary duty claims by investors against general partner not subject to bankruptcy stay).

In his January 15, 2019 e-mail to the Chapter 7 trustee for the Inpellis bankruptcy estate,

ADEC Attorney P. Sabin Willett also noted ADEC's agreement that in Attorney Aquino's

"capacity as chapter 7 trustee of Inpellis, [Attorney Aquino] ha[s] the sole right to pursue

fiduciaries and former fiduciaries of the company for breaches of their fiduciary duties . . . owed

to Inpellis, and that absent an appropriate order of the bankruptcy court, only [the Chapter 7

trustee] may do so."  Doc. No. 502-2.  Attorney Willett then explained the "narrow" breach of

fiduciary duty claim that ADEC is seeking to pursue, which is described above.  *Id*.  The e-mail

made clear that "it is solely those breaches of fiduciary duty to which the [demand] letter refers"

and that ADEC would "not pursue any other claims for breach of fiduciary duty by current or

former fiduciaries of Inpellis" without "appropriate relief from the bankruptcy court." *Id*.

The Chapter 7 trustee of the Inpellis bankruptcy estate is apparently of the view that even the narrow breach of fiduciary duty claim set forth above and in ADEC's prior correspondence is subject to the automatic bankruptcy stay in the Inpellis bankruptcy action.  Without waiving the right to contest that position in the Bankruptcy Court if necessary, ADEC has communicated to the Chapter 7 trustee and reiterates here that ADEC will not bring even the narrow direct breach of fiduciary duty claims described above unless the Chapter 7 trustee agrees or the Bankruptcy Court orders that ADEC can file such claims.  In light of this position, ADEC will seek from the Bankruptcy Court a comfort order that the bankruptcy stay does not bar ADEC form pursuing the narrow direct breach of fiduciary duty claims described above or, in the alternative, an order tolling the statute of limitations if the Bankruptcy Court disagrees with ADEC.

ADEC's position on the breach of fiduciary duty claims lays to rest the concerns raised in the Chapter 7 trustee's statement in response to and the Receiver's objection to ADEC's Motion for Relief from Stay.

### b.   ADEC is Not Pursuing Claims for Conversion

ADEC will not pursue claims for conversion of the funds it invested in Inpellis absent an order from the Bankruptcy Court permitting those claims.  In fact, ADEC has already informed the Inpellis Chapter 7 trustee that "[a]ll claims for conversion of [the] funds [invested by ADEC in Inpellis] by non-Inpellis parties are property of the estate, and will not be pursued by ADEC and the Noteholders absent an appropriate order by the bankruptcy court."  Doc. No. 502-2. Again, ADEC's position on these issues lays to rest the concerns raised in the Chapter 7 trustee's statement in response to and the Receiver's objection to ADEC's Motion for Relief from Stay. *See* Doc. No. 494 (trustee explaining that ADEC "acknowledged . . . that any claims for

conversion of proceeds of ADEC's investment in Inpellis are property of the bankruptcy estate").

**III.    ADEC's Claims Do Not Challenge Conduct Taken by the Proposed Defendants in their Capacities as Principals of BioChemics or the Shareholder Resolution Trust**

The Stay of Litigation in the Order Appointing Receiver applies to "civil legal proceedings . . . involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) BioChemics or the Trust, including subsidiaries and partnerships other than Inpellis; or, (d) any of the past or present officers, directors, managers, agents, or general or limited partners of BioChemics or the Trust sued for, or in connection with, any action taken by them *while acting in such capacity*."  *See* Doc. No. 452 ¶ 26 (emphasis added).

The thrust of ADEC's allegations is that the proposed defendants were in fact acting on their own behalf or on behalf of other *non-receivership* entities (including BioPhysics Pharma, Inc. and other Masiz-related or controlled entities).  Therefore, even if the proposed defendants were nominally "trustees" or "officers" they were in fact acting on their own behalf and/or as agents of other non-receivership entities for the benefit of themselves and/or those non-receivership entities.  Therefore, the proposed defendants were not acting in their capacities as officers, managers, or agents *of BioChemics or the Trust* and ADEC's claims do not violate the stay in this action.

**IV.    ADEC Did Not Misrepresent "Respondents'" Position on the Statute of Limitations**

The Court should reject the hand-waving by Masiz and the "Respondents" concerning their position on the statute of limitations.  Masiz and the "Respondents" claim that ADEC "misrepresented" their position by stating in ADEC's Reply Brief in Support of its Motion for Relief from Stay of Litigation that the "Respondents" had "indicated an unwillingness to agree to toll the statutes of limitations on [ADEC's proposed] claims while the stay is in place."  Doc. No. 502 at 9.  As the February 8, 2019 email exchange between Attorney Cooper and Attorney

Schlichtmann makes clear, this was nothing more than a miscommunication.  *See* Doc. No. 506-4.  Attorney Cooper made clear that ADEC "certainly wish[es] to accurately represent everyone's position" and explained that it was entirely possible that "we may have been talking past each other on this issue" during a telephone conference during which numerous topics and a potential settlement were discussed.  *Id*. at 3.  Attorney Cooper then offered to file a corrected pleading if counsel in this action would indicate that they agree to staying the statute of limitations on all claims that ADEC may bring against all parties.  *Id*.  Attorney Schlichtmann refused to do so and no other counsel took a different approach.  *See id*. at 2.

In the Show Cause Motion and Affidavit of Attorney Sternklar, Masiz states on behalf of all of the "Respondents"—which include all of the parties against whom ADEC wishes to assert claims—that the "Respondents" agree that any statutes of limitations applicable to stayed claims are tolled throughout the duration of any stay. Doc. No. 506 at 2 & n.4, 18; Doc. No. 506-3.

ADEC at no time intentionally misrepresented the record.  ADEC stated "Respondents'" position as ADEC understood it at the time. Now the statements in the Show Cause Motion and Attorney Sternklar's Affidavit clarify the "Respondents'" position on the tolling of the statute of limitations.  However, as explained below, the "Respondents'" agreement that ADEC's stayed claims are tolled does not resolve the issue because the "Respondents" are seeking to shield themselves from individual liability under the protection of this Court's Order Appointing Receiver.  The Court should not permit them to do so.

## V.     ADEC Has Acted in Good Faith—Masiz and the "Respondents" Have Not:  They Have Unclean Hands and Should Not Be Granted Equitable Relief

Defendant Masiz essentially argues that ADEC should be precluded from equitable relief because it has conducted itself inequitably.  That is the height of absurdity and hypocrisy.

First, as explained in detail above, ADEC has carefully sought to comply with the Stay of

Litigation in this Court's Order Appointing Receiver and with the bankruptcy stay.  Virtually

every communication from ADEC has indicated that it had no intention of violating either stay

and would seek relief from this Court and the Bankruptcy Court—as it has done and will soon

do—before asserting any claims that might conceivably be covered by either stay.  The very fact

that ADEC filed the Motion for Relief from Stay before filing suit against any of the proposed

defendants is dispositive of the assertion that ADEC "knowingly violated" any stay.  ADEC is

seeking guidance from this Court concerning the applicability of the Stay of Litigation in this

Court's Order Appointing Receiver because it is not clear that the order even applies to the

particular claims that ADEC seeks to bring.  That is the opposite of a violation of the Order

Appointing Receiver.  *See, e.g.*, *United States v. Saccoccia*, 433 F.3d 19, 27-28, 31 (1st Cir.

2005) (reversing civil contempt finding where order was not "clear and unambiguous" as to "the

precise conduct on which the contempt allegation is based").  Finally, the case on which Masiz

relies for the Court's inherent authority to sanction bad-faith conduct involved the deliberate

bad-faith concealment of critically relevant documents concerning the testing of a tire in a

lawsuit alleging that the tires were defective.  *See Goodyear Tire & Rubber Co. v. Haeger*, 137

S. Ct. 1178 (2017).  Clearly, nothing like that is present here.

Second, ADEC's proposed claims do not "usurp" the BioChemics Receiver's function

nor do they interfere with the cooperation obligations of the "Respondents" for whom Masiz

purports to speak.  ADEC seeks to bring claims that are personal, individual, and direct in nature,

and arise out of the direct fraud and other wrongdoing the proposed defendants have perpetrated

on ADEC.  An independent lawsuit by ADEC on such claims will not interfere with the

Receiver's or the "Respondents'" functions or obligations.  They are free to carry out their

functions and meet their obligations under the Court's supervision in this action.  A lawsuit by

ADEC seeking damages against the proposed defendants for their own wrongdoing should not in any way prevent the Receiver or "Respondents" from conducting themselves appropriately in the context of the BioChemics receivership.

Finally, it is Masiz and the other proposed defendants (Schlichtmann, Glosband, Altshuler, Sterman, McGonagle, Manguso, and BioPhysics Pharma, Inc.) who have unclean hands and should be precluded from equitable relief—*not* ADEC.  ADEC will not repeat the extensive allegations set forth in its December 17, 2018 demand letter and summarized above.  It suffices to say that the proposed defendants have engaged in and continue to carry out an elaborate fraudulent scheme aimed at leaving ADEC and the other noteholders with nothing.  It is the proposed defendants—*not* ADEC—who have unclean hands and are tainted by their bad-faith misconduct.  This equitable consideration actually weighs heavily *in favor of* ADEC.  *See, e.g.*, *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 488 F.3d 11, 15 (1st Cir. 2007) ("when a district court considers whether or not to award equitable relief, one factor that it must consider is the extent to which the [party] has engaged in certain misconduct"); *see also Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (a court of equity will refuse to be "the abetter of iniquity").

At bottom, the proposed defendants now seek to insulate themselves from liability by holding ADEC to the terms of a stay order in a case in which at least some of the proposed defendants themselves prevented ADEC from becoming a party.  The game that the proposed defendants are playing is clear.  The Court should not countenance their attempt to shield themselves from liability for their wrongdoing.

## VI.    The Court Should Dismiss the Request for an Order to Show Cause and Order Masiz to Pay ADEC's Attorney's Fees and Costs Under M.G.L. c. 231, § 59H

The Massachusetts Anti-SLAPP statute allows courts to "dispose expeditiously of

meritless [claims] that may chill petitioning activity." *Town of Hanover v. New England Reg'l Council of Carpenters*, 467 Mass. 587, 594 (2014) (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 166 (1988)).  Once the moving party, here ADEC, makes a threshold showing that Masiz and the "Respondents'" claim for an order to show cause is based on ADEC's petitioning activities alone, and have no substantial basis other than or in addition to the petitioning activities, the burden then shifts to Masiz and the "Respondents." *Duracraft*, 427 Mass. at 167-68.  There can be no serious dispute that Masiz and the "Respondents'" Motion to Show Cause is based *solely* on ADEC's right to petition this Court, the Bankruptcy Court, and the court in which ADEC ultimately elects to bring its claims against the "Respondents." Therefore, the burden is on the "Respondents" to show that ADEC's exercise of its right to petition is devoid of any reasonable factual support or any arguable basis in law and caused actual injury to the "Respondents." *Id*.; M.G.L. c. 231, § 59H.  "Respondents" cannot meet that burden.  One need look no further than the detailed demand letter for the extensive factual and legal support for ADEC's claims.  Further legal support for ADEC's claims is laid out in the filings before this Court.  Finally, the "Respondents" cannot establish that their Motion to Show Cause was not brought primarily to chill ADEC's legitimate exercise of its right to petition.  *See Blanchard v. Steward Carney Hosp.*, 477 Mass. 141 (2017).  In fact, chilling ADEC's right to petition is the *only* purpose of the Motion to Show Cause.

In short, it is Masiz—not ADEC—who should be sanctioned for filing this frivolous motion in an effort to chill ADEC's core protected petitioning activity.

## CONCLUSION

The Court should summarily deny Masiz's motion, dismiss the request for a show cause order, and order Masiz to pay ADEC's attorney's fees and costs under M.G.L. c. 231, § 59H.

Respectfully submitted,

ADEC PRIVATE EQUITY INVESTMENTS, LLC,

By its attorneys:


*/s/ Howard M. Cooper*
Howard M. Cooper (BBO #543842)
hcooper@toddweld.com
Joseph M. Cacace (BBO #672298)
jcacace@toddweld.com
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02109
(617) 720-2626


DATED:  February 22, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2019 the foregoing was served by this Court's

CM/ECF system on all counsel of record.


*/s/ Joseph M. Cacace*
Joseph M. Cacace (BBO #672298)