UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, | ) ) ) ) | |
| v. | ) ) | C.A. No. 12-12324-MLW |
| BIOCHEMICS, INC., JOHN J. MASIZ, CRAIG MEDOFF, and GREGORY S. KRONING, Defendants. | ) ) ) ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                          January 17, 2020

I.   SUMMARY

For the reasons explained in this Memorandum, the court is
denying the November 22, 2019 Emergency Motion by Defendant John
Masiz Requesting an Order Staying the Court's 11-5-19 (Doc. #574),
11-20-19 (Doc. #579) & 11-22-19 (Doc. #582) Orders so that Masiz
may Immediately Appeal the Court's Orders Denying Masiz Relief
(Dkt. No. 584) (the "Emergency Motion").  Since September 2019,
Masiz has repeatedly failed to obey orders directing him to file,
for the public record, evidence relating to whether he has complied
with the injunction prohibiting him from again violating federal
securities laws and to make certain disclosures concerning his
history to potential investors that he solicits.  The documents at
issue also relate to decisions the court must make in this
continuing litigation.

The court granted a temporary stay on November 22, 2019 in order to consider the arguments Masiz could -- and should -- have made in response to the September 6, 2019 Order he did not obey and in response to subsequent orders that he also did not obey.

On November 21, 2019, Masiz requested a stay to permit him to focus on mediation of a dispute that relates to this case of 45 days or until seven days after the mediation concluded, which the court denied. The temporary stay resulting from the November 22, 2019 Emergency Motion for a stay pending appeal has been in effect for more than 45 days. The mediation concluded unsuccessfully on December 16, 2019. Masiz's belated, November 22, 2019 claims that the court lacks the authority to order the submission of documents and information relevant to issues the court must decide and to whether Masiz has complied with the injunction against him are unmeritorious. In addition, he has not satisfied the standards for extending the stay pending appeal.

Masiz reportedly did, as ordered, provide the documents and information at issue to the Securities and Exchange Commission ("SEC"). There is no justification for Masiz's refusal to submit the documents and information for the court's consideration, and to do so on the public record.

Therefore, unless the First Circuit otherwise orders, Masiz is being ordered to file, by January 30, 2020, for the public record, the documents and information he was first ordered to file

by September 12, 2019, and later ordered to file by November 22, 2019.

II.  PROCEDURAL HISTORY

In 2012, the SEC brought this case against BioChemics, Inc. ("BioChemics"), its Chief Executive Officer John Masiz, and others, alleging that material false and misleading statements were made in connection with the sale of BioChemics' securities. This was not the first time Masiz was accused of fraud in the sale of securities.

In 2004, the SEC accused Masiz of fraud in connection with the sale of securities of Vaso Active Pharmaceuticals, Inc. ("Vaso"). Masiz, without admitting liability, agreed to a judgment against him that required that he pay an $80,000 civil penalty and not serve as an officer or director of a publicly traded company for five years. See Final Judg. as to Deft. J. Masiz, SEC v. Vaso Active Pharm., Inc., No. 04-cv-01395-RJL (D.D.C. Sept. 13, 2004), Dkt. No. 5.  Masiz was also permanently enjoined from violating federal securities laws.  See id.

In the instant case, in 2015, BioChemics agreed not to contest liability and to pay a substantial judgment against it.  The court rejected the first proposed judgment submitted by the SEC because it questioned whether BioChemics had the means to pay what the court determined would be an almost $18,000,000 judgment and

because the SEC had not attempted to assure BioChemics could pay it. See Mar. 18, 2015 Hr'g Tr. 5:10 (Dkt. No. 139).

The parties subsequently jointly presented a revised proposed consent judgment that required that BioChemics pay $17,897,884 to the SEC in six installments within the next twelve months, with the first payment due no later than seven months after the entry of judgment. See Docket No. 121. After a hearing, on March 25, 2015, the court entered that judgment. See Suppl. Judg. (Dkt. No. 123).

BioChemics timely made the first required payment of $750,000. BioChemics did not, however, make any of the additional required payments. The SEC informed the court that BioChemics, with Masiz as CEO, had transferred to third parties all of the assets it previously had to satisfy the judgment. See Jan. 27, 2016 Hr'g Tr. 12 (Dkt. No. 174). Nevertheless, the SEC joined BioChemics in requesting that the court provide BioChemics another twelve months to pay the judgment. In a settlement agreement providing for a Modified Judgment, BioChemics agreed to give the SEC a first-priority security interest in its assets, and to cause an entity that BioChemics had created called the Shareholder Resolution Trust (the "Trust"), and Inpellis, Inc. ("Inpellis"), to give the SEC a first-priority security interest in their assets. The court entered the Modified Judgment on May 25, 2016. See Docket No. 202. The settlement agreement was not submitted to the

4

court until June 5, 2017 and, therefore, was not available to the public when the Modified Judgment was entered. See Docket No. 307-1. The parties' April 14, 2016 joint memorandum in support of the proposed Modified Judgment did not indicate that the lien the SEC would obtain on the assets of Inpellis, which was not a party in this case, would severely prejudice existing creditors of Inpellis. See Docket No. 197-2.

Inpellis had been a subsidiary of BioChemics which held a world-wide, royalty-free license to use BioChemics' intellectual property. In 2015, BioChemics transferred its shares in Inpellis to the Trust, in what the SEC suggests was a fraudulent conveyance or at least a conveyance without consideration. See Jan. 27, 2016 Tr. 14:17-15:3 (Dkt. No. 174). BioChemics subsequently transferred to Inpellis ownership of its intellectual property in exchange for the $750,000 BioChemics used to make the first payment on the judgment in this case.[1]

Inpellis had raised money to finance an Initial Public Offering ("IPO") of its stock. Among other investors, ADEC Private Equity Investments, LLC ("ADEC"), in 2015, loaned Inpellis

---

[1] As Inpellis had a world-wide license to use BioChemics' intellectual property for free, questions have been raised concerning whether ownership of the intellectual property had any value to Inpellis and, in any event, whether it was worth $750,000. There is, therefore, a question of whether the payment by Inpellis of $750,000 was a fraudulent conveyance made to benefit BioChemics.

$3,000,000 to finance the IPO. The SEC was investigating Inpellis for possible fraud in connection with the proposed IPO. That investigation was terminated when the SEC received its first-priority security interest in the assets of Inpellis, and Inpellis abandoned its pursuit of the IPO without informing its creditors.

In May 2017, ADEC moved for relief from the Modified Judgment after Inpellis defaulted on its obligations to pay ADEC, and ADEC learned Inpellis had given a first-priority security interest in its assets to the SEC and was no longer pursuing an IPO. See Mot. for Relief (Dkt. No. 275). ADEC alleged that it had loaned Inpellis $3,000,000 to finance an IPO in reliance on Inpellis' representation that Inpellis was no longer affiliated with BioChemics. See Mem. Supp. Mot. for Relief 3-4 (Dkt. No. 276); see also Ross Decl. ¶¶ 4-5 (Dkt. No. 277) (Inpellis represented it "[was] not an affiliate of BioChemics"); Clarke Decl. ¶¶ 5-8 (Dkt. No. 278) (stating board of directors of Inpellis had not approved the grant of the security interest to the SEC). ADEC also alleged that the Inpellis grant of the first-priority security interest in its intellectual property to the SEC was a fraudulent conveyance, and that the SEC was complicit in it because the SEC had terminated its investigation of the proposed Inpellis IPO only after it received that security interest. See Mem. Supp. Mot. for Relief 4-6 (Dkt. No. 276).

On June 15, 2017, the court granted summary judgment for the SEC on its claims that Masiz was negligent in making material false and misleading statements in the offering and selling of BioChemics securities. See June 15, 2017 Hr'g Tr. 60:14-18 (Dkt. No. 323); June 15, 2017 Order ¶ 1 (Dkt. No. 319). The court scheduled a further hearing to address whether it should grant the SEC's motion for summary judgment on the issue of whether Masiz made those fraudulent representations intentionally. Id.

Prior to that hearing, the SEC and Masiz reported that they had reached an agreement to resolve the case against him. They asked the court to refrain from ruling on the remainder of the SEC's motion for summary judgment. See Docket No. 339. The court did so.

On August 18, 2017, the court entered the parties' jointly proposed Final Judgment as to Defendant John J. Masiz. See Docket No. 345. Among other things, Masiz admitted negligently making false and misleading material misrepresentations and agreed to pay a $120,000 fine. He also agreed to another injunction prohibiting him from violating federal securities laws and, if he solicited any investment in the future, to disclose his history with the SEC.

More specifically, the Final Judgment states, in part, that:

## I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a)(2) and (a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (a)(3)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(b) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## II.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from providing information to, soliciting, or accepting investments or funds from, any investor or potential investor regarding the offer or sale of any securities issued by any entity that Defendant directly or indirectly owns, controls, consults for, or is employed by, without first providing such person with the following written disclosure regarding Defendant's prior regulatory history, and keeping a written record that he provided such written disclosure to that person:

"I, John Masiz, make the following disclosure concerning my regulatory history:

8

1.  <u>SEC v. Vaso Active Pharmaceuticals, Inc. and John Masiz</u>, No. 04-cv-1395-RJL (D.D.C.).

*See* SEC Litigation Release No. 18834, dated August 17, 2004, with additional statement, that is attached hereto.[2]

2.  <u>SEC v. BioChemics, Inc., et al.</u>, No. 12-cv-12324-MLW (D. Mass.).

On December 14, 2012, the Commission filed a lawsuit against BioChemics, Inc., Masiz, and two others, charging them with securities fraud in violation of Section 10(b) of, and Rule 10b-5 under, the Exchange Act and Section 17(a) of the Securities Act. <u>See</u> <u>SEC v. BioChemics, Inc. et al.</u>, No. 12-12324-MLW (D. Mass.). On 8/18/18 the Commission dismissed the claims against Masiz under Section 10(b) of, and Rule 10b-5 under, the Exchange Act and Section 17(a)(1) of the Securities Act. The remainder of the Commission's claims against Masiz were resolved by Settlement entered as a Final Judgment on 8/18/17. Pursuant to this Final Judgment, Masiz admitted that he violated Sections 17(a)(2) and (a)(3) of the Securities Act. The Final Judgment enjoined Masiz from future violations of these provisions, prohibited Masiz from acting as an officer or director of a public company, and ordered him to pay a $120,000 civil penalty. The Final Judgment also enjoined Masiz from providing information to, soliciting, or accepting investments or funds from, any investor or potential investor regarding the offer or sale of any securities issued by any entity Masiz directly or indirectly owns, controls, consults for, or is employed by, without first providing this written disclosure and keeping a written record that he provided this disclosure to that person."

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], Defendant is prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Securities Exchange Act of 1934 ("Exchange Act") [15

---

[2] The SEC Litigation Release No. 18834, dated August 17, 2004, is attached to this Memorandum as Exhibit A.

U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

Id. §§ I-III (emphasis added).

In summary, Masiz was accused of making fraudulent statements in the sale of Vaso securities, paid an $80,000 penalty to settle that charge, and was permanently enjoined from making fraudulent statements in any future solicitation of investments. This court subsequently found, in effect, that Masiz violated that injunction by at least negligently making material misrepresentations in connection with the offering and selling of BioChemics' securities. The court did not decide whether Masiz had made those misrepresentations intentionally. The court did, however, issue another injunction prohibiting Masiz from making fraudulent statements in connection with soliciting investments. It also ordered Masiz to make full disclosure to any potential investor of that injunction, the charges against him and the penalties imposed on him in the Vaso and BioChemics cases, and directed Masiz to keep a written record of each required disclosure.

Despite being afforded additional time to attempt to do so, by October 2018 BioChemics had been unable to find a buyer for its intellectual property and, therefore, had paid only about $1,000,000 of the almost $18,000,000 judgment against it, which was accruing interest. See Pl. Status Rpt. 1 (Dkt. No. 420). Therefore, on October 9, 2018, on motion of the SEC, the court

appointed a receiver for BioChemics.  See Docket No. 452.  The Receiver was given "exclusive jurisdiction and possession of all [BioChemics] property," id. ¶ 1, and directed to "marshal, pursue, and preserve the Receivership Assets with the objective of maximizing the recovery of assets," id. ¶ 2.

On July 31, 2019, the Receiver moved for approval of a process to sell BioChemics' intellectual property.  See Mot. for Approval of Bidding Procedures ¶ 13 (Dkt. No. 542).  The Receiver proposed an auction that would start with a bid to sell BioChemics' assets to BioPhysics Pharma, Inc. ("BioPhysics") for $17,500,000, with $4,000,000 to be paid in cash at closing.  See Receiver's Mot. for Sale 1 (Dkt. No. 541).  The Receiver characterized BioPhysics as a company owned and controlled by Masiz that was formed in June 2017.  See Mot. for Approval of Bidding Procedures ¶ 13 (Dkt. No. 542); ADEC Opp'n to Mot. for Sale 15 (Dkt. No. 548).  It reportedly occupies Inpellis' former lab space and employs former employees of Inpellis, including Inpellis' chief scientist.  See Sept. 5, 2019 Hr'g Tr. 60:13-19 (Dkt. No. 563); ADEC Opp'n to Mot. for Sale 15; Dec. 19, 2018 Inpellis Creditors Mtg. Tr. 111:16-22, 112:3-4, 113:12-15, 114:21-115:1, 135:12-20 (Dkt. No. 548-4).

At a September 5, 2019 hearing, the court raised questions about the proposed "auction."  More specifically, it questioned what, if anything, the Receiver had done to determine whether BioPhysics had $4,000,000.  It also questioned whether Masiz was

being held out as an officer or director of BioPhysics; whether Masiz had played a role in raising money for BioPhysics; whether Masiz had made the disclosures to potential investors required by the judgment against him in this case; whether Masiz had maintained the required written record of any such disclosures; and whether BioPhysics intends to raise money publicly in a manner that could implicate the judgment against Masiz. See Sept. 5, 2019 Hr'g Tr. 7 (Dkt. No. 563). As the court was not satisfied with the responses to these questions, it denied without prejudice the Receiver's request to sell BioChemics' intellectual property in an auction, Docket Nos. 541, 542, 543, at which it was foreseeable that BioPhysics, controlled by Masiz, would likely be the only bidder. See Sept. 5, 2019 Hr'g Tr. 87-88 (Dkt. No. 563); Sept. 6, 2019 Order ¶ 2 (Dkt. No. 559).

In view of Masiz's history, including the court's finding that Masiz had in essence violated the injunction in the Vaso case by negligently making material false and misleading statements in raising money for BioChemics, ADEC's charges that fraud had been committed in raising money for an Inpellis IPO, and that, as the controlling shareholder of BioChemics, Masiz had engineered a fraudulent conveyance by Inpellis of its intellectual property to secure the SEC's judgment against BioChemics, the court was concerned that if Masiz had successfully participated in raising $4,000,000 for BioPhysics, he may have failed to make the

12

disclosures to investors required by the judgment against him, and that any such misconduct might be continuing. Therefore, on September 6, 2019, the court ordered that:

> Defendant John Masiz shall, by September 12, 2019, file an affidavit providing: (a) a list of investors and potential investors from whom he has solicited funds for BioPhysics Pharma, Inc. or any other entity since the entry of Final Judgment on August 18, 2017; (b) the written disclosure that he provided to each investor and potential investor he solicited; and (c) the contemporaneous written record of such disclosures required by Section II of the Final Judgment as to Defendant John J. Masiz (Dkt. No. 345). The SEC shall, by September 19, 2019, review Mr. Masiz's affidavit and report whether it believes Mr. Masiz has complied with the relevant requirements of the Final Judgment.

Sept. 6, 2019 Order ¶ 5 (Dkt. No. 559).

On September 12, 2019, Masiz filed a brief affidavit. He did not, as ordered, file a list of actual or potential investors he had solicited for BioPhysics, the written disclosure provided to each, or any contemporaneous records of such disclosures. See Docket No. 562-1. Nor did Masiz request relief from the order that he do so. However, on September 16, 2019, Masiz moved to file under seal the required documents, which he represented had been delivered to the SEC. See Docket No. 565. He stated that the SEC assented to the motion to seal. See id. Masiz did not, however, file an affidavit or memorandum in support of the motion to seal as required by Rule 7.1(b)(1) of the Local Rules of the United States District Court for the District of Massachusetts.

On September 19, 2019, the SEC reported that it had received the documents Masiz had been ordered to file. See Docket No. 566. It stated that: Masiz had participated in 80 solicitations of investments in BioPhysics; Masiz represented that the required written disclosures had been provided directly to potential investors 73 times; in the other seven instances the disclosures were included in a drop box linked to an email, which for the SEC "raised concerns that an important written disclosure like that required by the final judgment could be buried by simply providing a link to a much larger collection of documents . . . ." Id.

In a November 5, 2019 Order, the court questioned whether the sealing belatedly requested by Masiz was justified in view of the common law presumption that the public should have access to documents upon which a court relies in determining the substantive rights of litigants "and in performing its adjudicatory function." Dkt. No. 574 (citing and quoting FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987)). As the court explained, "[p]ublic access is particularly appropriate where, as here, the government is a party." Id. at 2. Therefore, "'[o]nly the most compelling reasons can justify non-disclosure of judicial records,' and the burden of proof is on the party seeking confidentiality." Id. (quoting Standard Fin. Mgmt. Corp., 830 F.2d at 410-11). "Although certain justifications such as the protection of documents subject to attorney-client privilege or

privacy rights 'can limit the presumptive right of access to judicial records,' Ark. Teacher Ret. Sys. v. State Street Bank & Tr. Co., 391 F. Supp. 3d 167, 169 (D. Mass. 2018) (quoting Standard Fin. Mgmt. Corp., 830 F.2d at 411), even selective sealing 'must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" Id. (quoting United States v. Kravetz, 706 F.3d 47, 60 (1st Cir. 2013)).

The court noted that Masiz had not filed the affidavit or memorandum in support of the motion to seal required by the Local Rules. See id. Nor had he articulated any reason why evidence concerning whether he had complied with the disclosure requirements of the judgment against him, which consists of documents provided to third parties, should not be part of the public record. See id. Nevertheless, the court provided Masiz an opportunity to attempt to do so.

More specifically, on November 5, 2019, the court ordered that, by November 14, 2019:

> 1.  Masiz shall either (a) file a statement that sealing of the evidence of compliance is no longer requested and file a full, unredacted copy of the evidence of compliance for the public record; or (b) file an affidavit and memorandum in support of the request to seal his evidence of compliance which, among other things, addresses the fact that the evidence contains material that was disclosed to third parties.
>
> 2.  If Masiz wishes to maintain his motion to seal the evidence of compliance, Masiz shall both (a) file a redacted version of the evidence of compliance for the public record, and (b) submit to the court a full,

unredacted copy of the evidence of compliance, which shall be sealed, at least temporarily, to preserve its confidentiality if the sealing of it proves to be justified.

Id.

Masiz did not respond to that order by November 14, 2019. Rather, on November 15, 2019, Masiz filed a "Notice" "request[ing] the court's temporary indulgence" because "he believed the parties had entered into an agreement as to how the parties should proceed regarding filings in this and other matters." Dkt. No. 578. In a November 20, 2019 Order, the court stated that "[i]t is axiomatic that the parties do not have the authority to alter court orders by agreement." Dkt. No. 579. Moreover, Masiz had still not filed a memorandum or affidavit in support of the motion to seal. Nor had he, as ordered, filed even redacted versions of the required documents for the public record. Because the court intended to decide whether Masiz had complied with the disclosure requirements of the Final Judgment, and because there is a "presumed common law right of public access to information on which judicial decisions are made," id., the court ordered that:

> 1.    By November 22, 2019, Masiz shall file on the public record a full, unredacted copy of all of the evidence on which he relies in representing that he has complied with his obligations under §II of the Final Judgment.
>
> 2.    Any failure to comply with this Order may be deemed a civil and/or criminal contempt.

Id.

On November 21, 2019, Masiz filed a motion to stay for 45 days proceedings relating to ADEC because they had agreed to mediation of their dispute. See Docket No. 580. He also filed an "Emergency" Motion to extend the November 22, 2019 deadline for the filings required by the November 20, 2019 Order so he could focus on settling the dispute with ADEC. See Docket No. 581. Masiz requested leave to make the required submissions seven days after the mediation was completed. See id. Finding that "the issue of whether Masiz has complied with the requirements of the Final Judgment is independent of the dispute between ADEC and Masiz," the court promptly denied Masiz's request for an extension. See Docket No. 582.

Masiz did not make the required filings on November 22, 2019. Rather, on that day, Masiz filed the Emergency Motion requesting a stay of the order that he make filings for the public record "while Masiz immediately applies to a single justice of the 1st Circuit Court of Appeals" for relief. Dkt. No. 584. Masiz argued for the first time that the court lacks the authority to order, sua sponte, the submission of documents relevant to whether he has complied with the judgment against him and that requiring such documents be filed for the public record would be an impermissible penalty in the form of "public shaming" of him. Id. at 2, 5.

Later on November 22, 2019, while expressing doubt that Masiz's appeal would be found meritorious, the court stated it

would consider Masiz's arguments, which could and should have been made in response to the September 6, 2019 Order. <u>See</u> Docket No. 586. Therefore, the court stayed temporarily Masiz's obligation to make the submissions required by the November 19, 2019 Order. <u>See</u> <u>id.</u>

Also on November 22, 2019, Masiz filed an "Emergency Notice of Appeal" of the orders at issue. <u>See</u> Docket No. 585. According to the First Circuit docket, he has not requested any action by a single judge of the First Circuit or any other action on his appeal. <u>See</u> <u>SEC v. Masiz</u>, No. 19-2206 (1st Cir. filed Nov. 22, 2019).

On January 14, 2020, the Receiver reported that after a mediation on December 16, 2019, BioChemics and ADEC had not settled their dispute. <u>See</u> Docket No. 589. The Receiver also reported that he had not identified a potential purchaser for BioChemics' intellectual property other than BioPhysics and is considering the best way to auction that asset. <u>See</u> <u>id.</u> Therefore, the court expects to receive soon a renewed motion to approve an "auction" of BioChemics assets in which it is foreseeable that BioPhysics would be the only bidder.

III. ANALYSIS

A. The Claim that the Court's Orders Exceed its Authority is Unmeritorious.

The court has considered Masiz's belated contentions in his November 22, 2019 Emergency Motion that the court lacks the authority to order, sua sponte, that he file evidence relevant to whether it should authorize a process that would result in a sale of BioChemics' assets to BioPhysics and to whether Masiz has complied with the judgment against him.[3] Those contentions are incorrect and unpersuasive.

The documents that Masiz has been ordered to file relate to the Receiver's recently reiterated interest in selling BioChemics' assets to BioPhysics and decisions the court will have to make concerning the "auction" that will be proposed. Masiz and BioChemics repeatedly represented that BioChemics would pay almost $18,000,000, plus interest, to satisfy the judgment against

---

[3] As indicated earlier, the arguments Masiz made for the first time on November 22, 2019 could and should have been made in response to the September 6, 2019 Order and subsequent orders. Arguments made only in a perfunctory manner may properly be denied. See, e.g., United States v. Zannino, 895 F.3d 1, 17 (1st Cir. 1990); De Giovanni v. Jani-King Int'l, Inc., 968 F. Supp. 2d 447, 450 (D. Mass. 2013); Coopersmith v. Lehman Bros., Inc., 344 F. Supp. 2d 783, 790 n.5 (D. Mass. 2004); Pacamor Bearings, Inc. v. Minebea Co., Ltd., 892 F. Supp. 347, 355 n.8 (D.N.H. 1995). For months, Masiz made no arguments at all to support his refusal to obey the court's orders. The court could have denied his requests for relief on this ground alone. Nevertheless, it has analyzed the arguments made by Masiz on November 22, 2019, and finds them to be without merit.

BioChemics and never did.    The documents that Masiz has been
ordered to produce relate, among other things, to whether
BioPhysics has $4,000,000 to purchase BioChemics' assets.    If it
does not, allowing the Receiver to pursue a process expected to
result in the sale of BioChemics' assets to BioPhysics at an
auction would be a time-consuming, costly, and ultimately futile
exercise.

    If BioPhysics has $4,000,000 to consummate a purchase of
BioChemics' assets, it will be prudent and appropriate for the
court to consider how these funds were obtained and whether they
can properly be used to acquire BioChemics' intellectual property.
The SEC reports that Masiz states that he participated in 80
solicitations of funds for BioPhysics.    This court found that he
at least negligently violated the 2004 injunction in the Vaso case
by making fraudulent misrepresentations in raising money for
BioChemics.    In addition, Masiz may have caused fraudulent
conveyances to occur in transferring BioChemics' intellectual
property to Inpellis and later causing Inpellis to give the SEC a
first-priority security interest in intellectual property
BioChemics claimed was owned by Inpellis.    There is, therefore,
reason to question whether Masiz made the disclosures required by
the judgment against him in raising, or attempting to raise, money
for BioPhysics.    The fact that the SEC has reviewed the documents
Masiz refuses to provide to the court and expressed concern about

the adequacy of only some of his disclosures to potential investors is not sufficient to resolve these questions as the court has in this case at times disagreed with the SEC, and ADEC has raised issues concerning the propriety of the SEC's own conduct.

If money was raised improperly by Masiz, or was raised for purposes other than acquiring BioChemics' assets, it is important that this be discovered before the funds are used by BioPhysics to purchase those assets. The alleged misapplication of funds lent by ADEC to Inpellis for an IPO, and alleged fraudulent conveyance of Inpellis' assets to pay part of the judgment against BioChemics have spawned complicated and expensive litigation. The court wishes to minimize the risk that this will recur.

In addition, as the Supreme Court has stated, "a federal court [has] inherent power to enforce its judgments." Peacock v. Thomas, 516 U.S. 349, 356 (1996). "Consent decrees [such as the consent judgment in the instant case] are subject to continuing supervision and enforcement by the court. '[A] court has an affirmative duty to protect the integrity of its decree.'" Berger v. Heckler, 771 F.2d 1556, 1568 (2d Cir. 1985) (citation omitted). Therefore:

> "[B]ecause a district court has a significant administrative interest in securing compliance with its orders, it 'may take such [remedial] steps as are appropriate . . . .' And, though a court cannot randomly expand or contract the terms agreed upon in a consent decree, judicial discretion in flexing its supervisory and enforcement muscles is broad.

> Where equitable remedies which exceed the confines of
> the consent decree are reasonably imposed in order to
> secure compliance of the parties, the court has not
> overstepped its bounds, and its orders must be obeyed.

EEOC v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental

Ironworkers, 925 F.2d 588, 593 (2d Cir. 1991) (quoting Berger, 771

F.2d at 1569).[4]

---

[4] The cases mentioned by Masiz in his First Circuit docketing statement are distinguishable from the instant case. See Docketing Statement 4, SEC v. Masiz, No. 19-2206 (filed Nov. 25, 2019) (Dkt. No. 00117520272).

Ricci v. Patrick, 544 F.3d 8 (1st Cir. 2008), involved a district court's decision to reopen a case and modify the consent decree by issuing new remedial orders following an investigation into whether the Commonwealth of Massachusetts had complied with a consent decree. See id. at 11. "The district court's authority to investigate [ ] allegations of violation [was] not at issue." Id. In Ricci, the court's final order closing the case had allowed for re-opening of the case only upon fulfillment of specified conditions, none of which had occurred. See id. at 13-14. The Supreme Court case on which Ricci relies similarly involved a final order in which the district court did not retain general jurisdiction to enforce the settlement. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 376-77 (1994). Neither Ricci nor Kokkonen is comparable to the instant case, as the Final Judgment against Masiz states that "this [c]ourt shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment." Final Judg. § VII (Dkt. No. 345).

Kokesh v. SEC, 137 S. Ct. 1635, 1645 (2017), and SEC v. Liu, 754 F. App'x 505, 509 (9th Cir. 2018), cert. granted, Liu v. SEC, 205 L. Ed. 2d 265 (U.S. Nov. 1, 2019) (No. 18-1501), are also inapposite. Each concerned the court's equitable power to order disgorgement of profits. In Liu, the Supreme Court will consider whether a disgorgement penalty can properly be imposed pursuant to the judicial equitable power. In both cases, the disgorgement remedies at issue were imposed by a court over the petitioner's objection. See Kokesh, 137 S. Ct. at 1641 (disgorgement judgment entered following jury trial on liability); Liu, 754 F. App'x at 507 (disgorgement judgment entered at resolution of case upon summary judgment). These cases are distinguishable because the question in the instant case concerns whether Masiz has complied

Therefore, it is permissible and appropriate for the court to have issued its orders and the required documents must be filed.

B.  **The Claim that Masiz's Response to the Court's Orders Should be Sealed Is Unmeritorious.**

The documents at issue have also been properly ordered to be filed on the public record. The court recognizes that Masiz has represented, without contradiction, that the SEC has assented to the sealing of them. However, again, the SEC's conduct is also subject to question in this case. For example, as described earlier, the court refused to approve the SEC's initial proposed judgment against BioChemics because the SEC had failed to assure that there was a reasonable prospect that BioChemics would be able to pay it. In addition, ADEC has raised a meaningful question concerning whether the SEC colluded with BioChemics in what may have been a fraudulent conveyance of a first-priority security interest in Inpellis' assets that has harmed ADEC and other creditors.

As explained earlier, there is a common law presumption that the public should have access to judicial records, meaning documents that are filed and play a part in the process of adjudication. See Standard Fin. Mgmt. Corp., 830 F.2d at 408. "Public access to judicial records and documents allows the

---

with the terms of a consent decree to which Masiz agreed to settle the case and avoid adjudication of serious allegations.

citizenry to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system. The appropriateness of making court files accessible is accentuated in cases where [as here] the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." Id. at 410 (internal quotation and citation omitted). Therefore, while "the public's right to access is not absolute . . . only the most compelling reasons can justify non-disclosure of judicial records." Id. (internal quotation and citation omitted).

In this case, placing in the public record the disclosures that Masiz represents he made to potential investors in BioPhysics is particularly important. As described earlier, the failure of BioChemics and the SEC to inform the court, and therefore the public, that the first-priority security interest in Inpellis' assets given to the SEC to benefit BioChemics would severely prejudice its creditors prompted ADEC to seek relief from the Modified Judgment when it belatedly discovered that transaction. Anyone solicited by Masiz should have the opportunity to review the disclosures claimed to have been made to him or her, and to present promptly to the court any disputes concerning whether they were properly made before the court relies on Masiz's representations in decisions it must make.

Masiz, however, argues that the public filing of the disclosures he made to potential investors would be an unjustified form of "public shaming" that would not protect investors, but would make Masiz a "pariah in the marketplace." See Docket No. 584-1, at 3. This contention is unconvincing. The description of both Masiz's alleged and demonstrated violations of federal securities laws that he is required to disclose are in the judgment and, therefore, already in the public record. Therefore, the public filings Masiz has been ordered to make will not divulge any confidential information or any information injurious to Masiz that is not already available to the public.

If the required disclosures have indeed been made to potential investors, the public filing of them will provide them with no disparaging information about Masiz that they do not already have. However, if public filing does provide them with additional information, that will serve to protect potential investors. As explained earlier, the SEC reports that Masiz represents that in seven instances he made the required disclosures by providing them in a drop box linked to an email, which also contained other documents. Therefore, potential investors may not have known about the disclosures and read them. Accordingly, there is reason to be concerned that at least some potential investors did not receive, in proper form, the information Masiz was required to disclose. Public filing may rectify that problem and give any actual

investors, particularly, information that may be material concerning how they wish to proceed. If, as Masiz suggests, the information in the public filings causes others to be wary of doing business with Masiz, the judgment will have served its intended purpose of assuring that potential investors are provided material information concerning Masiz as they decide whether to invest with or in him.

It is not clear whether Masiz is claiming that public filing of the disclosures he made to private investors would violate their personal privacy interests. The court recognizes that the privacy interests of third-parties can limit the presumptive right of public access to judicial records. See United States v. Kravetz, 706 F.3d 47, 62 (1st Cir. 2013); Standard Fin. Mgmt. Corp., 830 F.2d at 411. However, Masiz does not claim that he promised potential investors confidentiality. In any event, he did not have the authority to do so. In addition, if the disclosures required by the judgment were made, a reasonable potential investor would have realized that his or her communications with Masiz might become public in litigation concerning whether Masiz had performed as ordered and, therefore, would not have had a reasonable expectation of privacy.

In any event, as explained earlier, the burden is on Masiz to prove that sealing is justified. See id. at 410-11. Even selective sealing "must be based on a particular factual

demonstration of potential harm, not on conclusory statements."
Kravetz, 706 F.3d at 60 (quoting Standard Fin. Mgmt. Corp., 830
F.2d at 412). Masiz has not satisfied his burden of proving that
complete sealing of the documents he has been ordered to file, or
the filing of redacted versions of them, are justified.

In summary, it was permissible and appropriate for the court
to issue its orders, and to require that Masiz's submissions in
response to those orders be on the public record. He is,
therefore, again being ordered to file the required documents and
information on the public record.

C.   The Motion for a Further Stay Is Unmeritorious.

As described earlier, Masiz filed his Emergency Motion for a
stay pending an immediate appeal on November 22, 2019. See Docket
No. 584. He asked that the court stay its orders directing the
public filing of evidence that he had made the disclosures required
by the judgment against him in soliciting potential investors for
BioPhysics "while Masiz immediately applies to a single justice of
the 1st Circuit Court of Appeals." Id. at 1.[5] The First Circuit
docket indicates that Masiz has not requested relief from a single

---

[5] In his supporting memorandum, Docket No. 584-1, Masiz added
that he was requesting an extension of time to respond to the
Orders until seven days after the completion of the ADEC mediation.
See id. On January 14, 2020, the Receiver informed the court that
the mediation concluded unsuccessfully on December 16, 2019. See
Docket No. 589.

judge of the First Circuit, or done anything to expedite or advance his appeal in the almost two months that this court has stayed its orders. The question, therefore, is whether a further stay should be granted pending appeal.[6]

As this court has previously written:

> The Supreme Court has stated that the factors regulating the issuance of a stay pending appeal "are generally the same" for a district court and for a court of appeals. Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). These factors are:
>
> > (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

---

[6] The court assumes, without finding, that the November 20, 2019 order directing Masiz to file on the public record the documents he provided to the SEC is an appealable order under the collateral order doctrine. The collateral order rule permits appeal where the appellant demonstrates "that an order (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." Will v. Hallock, 546 U.S. 345, 349 (2006) (internal citations omitted). The First Circuit has interpreted the second prong of the Will test to require that the appeal involve "an important and unsettled question of controlling law, not merely a question of the exercise of the trial court's discretion." U.S. Fid. & Guar. Co. v. Arch Ins. Co., 578 F.3d 45, 55 n.15 (1st Cir. 2009) (emphasis added) (internal quotation marks and citation omitted). As explained below, Standard Financial Management, supra, settled the sealing question Masiz presents, and reiterated that a district court's sealing decision is reviewed "only for abuse of discretion." 830 F.2d at 411. Therefore, it is questionable whether the First Circuit will find that the collateral order rule applies. The First Circuit, however, must decide that issue.

proceeding; and (4) where the public interest lies.

Id.

The first prong of this test has not been interpreted or applied literally, even by the Courts of Appeals. Rather, it has been held that:

> on motions for stay pending appeal the movant need not always show a "probability of success" on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.

Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981) (citing Providence Journal Co. v. Federal Bureau of Investigation, 595 F.2d 889, 890 (1st Cir. 1979) ("Where . . . the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay.")) See also Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986); 11 Wright, Miller & Kane, Federal Practice and Procedure § 2904, at 503 & n.11 (2d ed. 1995 & Supp.1997).

When the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on appeal. Rather, with regard to the first prong of the Hilton test, the movant must only establish that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear. See Exxon Corp. v. Esso Worker's Union, Inc., 963 F. Supp. 58, 60 (D. Mass. 1997); Gay Lesbian Bisexual Alliance v. Sessions, 917 F. Supp. 1558, 1561 (M.D. Ala. 1996); Mamula v. Satralloy, Inc., 578 F. Supp. 563, 580 (S.D. Ohio 1983); Evans v. Buchanan, 435 F. Supp. 832, 844 (D. Del. 1977).

Canterbury Liquors & Pantry v. Sullivan, 999 F. Supp. 144, 149-52

(D. Mass. 1998).

Masiz has satisfied the second prong of the <u>Hilton</u> test.  If required to file on the public record the disclosures that he was required by the judgment to make in connection with soliciting potential investors for BioPhysics, the harm done to him will be substantially irreversible if this court's directives are ultimately found to be erroneous.  See <u>Standard Fin. Mgmt. Corp.</u>, 830 F.2d at 407.  However, Masiz has failed to satisfy any of the three other prongs of the <u>Hilton</u> test and the interests they address outweigh the risk of unjustified irreparable harm to him.

Masiz's appeal does not present any serious legal issue.  As explained earlier, the court has reason to question whether Masiz has made the disclosures required by the judgment, and it has the authority to order Masiz to submit to it the documents necessary to resolve that question.  See <u>Peacock</u>, 516 U.S. at 356; <u>Local 580</u>, 925 F.2d at 593; <u>Berger</u>, 771 F.2d at 1568.

In addition, as also explained earlier, the documents Masiz has been ordered to file for the public record are relevant to whether the court should approve the renewed request the Receiver reports he is preparing to make for an "auction" in which BioPhysics will almost certainly be the only bidder.  In 1987, the First Circuit characterized some of the issues concerning sealing presented in <u>Standard Financial Management</u> as "somewhat novel." 830 F.2d at 407.  However, those issues were in that case settled based on the strong common law presumption of public access to

records on which judicial decisions are made, particularly where, as here, the conduct of the government -- the SEC -- is an issue. Id. at 410. The First Circuit has applied those principles in subsequent cases. See, e.g., Kravetz, 706 F.3d at 60-62 (presumption applies to sentencing memoranda and sentencing letters); Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 70-72 (1st Cir. 2011) (district court did not err in unsealing trial records where organization had "failed to make a compelling case" that the privacy rights of third parties mentioned in its submissions outweighed the presumption of public access).

A further stay will impede the Receiver's progress and the delay will likely result in the dissipation of the assets he has been ordered to marshal for the benefit of BioChemics' creditors. BioPhysics is, realistically, the only potential buyer for BioChemics' assets and has offered to pay at least $4,000,000 for them. In view of its long history with BioChemics and Masiz in this case, the court is unwilling to approve a process that will lead to a sale of BioChemics' assets to BioPhysics without proof that BioPhysics has funds necessary to make the required payment. In addition, the court has found, in effect, that Masiz violated the injunction in Vaso that prohibited him from making material false and misleading representations in soliciting investments. If BioPhysics has raised $4,000,000, or any other substantial sum, the court wants to be reasonably assured that Masiz did not in

soliciting that violate the comparable injunction in the judgment against him in this case, including by failing to make the required disclosures to potential investors. Masiz's repeated refusal to provide the necessary documents to the court is, therefore, injuring the ability of the Receiver to conclude his work and thus injuring BioChemics' creditors.

The public interest will not be served if this case is further stayed and delayed. If the court determines that Masiz has made the disclosures required by the judgment, the case will proceed -- hopefully to a final conclusion. If the submissions that the court has ordered raise questions, the court will act promptly to address them. If the court determines that Masiz has violated the injunction in this case, the public interest will be served by the orders the court will enter to end such violations.

In view of the foregoing, the Emergency Motion to stay is being denied. However, the court is providing Masiz until January 30, 2020 to attempt to obtain a stay from the First Circuit.

IV.  ORDER

Accordingly, it is hereby ORDERED that:

1.  The Emergency Motion (Dkt. No. 584) is DENIED and the temporary stay ordered on November 22, 2019 (Dkt. No. 586) is LIFTED.

2.  Unless otherwise ordered by the First Circuit, Masiz shall, by January 30, 2020, file on the public record a full,

unredacted copy of all of the evidence on which he relies in representing that he has complied with his obligations under §II of the Final Judgment. Such evidence shall include: (a) a list of investors and potential investors from whom he has solicited funds for BioPhysics Pharma, Inc. or any other entity since the entry of Final Judgment on August 18, 2017; (b) the written disclosure that he provided to each investor and potential investor he solicited; and (c) the contemporaneous written record of such disclosures required by Section II of the Final Judgment as to Defendant John J. Masiz (Dkt. No. 345).

UNITED STATES DISTRICT JUDGE