UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>      Plaintiff,<br><br>v.<br><br>BIOCHEMICS, INC., JOHN J. MASIZ, CRAIG MEDOFF and GREGORY S. KRONING,<br>      Defendants. | CIVIL ACTION NO. 12-12324-MLW |

## RECEIVER'S SIXTH QUARTERLY STATUS REPORT
## FOR QUARTER ENDING MARCH 31, 2020

Mark G. DeGiacomo, the court-appointed receiver of Biochemics, Inc. and the Shareholder Resolution Trust (the "Receiver") hereby files this Quarterly Status Report for the quarter ending March 31, 2020.

### RELEVANT BACKGROUND

1. On June 28, 2018, the plaintiff, Securities and Exchange Commission ("SEC") filed a motion to appoint a receiver (Dkt. No. 423) of defendant Biochemics, Inc. ("Biochemics") and its related party, the Shareholder Resolution Trust.

2. On October 9, 2018, the Court entered an Order (Dkt. No. 452) granting the SEC's Motion and appointed the Receiver (the "Receiver Order").

3. The Receiver Order requires that "[t]he Receiver shall assume control of all Receivership Assets." Receiver Order ¶ 2. "Receivership Assets" are defined by the Receiver Order as "all property of whatever kind and wherever situated, of defendant Biochemics, Inc., as well as property of the Shareholder Resolution Trust in which the Commission has first-priority security interests." Receiver Order ¶ 1.

4. The Receiver Order requires the Receiver to file a "full report and accounting of the Receivership Assets" within 30 days after the end of each calendar quarter (the "Quarterly Status Report"). Receiver Order ¶ 48. The Receiver Order further identifies specific categories of information the Receiver shall provide. Each of those categories is set forth below.

5. This Quarterly Status Report covers the period from January 1, 2020 to March 31, 2020 (the "Reporting Period").

**A. Summary of Receiver's Operations**

6. In his Fifth Quarterly Report that was filed on January 14, 2020, the Receiver reported that his counsel attended and participated in ADEC's Rule 2004 examinations of John Mazis, Jan Schlichtmann and Dr. Zhu (the "Examinations) and that after the Examinations were conducted, BPI and ADEC proposed that all outstanding issues concerning the intellectual property owned by BioChemics and/or the Inpellis, Inc. bankruptcy estate be submitted to mediation.

7. The Receiver also reported that on December 16, 2019, a day long mediation session was conducted by former bankruptcy Judge Joan Feeney of JAMS. The mediation session was attended by the Receiver, the Receiver's counsel, Trustee John Aquino (the "Trustee"), the Trustee's counsel, John Masiz, Attorneys Jan Schlichtmann, Jeffrey Sternklar, Howard Cooper, Joseph Cacace, and the principal of ADEC, Burke Ross.

8. Finally, the Receiver reported that the mediation was not successful and that during the mediation it became clear to the Receiver that, at least in the near term, BPI had little or no intention to buy BioChemic's intellectual property (the "Intellectual Property") by way of a private sale.

9. During the three months covered by this Report a substantial amount of time was spent by all of the parties, including the SEC and ADEC, to arrive at an agreement pursuant to which BPI would purchase the Intellectual Property, and the intellectual property owned by Biochemics, by private sale.

10. BPI has recently advised the Receiver that due to the economic realities brought on by the COVID-19 pandemic, it is unable to go forward with any private offer.

11. No other potential buyer has been identified. The Receiver and the Trustee have agreed to sell the intellectual property owned by both estates at a public auction. Motions to Approve this joint public sale are being drafted and will be filed with both this Court and the Bankruptcy Court in the near future.

12. Pending the sale of the Intellectual Property, the Receiver is paying of all fees and expenses necessary to maintain and preserve the Intellectual Property.

**B. Cash On Hand / Administrative Expenses**

13. The Receiver received $441,305.23 from this Court's registry and he also received $4,145.03 that had been subject to a state court trustee process (the"Funds"). Prior to November 14, 2019, the Receiver was also holding: (a) $100,000 deposit from BPI which was earmarked to be paid to the Gordian Group upon its employment as investment banker and; (b) a $200,000 deposit from BPI on the Asset Purchase Agreement it executed with the Receiver (the "Deposits").

14. After the entry of this Court's order of September 5, 2019 which denied the Receiver's motions in connection with the sale of the Intellectual Property to BPI, BPI requested the return of its Deposits but it agreed to allow the Receiver to retain $100,000 to pay for the maintenance of the Intellectual Property (the "IP Maintenance Funds").

15. The Receiver presently has cash on hand in the amount of $246,665.60 (not

including the IP Maintenance Funds). The only disbursements to date have been made to pay the Receiver's allowed Fee Applications and to pay the costs related to the maintenance of the Intellectual Property. To the best of the Receiver's knowledge, no administrative expenses have accrued other than the fees and expenses for the services of the Receiver and his Retained Professionals, as described in the following paragraphs.

16. *Administrative Expenses*: During the Reporting Period, the Receiver has incurred expenses for the services of the Receiver and his attorneys, Murtha Cullina LLP. These amounts are subject to the hold back guidelines established in the Receiver Order. *See* Receiver Order ¶ 59. Pursuant to the requirements of the Receiver Order, the Receiver and his attorneys have submitted (or will soon be submitting) their sixth quarterly fee application to the Court for review. No fees will be paid without Court approval.

17. Pursuant to the authority granted by this Court on October 25, 2018, the Receiver also employed Verdolino & Lowey ("V&L") as his accountants.

18. V&L has done little or no work as of the date of this Application.

19. *Expenses for Maintenance of Biochemics Intellectual Property*: On March 5, 2019, this Court entered an Order granting the Receiver's Motions to Employ Sunstein, Kann Murphy & Timbers, LLP and Nields, Lemack & Frame, LLC, as special intellectual property counsel (the "IP Firms") to preserve and maintain the Biochemics intellectual property. The fees incurred by the IP Firms during the Reporting Period were paid, until November 14, 2019, by BPI pursuant to an agreement between BPI and the Receiver. Since November 14, 2019, the Receiver has used the IP Maintenance Funds to pay the IP firms.

**C. Receipts and Disbursements**

20. As set forth herein, the Funds are the only monies received to date in this

Receivership (other than the Deposits).  The Receiver has made no disbursements of the Funds other than to pay the Receiver's allowed fee applications and the costs to maintain the Intellectual Property.

### D. Description of Known Receivership Assets Including Approximate or Actual Valuations

21.    The Receiver is not aware of other Biochemics assets that have meaningful value other than the Intellectual Property.  The Receiver believes that the value of the Intellectual Property will be determined through a sale procedure to be approved by this Court.

### E. Description of Liquidated and Unliquidated Claims Held by Receivership

22.    The Receiver is currently investigating what (if any) claims he holds against third parties.

### F. List of Series E Investors with Amounts of Investment and Other Known Creditors

23.    The list of Series E Investors and Creditors provided to the Receiver by Biochemics (and subsequently updated) is set forth in the attached Exhibit A.

### G. Status of Proceedings Relating to Investors' Or Creditors' Claims

24.    The claims filing and review procedure has not begun.  It is anticipated that the claims filing and review procedure will start once the Intellectual Property is sold at which point it will be clear if any dividend will be available to general unsecured creditors.

## H.  Receiver's Recommendations for Continuation of Receivership

25. The Receiver recommends that the Receivership be continued to allow the liquidation of the Intellectual Property, enable the Receiver to administer any other assets and enable the Receiver to make a distribution to creditors.

Respectfully submitted,

/s/ Mark G. DeGiacomo
Mark G. DeGiacomo, Receiver
Murtha Cullina, LLP
99 High Street, 20th Floor
Boston, MA 02110
(617) 457-4000 Telephone
Date:  April 13, 2020          (617) 482-3868 Facsimile
mdegiacomo@murthalaw.com

10673795v1