UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>       Plaintiff,<br><br>v.<br><br>BIOCHEMICS, INC., JOHN J. MASIZ, CRAIG MEDOFF and GREGORY S. KRONING,<br>       Defendants. | CIVIL ACTION NO. 12-12324-MLW |

## RECEIVER'S MOTION FOR THE ENTRY OF AN ORDER APPROVING [PROPOSED] PLAN FOR DISTRIBUTION

### INTRODUCTION

Mark G. DeGiacomo, the duly appointed receiver of this receivership estate (the "Receiver") hereby moves this Court for the entry of an Order approving his Plan for Distribution which is detailed herein.

In connection therewith, the Receiver says:

1. On December 14, 2012, the Securities and Exchange Commission ("SEC") commenced this litigation which alleged that the defendants violated certain sections of the Securities Act and the Exchange Act in connection with raising funds from so called Series E investors (the "Complaint").

2. On March 17, 2015 and August 18, 2017, this Court entered judgments in favor of the SEC (Dkt. No. 108 and 345).

3. On May 25, 2016, this Court granted a joint motion by the SEC and the defendant BioChemics, Inc. ("BioChemics") to enter a modified judgment against BioChemics as the result of a negotiated settlement. (Dkt. No. 201, 202 (Modified Judgment)). Part of the parties' settlement, as they informed the Court, involved Biochemics granting a first priority security

11262013v1

interest to the SEC in assets belonging to BioChemics and certain related entities, incuding Biochemics' intellectual property. See Dkt. No. 197-2 at 2.

4. On June 28, 2018, the SEC filed a Motion to Appoint a Receiver (Dkt. No. 423) for Biochemics and its related party, the Shareholder Resolution Trust.

5. On October 9, 2018, the Court entered an Order (Dkt. No. 452) granting the SEC's Motion and appointed the Receiver (the "Receiver Order"). The Receiver's services commenced that day.

6. The Receiver Order requires that "[t]he Receiver shall assume control of all Receivership Assets." Receiver Order ¶ 5. "Receivership Assets" are defined by the Receiver Order as "all property of whatever kind and wherever situated, of defendant Biochemics, Inc., as well as property of the Shareholder Resolution Trust in which the Commission has first-priority security interests." Receiver Order ¶ 1

7. The Receiver has completed the liquidation of the assets in the receivership estate.

8. Paragraph 52 of the Receiver Order provides as follows:

> Once some or all of the receivership assets have been liquidated, the receiver should propose to the court a plan to use those funds to satisfy, in whole or in part, the modified judgment and to distribute those funds to the harmed BioChemics Series E investors. Such a plan may also propose to distribute any excess funds to creditors of BioChemics and/or the Trust, or to return any excess funds to them if all creditors' claims have been satisfied.

9. As of the date of this Motion, the Receiver is holding the amount of $76,153.69 (the "Liquidation Proceeds").

10. On January 12, 2021, this Court entered an Order allowing the SEC's Motion to Establish a Fair Fund and Direct the Transfer of Funds to the Court-Appointed Receiver for Distribution (the "Fair Fund Motion"). The Fair Fund Motion sought authority to turnover to the

Receiver the amount of approximately $906,183.91 which is made up of civil penalties and funds disgorged by the defendants as well as interest on those funds (the "SEC Funds").

11. The sum of the Liquidation Proceeds and the SEC Funds, $76,153.69 constitutes the distribution fund (the "Distribution Fund").

12. The Receiver now respectfully submits this Distribution Plan to the Court to distribute the Distribution Fund to the Administrative Creditors (as defined below) and the Series E investors who were harmed by the underlying conduct as determined by the Court in this action. (the "Eligible Investors").

13. This Distribution Plan sets forth the method and procedures for distributing the Distribution Fund. The Receiver proposes to distribute the Distribution Fund to the Administrative Creditors and the 120 Eligible Investors.

A. **DEFINITIONS**

As used in this Distribution Plan, the following definitions shall apply:

14. **"Days"** shall mean calendar days, unless specified otherwise.

15. **"Receiver"** shall mean Mark G. DeGiacomo, the duly appointed receiver of this receivership estate.

16. **"Distribution Plan"** shall mean this distribution plan as approved by the Court.

17. **"Eligible Investors"** shall mean the 120 investors determined by the Receiver to be eligible for a distribution from the Distribution Fund, and as provided in Exhibit A hereto.

18. **"Distribution Fund"** means all funds received or otherwise collected by the Receiver, including Liquidation Proceeds, which are in satisfaction of the Defendants' ordered disgorgement, prejudgment interest, and civil penalty amounts in this matter, plus accrued interest thereon. Additional amounts which are collected or otherwise received by the Commission in connection with this matter will be added to the Distribution Fund.

11262013v1

19. **"Harm Amount"** is defined as the amount of actual harm the Eligible Investors suffered as a result of Defendants' conduct, reduced by any monies received by an Eligible Investor as reimbursement, settlements, insurance, interest or principal payments on their investments, or other payments in connection with this matter from Defendants, or any other third party. Such investors whose Harm Amount is a positive number are eligible to receive a payment. The Receiver has determined the Harm Amount for each Eligible Investor, as set forth in the attached Exhibit A.

### B. GENERAL ADMINISTRATIVE PROCEDURES

20. All determinations of the Receiver that are made in accordance with the provisions of this Distribution Plan are final and not subject to appeal.

21. To carry out the purposes of the Distribution Plan, the Receiver is authorized to make immaterial adjustments, in consultation with the SEC, to the Distribution Plan, consistent with the purposes of the Distribution Plan. Material adjustments, however, must be approved by the Court.

22. All fees and expenses incurred in the administration of the Distribution Plan, as well as any federal, state, or local taxes payable in connection with the Distribution Plan, shall be paid out of the Distribution Fund.

23. The Receiver does not currently anticipate being able to collect or otherwise receive additional funds beyond what has been collected to date, however, in the event that additional funds are received in this matter, the Receiver may, but is not required to, make adjustments to the Distribution Plan as necessary, where those funds may be deposited into the Distribution Fund, and distributed in accordance with the Distribution Plan.

## C. DISTRIBUTION PROCEDURE

24. As part of the Distribution Plan, the Receiver requests that the following administrative creditors (the "Administrative Creditors") be paid in the amount listed or the amount agreed to by the Receiver prior to the issuance of a distribution to Eligible Investors:

| | |
|---|---|
| Verdolino and Lowey, P.C. (Accountant) | $ not greater than $7,500[1] |
| Sunstein, Kahn, Murphy & Timbers, LLP (Special IP Counsel) | $27,256.77 |
| Final Fee Application | $86,628.00[2] |
| Taxes | $    600.00[3] |

25. On November 13, 2020, this Court entered an Order in connection with the sale of the intellectual property owned by BioChemics and Inpellis, Inc. which authorized, among other things, the assignment by the buyer to the Receiver and the trustee of the Inpellis bankruptcy estate of the claims held by the buyer's related entities, Latimore Properties, Inc. and John and Mark Family Limited Partnership, to receive dividends as Eligible Investors from the receivership estate. This Order also fixed the total of the dividends to be distributed to these related entities at $250,000. This amount ($250,000) is to be transferred by the Receiver to the trustee of the Inpellis bankruptcy estate as a portion of the purchase price for the intellectual property owned by the Inpellis bankruptcy estate. As a result, the amount of $250,000 will be subtracted from the Distribution Fund before dividends are calculated for Eligible Investors and Lattimore Properties, Inc. and John and Mark Family Limited Partnership will not be considered Eligible Investors when calculating the Loss Ratios.

---

[1] Verdolino & Lowey are preparing the 2020 tax returns for the receivership estate. Once these returns are complete an invoice for no more than $7,500 will be forwarded to the Receiver.
[2] The Final Fee Application has been filed concurrently with this Motion.
[3] This is the best estimate at this time.

26.     The remaining amount of the Distribution Fund will be distributed pro rata among the Eligible Investors based upon the calculations as set forth in Exhibit A.

27.     As soon as practicable after the filing of this motion, the Commission staff will post this motion, the attachment which sets forth each Eligible Investor's Loss Ratio (defined below), and information about how to comment or object to the proposed distribution plan, on the Information for Harmed Investors page of the Commission's public website: https://www.sec.gov/divisions/enforce/receiverships.htm and the Receiver will send a notice to each Eligible Investor by U.S. Mail, email, or other transmittal means at the Receiver's discretion that contains the link to that website and informs investors to check that website for updates.

28.     Any person wishing to comment on or object to the Distribution Plan must do so in writing by filing their comments or objections with the Court within 21 days of the filing of this motion. The Court will then consider any comments or objections in determining whether to grant this motion and approve the Distribution Plan.

29.     Any objection filed by an Eligible Investor must clearly explain his or her objection to the Distribution Plan and must provide all relevant supporting documentation to the Clerk of the Court for the United States District Court for the District of Massachusetts, with copies to the Judge and the Receiver. A failure to properly and timely object to the Distribution Plan shall permanently waive the potential Eligible Investor's right to object. The burden of proof in any objection shall be upon the potential Eligible Investor.

30.     To the extent that the Receiver believes it is necessary to file a reply brief in response to any objections or comments to this motion or the Distribution Plan, he shall file such a reply brief with the Court 14 days after the last of such objections or comments are filed

with the Court. General information about filing with the Court can be obtained from the Court's website at https://www.mad.uscourts.gov/caseinfo/cmecf-general.htm. Questions may be directed to the Receiver at the following:

> Mark G. DeGiacomo, Receiver
> Murtha Cullina, LLP
> 99 High Street, 20th Floor
> Boston, MA 02110

31. The Court shall retain jurisdiction over the Distribution Plan and the effectuation thereof.

### D.  METHODOLOGY FOR DETERMINING DISTRIBUTION AMOUNTS

32. The Receiver has determined each Eligible Investor's Loss Ratio by referring to the information collected by the SEC staff regarding Eligible Investors' Harm Amounts. Biochemics provided the SEC with the list of all Eligible Investors and the amounts they invested. The SEC has provided this list to the Receiver. The Receiver has determined that each Eligible Investor's investment equals the Eligible Investor's Harm Amount.

33. Since the total Harm Amounts of all Eligible Investors exceeds the Distribution Fund, funds available after the payment of Administrative Creditors will be distributed to all Eligible Investors on a *pro rata* basis. The Receiver has calculated each Eligible Investor's *pro rata* share by dividing each Eligible Investor's Harm Amount by the total Harm Amount of all Eligible Investors (shown as Loss Ratio in the attached Exhibit A).

34. In the view of the Receiver, this methodology constitutes a fair and reasonable allocation of the Distribution Fund.

E. **PAYMENT TO ELIGIBLE INVESTORS**

35. The Receiver shall make payments by check to each Eligible Investor. All Distribution Fund payments to Eligible Investors shall be accompanied by a communication that includes, as appropriate:

   a. a statement that the tax treatment of the distribution is the responsibility of each Eligible Investor and that the Eligible Investor should consult his or her tax advisor for advice regarding the tax treatment of the distribution;

   b. a statement that checks are valid for 120 days; and

   c. the name of a person or entity to contact, if the Eligible Investor has any questions regarding the distribution.

36. The Distribution Fund checks, on their face, or in the accompanying communication, shall clearly indicate that the money is being distributed from a Distribution Fund established to compensate investors for harm as a result of the Defendants' conduct described in the Complaint.

37. All checks will bear a stale date of 120 days from the date of the check. Checks that are not negotiated by the stale date shall be voided and the issuing financial institution shall be instructed to stop payment on those checks. An Eligible Investor's claim will be extinguished if he, she, or it fails to negotiate his, her, or its check by the stale date, and the funds will remain in the Distribution Fund.

38. To the extent that an Eligible Investor, his or her representative, heir or assign requests a distribution check to be issued or reissued in a different name than the Eligible Investor (e.g. as the result of a name change because of marriage or divorce, or as the result of death), the Receiver shall honor such request upon receipt of documentation which the Receiver in his sole discretion deems appropriate to substantiate the request.

39.  If checks are returned as undeliverable by the USPS, and no new address is provided, the Receiver shall engage in additional efforts to identify new addresses for returned checks, as necessary and economically reasonable.

40.  Where new address information becomes available, the Receiver shall repackage the distribution check and send it to the new address. Where new address information is not available after a diligent search, the check shall be voided and the Receiver shall instruct the issuing financial institution to stop payment on such check.

41.  Under no circumstances shall the SEC, the Receiver or his agents incur any liability to any person if the SEC, the Receiver or his agents make a distribution in accordance with the list of Eligible Investors and their Harm Amounts as set forth in this Distribution Plan approved by the Court. Upon receipt and acceptance by a Eligible Investor of a check from the Distribution Fund, such Eligible Investor shall be deemed to have released all claims that such Eligible Investor may have against the SEC, the Receiver or his or her agents, and shall be deemed enjoined from prosecuting or asserting any such claims.

**F.  ACCOUNTINGS**

42.  The Receiver shall file with the Court a final report when the distribution is completed. The final report submitted to the Court will include a final accounting, in a standardized accounting format provided by the SEC, which shall include, among other things, a final accounting of all monies received, earned, spent, and distributed in connection with the administration of this Distribution Plan.

**G.  DISTRIBUTION FUND TERMINATION**

43.  The Distribution Fund shall be eligible for termination, and the Receiver eligible for discharge, after all of the following have occurred: (a) the final accounting has been submitted by the Receiver for approval, and has been approved by, the Court; and (b) all taxes,

fees, and expenses have been paid. Once the Court approves the final accounting, the SEC will seek an order from the Court to terminate the Distribution Fund, discharge the Receiver, and remit any residual funds, and any future funds received, to the U.S. Treasury.

## H.   REMAINING FUNDS

44. If for any reason funds remain in the Distribution Fund after the completion of the distribution and payment of all taxes and fees and expenses, those funds shall be transferred to the U.S. Treasury after the final accounting is approved by this Court.

WHEREFORE, the Receiver requests the entry of an Order approving his Plan for Distribution.

Respectfully submitted,

/s/ Mark G. DeGiacomo
Mark G. DeGiacomo, Receiver
Murtha Cullina, LLP
99 High Street, 20th Floor
Boston, MA 02110
(617) 451-4000 Telephone
(617) 482-3868 Facsimile

Dated: February 22, 2021

11262013v1