```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE          )    Cv. No. 12-12324-MLW
COMMISSION,                      )
     Plaintiff,                  )
                                 )
          v.                     )
                                 )
CRAIG MEDOFF,                    )
     Defendant.                  )
                                 )
                                 )
                                 )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                     February 12, 2024

In 2012, plaintiff Securities and Exchange Commission ("SEC") filed this case alleging that Biochemics, Inc. ("Biochemics") and three individuals including defendant Craig Medoff participated in a fraudulent scheme to sell Biochemics securities to investors in violation of federal securities laws. It was alleged that Medoff engaged in these activities despite having been previously barred for life from acting as, or associating with, a broker or dealer, and permanently enjoined from violating the antifraud provisions of the federal securities laws. In 1993, in the securities fraud case resulting in that injunction, Medoff was also ordered to pay a $95,000 fine, and to disgorge certain funds. These required payments were not made.

In 1995, Medoff pled guilty to engaging in a criminal conspiracy to commit securities fraud. He was sentenced to three years of probation and ordered to pay a $6,000 fine. Medoff was

incarcerated from 2011 to 2014 for violating his conditions of probation by failing drug tests and not making fine payments. He was in federal prison when this case began.

Pursuant to an agreement between the parties, on May 25, 2016, this court entered a Final Judgment against Medoff that, among other things, enjoined Medoff and "any entity owned or controlled" by Medoff, for a period of 10 years, "from participating in the issuance, offer, or sale of any security." See Final Judgment, Dkt. No. 204 ¶V (Exhibit 1 hereto) (the "Final Judgment"). In addition, the Final Judgment ordered disgorgement and prejudgment interest totaling $14,370.20, and payment of a $100,000 civil penalty. Id. ¶VI.

On September 27, 2023, the SEC moved for an order requiring Medoff to show cause why he should not be held in civil contempt for violating the Final Judgment in a range of ways, including by participating in the sale of securities through the ownership or control of Nova Capital International LLC ("Nova"). See Dkt. No. 735. In support of its motion, the SEC submitted a declaration, exhibits, and a memorandum providing substantial evidence that Medoff had indeed violated the Final Judgment. See Dkt. Nos. 737, 738.

In an October 13, 2023 Order the court stated that the SEC had submitted ample evidence to justify the initiation of civil contempt proceedings. Dkt. No. 741 at 2. The court also wrote that:

2

> [T]he evidence provided by the SEC raises the question of whether it would be appropriate for the court to initiate criminal contempt proceedings instead. In view of Medoff's proven history of violating court orders, conducting proceedings that could only result in another order that could be violated might be futile. Therefore, that civil remedy may be inappropriate and criminal contempt proceedings may be justified. See Shillitani v. United States, 384 U.S. 364, 370 n.9 (1966).

Id.

After discovery was complete, on February 5, 2024, the SEC filed a Status Report (Dkt. No. 781), supplementing earlier reports. In essence, the SEC reported that Medoff had since 2016 controlled Nova and, through it, engaged in the offering and sale of securities in violation of ¶IV of the 2016 Final Judgment. Because an internet search would have revealed Medoff's criminal history and injunctions against him, Medoff used the alias "Alexander Carlin" in connection with his work with Nova. The SEC estimates that approximately $1,800,000 was received by Nova in violation of the 2016 Final Judgment and that the net benefit to Medoff was approximately $1,675,000. Therefore, the SEC expressed its intention to move "for a final order of [civil] contempt as to Mr. Medoff that, among other things, requires a specific dollar amount of disgorgement of fees received by Nova." Id. at 4. The SEC requested four to six weeks to obtain the required authorization to seek disgorgement from the SEC Commissioners.

In a February 7, 2024 Order, the court wrote that "[t]he SEC's February 5, 2024 Status Report suggests that promptly initiating

3

criminal contempt proceedings for the alleged violations of the 2016 Final Judgment by Medoff may be most appropriate for several reasons, including but not limited to the risk that an order of disgorgement if Medoff is held in civil contempt may be futile." Dkt. No. 782 at 2. Therefore, the court ordered the SEC to file a memorandum and affidavit addressing whether Medoff has the ability to pay approximately $1,675,000, or any other substantial sum, if ordered to do so. It also permitted, but did not order, Medoff to do the same. Id.

In its response to the February 7, 2024 Order (Dkt. No. 783), the SEC filed an affidavit stating, among other things, the following. Medoff received about $200,000 annually for work done through Nova from June 2016 through November 2023. Medoff has spent or distributed all of that money. Medoff has a negative net worth. He is a beneficiary of the Lynn Medoff Irrevocable Inter Vivos Trust (the "Trust"), which has approximately $920,000 cash and liquid assets, and pays Medoff about $2,200 a month. Dec. of Kerry A. Vasta (Dkt. No. 783-1), ¶10.[1] However, according to the SEC, "Medoff does not exercise any control or possession of the assets held in the trust and such trust assets are not included in his estimated net worth." Id.

---

[1] In his February 8, 2024 affidavit, Medoff states that he receives $2,500 per month from the Trust. Dkt. No. 784 ¶9.

4

Medoff also filed an affidavit on February 8, 2024. See Dkt. No. 784. In it he states that "I am deeply apologetic to the Court that I failed to comply with the 2016 Final Judgment . . . ." Id. at ¶10. Medoff also states that he has now paid $10,000 toward the disgorgement and civil penalties ordered in that Final Judgment. In addition, Medoff acknowledges that he does not have the "current ability to pay a substantial disgorgement or civil penalty," but states that he is "in the process of arranging three separate revenue streams that, if successful, will enable [him] to pay the disgorgement penalties over time." Id. ¶4.

After a hearing on February 9, 2024, the court concludes that it is permissible and appropriate that Medoff be ordered, pursuant to Fed. R. Crim. P. 42, to show cause why he should not be held in criminal contempt for violating ¶V of the 2016 Final Judgment. Civil and criminal contempt serve different purposes. See United States v. Marquardo, 149 F.3d 36, 39 (1st Cir. 1998). Sanctions for civil contempt, including incarceration, are intended to coerce compliance with an order of the court. Id. Criminal contempt is used to punish disobedience of a judicial order. Id. Criminal contempt seeks vindication of public rights by punishing a defendant for a crime that has already been committed and to deter future violations. Id. at 39-40; see also Yates v. United States, 355 U.S. 66, 75 (1957).

5

The court understands that a "judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate." Shillitani v. United States, 384 U.S. 364, 371 n.9 (1966). This is such a case.

First, holding Medoff in civil contempt would be futile. He evidently does not have the means to pay the $100,000 civil penalty to which he agreed in the 2016 Final Judgment or the $1,675,000 he would likely be ordered to disgorge. Moreover, as several years in prison did not deter Medoff from beginning in June 2016 to violate the May 2016 Final Judgment, the court doubts that another order not to participate in the offer or sales of securities would be obeyed.

Second, and more significantly, there is far more than probable cause to believe that Medoff knowingly, willfully, and repeatedly disobeyed the 2016 Final Judgment. There is, therefore, reason to be concerned that Medoff may continue to present a danger of committing crimes and that his incarceration may be necessary to protect the public. In any event, it is important to the administration of justice to demonstrate that court orders cannot be violated with impunity. If proven, or admitted, a criminal sanction for contempt will be justified to punish Medoff, to protect the public, and to deter him and others from engaging in comparable conduct in the future. See Yates, 355 U.S. at 74.

Because a sentence of more than six-months in prison might be necessary to serve the purposes of sentencing, Medoff is entitled to a jury trial. See, e.g., Codispoti v. Pennsylvania, 418 U.S. 506, 512, 516-17 (1974); Fed. R. Crim. P. 42(a)(3). As the alleged contempt does not involve disrespect or criticism of the judge, this court will preside in the contempt proceedings. Id. The United States Attorney is being appointed to prosecute the alleged contempt. Fed. R. Crim. P. 42(a)(2).

Simultaneous or sequential civil and criminal contempt proceedings arising out of the same facts are permissible. See Marquardo, 149 F.3d at 41. Therefore, the SEC may continue to pursue authorization to move for disgorgement and civil contempt. However, the court intends to resolve the criminal charge before conducting civil contempt proceedings.

In view of the foregoing, pursuant to 18 U.S.C. §401 and Fed. R. Crim. P. 42, it is hereby ORDERED that:

1. Defendant Craig Medoff is charged with knowingly and willfully violating ¶V of the 2016 Final Judgment by engaging in the alleged offer and sale of securities by his conduct related to Nova Capital International LLC.

2. The United States Attorney for the District of Massachusetts is appointed to prosecute this case.

3. Trial will Commence on April 1, 2024, at 9:30 a.m.

4. Pursuant to Fed. R. Cr. P. 46 and 18 U.S.C. §§3142 & 3144, Medoff is released pending a decision concerning whether he should be released on appropriate conditions or detained pending trial.

```
                              _____
                              UNITED STATES DISTRICT JUDGE
```