UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    Plaintiff,<br><br>    v.<br><br>CRAIG MEDOFF,<br>    Defendant. | )<br>)<br>)<br>)<br>) Cv. No. 12-12324-MLW<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

WOLF, D.J.                                                November 27, 2024

I. SUMMARY

The Securities and Exchange Commission (the "SEC") moved that defendant Craig Medoff be found to be in civil contempt for violating the May 25, 2016 Final Judgment against him and ordered to disgorge $1,722,028.59. For the reasons described in this Memorandum the motion is meritorious and is being allowed. However, it is the court's present view that the SEC's Proposed Contempt Order (Dkt. No. 809-1) is inadequate and that the Order now being issued should be amended to include the additional proposed provisions discussed in Section III of this Memorandum. Therefore, the parties are being ordered to, by January 6, 2025, file memoranda and affidavits concerning their respective views on the additional provisions the court proposes including in an amended version of the order now being issued.

II. PROCEDURAL HISTORY

In 2012, the SEC filed this case alleging that Biochemics, Inc. ("Biochemics") and three individuals including Medoff participated in a fraudulent scheme to sell Biochemics securities to investors in violation of federal securities laws. It was alleged that Medoff engaged in these activities despite having been barred in 1995 from acting as, or associating with, a broker or dealer, and in 1993 permanently enjoined from violating the anti-fraud provisions of the federal securities laws. In the securities fraud case resulting in that injunction, Medoff was also ordered to pay a $95,000 fine, and to disgorge certain funds. Those payments were not made.

In 1995, Medoff pled guilty to engaging in a criminal conspiracy to commit securities fraud. He was sentenced to three years of probation and ordered to pay a $6,000 fine. Medoff was incarcerated for about 12 months for violating his conditions of probation by failing drug tests and not paying the fine. He was in federal prison when this case began.

Pursuant to an agreement between the parties, on May 25, 2016, this court entered a Final Judgment against Medoff that, among other things, enjoined Medoff and "any entity owned or controlled" by Medoff, for a period of 10 years, "from participating in the issuance, offer, or sale of any security." See Final Judgment, Dkt. No. 204 ¶V (the "Final Judgment"). In addition, the Final

2

Judgment ordered disgorgement and prejudgment interest totaling $14,370.20, and payment of a $100,000 civil penalty. Id. at ¶VI.

On September 27, 2023, the SEC moved for an order requiring Medoff to show cause why he should not be held in civil contempt for violating the Final Judgment in a range of ways, including by participating in the sale of securities through his ownership or control of Nova Capital International LLC ("Nova"). See Dkt. No. 735. The motion requested an order requiring that Medoff cease violating the Final Judgment, disgorgement of all moneys that Medoff obtained in violation of it, and "[a]n order imposing such other sanctions as the Court deems appropriate, including additional civil penalties to ensure Medoff's future compliance." Dkt. No. 737 at 12. In support of its motion, the SEC submitted a declaration, exhibits, and a memorandum providing substantial evidence that Medoff had indeed violated the Final Judgment. See Dkt. Nos. 737, 738.

In an October 13, 2023 Order the court stated that the SEC had submitted ample evidence to justify the initiation of civil contempt proceedings. Dkt. No. 741 at 2. The court also wrote that:

> [T]he evidence provided by the SEC raises the question of whether it would be appropriate for the court to initiate criminal contempt proceedings instead. In view of Medoff's proven history of violating court orders, conducting proceedings that could only result in another order that could be violated might be futile. Therefore, that civil remedy may be inappropriate and criminal contempt proceedings may be

3

justified. See Shillitani v. United States, 384 U.S. 364, 370 n.9 (1966).

Id.

On February 5, 2024, after discovery was complete, the SEC filed a Status Report (Dkt. No. 781), supplementing earlier reports. In essence, the SEC reported that Medoff had since 2016 owned and controlled Nova and, through it, engaged in the offering and sale of securities in violation of ¶V of the Final Judgment. Because an internet search would have revealed Medoff's criminal history and the injunctions against him, Medoff used the alias "Alexander Carlin" in connection with his work with Nova. At that time, the SEC estimated that approximately $1,800,000 was received by Nova in violation of the Final Judgment and that the net benefit to Medoff was approximately $1,675,000. Therefore, the SEC expressed its intention to move "for a final order of [civil] contempt as to Mr. Medoff that, among other things, requires a specific dollar amount of disgorgement of fees received by Nova." Id. at 4. The SEC requested four to six weeks to obtain the required authorization to seek disgorgement from the SEC Commissioners.

In a February 7, 2024 Order, the court wrote that "[t]he SEC's February 5, 2024 Status Report suggests that promptly initiating criminal contempt proceedings for the alleged violations of the Final Judgment by Medoff may be most appropriate for several reasons, including but not limited to the risk that an order of

4

disgorgement if Medoff is held in civil contempt may be futile." Dkt. No. 782 at 2. Therefore, the court ordered the SEC to file a memorandum and affidavit addressing whether Medoff had the ability to pay approximately $1,675,000, or any other substantial sum, if ordered to do so. It also permitted, but did not order, Medoff to do the same. Id.

As part of its response to the February 7, 2024 Order (Dkt. No. 783), the SEC filed a Declaration of Kerry A. Vasta stating, among other things, the following. Medoff received about $200,000 annually for work done through Nova from June 2016 through November 2023. Dkt. No. 783-1. According to the SEC, Medoff had spent or distributed all of that money and had a negative net worth. Medoff is a beneficiary of the Evelyn Medoff Irrevocable Inter Vivos Trust (the "Trust"), which had approximately $920,000 cash and liquid assets, and paid Medoff about $2,200 a month. Id. at ¶10.[1] Medoff previously informed the court that the trustee is his cousin. See Oct. 23, 2023 Tr. (Dkt. No. 759) at 11, 25, 27; Dec. 1, 2023 Tr. (Dkt. No. 770) at 22; Feb. 9, 2024 Tr. (Dkt. No. 799) at 17. It appears that the Trust provided him the funds necessary to retain counsel in connection with the SEC's September 2023 motion for civil contempt. Id. Nevertheless, the SEC stated that "Medoff does not exercise any control or possession of the assets held in the

---

[1] In his February 8, 2024 affidavit, Medoff stated that he received $2,500 per month from the Trust. See Dkt. No. 784 ¶9.

5

Trust." Dkt. 783-1 at 4. Therefore, the Trust assets were not included in the SEC's calculation of his estimated net worth. Id.

Medoff also filed an affidavit on February 8, 2024. See Dkt. No. 784. In it he stated, "I am deeply apologetic to the Court that I failed to comply with the 2016 Final Judgment . . .." Id. at ¶10. Medoff also stated that he had then paid $10,000 toward the disgorgement and civil penalties ordered in that Final Judgment. In addition, Medoff stated that he did not have the "current ability to pay a substantial disgorgement or civil penalty," but that he was "in the process of arranging three separate revenue streams that, if successful, [would] enable [him] to pay the disgorgement penalties over time." Id. at ¶4. He also stated that he was willing to pay the SEC 20% of his income quarterly in order to do so. Id. at ¶9.

After a hearing on February 9, 2024, the court concluded that it was permissible and appropriate, pursuant to Fed. R. Crim. P. 42, to order Medoff to show cause why he should not be held in criminal contempt for violating ¶V of the Final Judgment. As the court explained, civil and criminal contempt serve different purposes. See United States v. Marquardo, 149 F.3d 36, 39 (1st Cir. 1998). Sanctions for civil contempt, including incarceration, are generally intended to coerce compliance with an order of the court. Id. Criminal contempt is used to punish disobedience of a judicial order. Id. Criminal contempt seeks vindication of public

6

rights by punishing a defendant for a crime that has already been committed and to deter future violations. Id. at 39-40; see also Yates v. United States, 355 U.S. 66, 75 (1957).

Therefore, the court initiated criminal contempt proceedings, alleging that Medoff knowingly and willfully violated ¶V of the Final Judgment by engaging in the offer and sale of securities by his conduct related to Nova. See Dkt. No. 786 at 7-8. In doing so, the court wrote that:

> Simultaneous or sequential civil and criminal contempt proceedings arising out of the same facts are permissible. See Marquardo, 149 F.3d at 41. Therefore, the SEC may continue to pursue authorization to move for disgorgement and civil contempt. However, the court intends to resolve the criminal charge before conducting civil contempt proceedings.

Id. at 7.

After filing many unmeritorious motions, several days before trial Medoff pled guilty to willfully violating ¶V of the Final Judgment. As explained earlier, among other things, the Final Judgment prohibited Medoff from participating in the issuance, offer, or sale of any securities for 10 years. His conduct from 2016 to 2023 relating to Nova, which he owned or controlled, violated that injunction. See May 16, 2024 Tr. (Cr. No. 24-10048, Dkt. No. 153) at 22-24.[2]

---

[2] Citations to docket entries in United States v. Craig Medoff, Criminal No. 24-10048 are preceded by Cr. No. 24-10048. All other references to the docket are to the docket in this civil case.

On August 7, 2024, the court sentenced Medoff to serve 20 months in prison. See Aug. 7, 2024 Tr. (Cr. No. 24-10048, Dkt. No. 183) at 58-72; Aug. 12, 2024 Judgment and Statement of Reasons (Cr. No. 24-10048, Dkt. No. 178). In addition, the sentence included three years of Supervised Release. The first special condition of Supervised Release prohibits Medoff from having any involvement with securities, directly or indirectly. See Aug. 7, 2024 Tr. (Cr. No. 24-10048, Dkt. No. 183) at 58; Aug. 12, 2024 Judgment and Statement of Reasons (Cr. No. 24-10048, Dkt. No. 178) at 5.

The court also ordered Medoff to begin paying a $20,000 fine immediately. See Aug. 7, 2024 Tr. (Cr. No. 24-10048, Dkt. No. 183) at 60; Aug. 12, 2024 Judgment and Statement of Reasons (Cr. No. 24-10048, Dkt. No. 178) at 7. He has not done so.

In the criminal contempt case, the court did not have the authority to order disgorgement of the more than $1,500,000 that Medoff received as a result of violating the Final Judgment. See Aug. 7, 2024 Tr. (Cr. No. 24-10048, Dkt. No. 183) at 7.[3] It noted that it had been told that the SEC would be filing a motion for civil contempt that would request disgorgement of the revenue Medoff received by violating the Final Judgment. Id.

---

[3] As the evidence was insufficient to determine whether any loss had been caused by Medoff's unlawful conduct, the court also did not order restitution.

8

The court stated that Medoff might be able to obtain funds to partially satisfy an order of disgorgement from the Trust. Id. In addition, the court stated that information developed in the criminal contempt case raised questions about whether Medoff was indigent and entitled to counsel that had been appointed to represent him under the Criminal Justice Act ("CJA"). See Aug. 7, 2024 Tr. (Cr. No. 24-10048, Dkt. No. 183) at 71-72.

More specifically, the court noted that in the Financial Affidavit Medoff submitted under oath to obtain CJA counsel he represented that his debts included loans in the amount of $235,500, on which he paid monthly whatever he could. Id. at 72 (discussing Cr. No. 24-10048, Dkt. No. 4). Subsequent submissions ordered by the court revealed that about $207,000 of the "loans" were characterized as debts to Mark Levy. See Cr. No. 24-10048, Dkt. No. 103. Levy is an associate of Medoff's who has, since at least 1993, been involved in Medoff's activities that violated federal securities laws. See Dec. 1, 2023 Tr. (Docket No. 770) at 9, 34. The purported "loans" did not require the payment of interest. See Cr. No. 24-10048, Dkt. No. 103. Medoff claimed there was a promissory note that he could not find. Id. In any event, the "loans" were comprised of payments on credit and debit cards used by Medoff from July 2023 to May 2024. See Dkt. No. 103-1.

In a 2021 application for a loan to Nova, Medoff represented that he was the 90% owner of Nova. See Dkt. No. 737 at 5. Medoff

9

used multiple personal and Nova credit and debit cards. See May 16, 2024 Tr. (Cr. No. 24-10048, Dkt. No. 153) at 69-75. Levy paid Medoff's credit card bills with Nova funds. Id. Levy claims that Nova is now insolvent. See Dkt. No. 773 at 2. However, even if that is true, the court does not know if Levy is holding what were Nova funds for the benefit of Medoff. See Cr. No. 24-10048, Dkt No. 153 at 69-75. At Medoff's sentencing, the court stated that this question was raised by the evidence and, therefore, expressed the hope that the United States Attorney's Office would be serious about trying to collect the fine the court ordered be paid immediately. Id. at 71-72. In response, Medoff shouted, "Ridiculous, just ridiculous. Prove it. Prove it." Id. at 72.

On August 15, 2024, the SEC filed the pending motion asking that Medoff be found to be in civil contempt for violating the Final Judgment and ordered to disgorge $1,549,961 and prejudgment interest in the amount of $222,067.59, for a total of $1,772,028.59. See Dkt. No. 803. The motion was supported by another Declaration of Kerry A. Vasta as well as information provided in prior submissions and proceedings. See id.; Vasta Decl. (Dkt. No. 804-1).

The Vasta Declaration reiterates verbatim four paragraphs of her February 2024 Declaration (Dkt. No. 781). The August 15, 2024 Vasta Declaration did not reference or otherwise acknowledge the questions raised by the court the week before concerning whether

10

the purported debt to Levy is genuine and whether, instead, Levy held, and possibly continues to hold, money of Medoff's generated by his violation of the Final Judgment. Nor did the Vasta Declaration reference: (a) the more than $900,000 held in trust for Medoff by his cousin, some of which was evidently provided to Medoff to retain counsel to respond to the SEC's September 2023 motion for civil contempt; (b) the $2,200 a month Medoff was receiving before his incarceration and may still be receiving; or (c) Medoff's previous plan to pay 20% of his income quarterly to satisfy his obligations to the SEC. Id.

In its memorandum in support of the pending motion, the SEC wrote:

> [T]he SEC submits that there is more than sufficient basis to enter an order finding Medoff in civil contempt of the 2016 Judgment and ordering that he disgorge all monies obtained in violation of provisions of that judgment, totaling $1,549,961, plus prejudgment interest in the amount of 222,067.59. As . . . previously reported to the Court, Medoff currently does not have income or assets to satisfy the disgorgement and prejudgment interest that the SEC requests be ordered. That may or may not change over time, particularly given the term of imprisonment he is serving. If, however, Medoff in the future has the financial wherewithal to pay some or all of those amounts, he should be required to do so. His conduct violating the 2016 Judgment was egregious and long-standing. And lucrative. The requested monetary sanction would hold out the possibility of remedying the financial windfall Medoff received, and hopefully would serve the coercive effect of preventing future violations of the 2016 Judgment.

Dkt. No. 804.

11

If entered, the SEC's proposed order (Dkt. No. 809-1) would direct Medoff to disgorge $1,772,028.59. However, it would not provide any schedule for making payments or a deadline for completing them. Nor if Medoff fails to make the payment ordered by the court would the proposed order require, as the SEC correctly wrote in its memorandum in support of its September 2023 motion for civil contempt, that Medoff "come forward with evidence showing 'categorically and in detail' why he is unable to comply with the court's order. See United States v. Rylander, 460 U.S. 752, 755 (1983)." Dkt. No. 737 at 9.

Also notably absent from the relief now sought by the SEC is a request that the court reinstate a provision of the Final Judgment Medoff violated and order that he not engage, directly or indirectly, in the issuance, offer, or sale of any security for 10 years.

Medoff has not responded to the pending motion. He evidently does not oppose it.

III. DISCUSSION

To prove civil contempt the SEC is required to prove by clear and convincing evidence that: (a) Medoff had notice of ¶IV of the "Final Judgment" that prohibited him from participating in the issuance, offer, or sale of securities for 10 years; (b) the order was clear and unambiguous; (c) Medoff had the ability to comply

with the order; and (d) Medoff violated the order. See Hawkins v. Dept. of Health & Human Serv., 665 F.3d 25, 31 (1st Cir. 2012).

As explained earlier, Medoff admitted each of the required facts in pleading guilty to the charge of criminal contempt for knowingly and willfully violating ¶V of the Final Judgment. See May 16, 2024 Tr. (Cr. No. 24-10048, Dkt. No. 153) at 22-24. In addition, there is overwhelming other evidence that he did so. Therefore, the court concludes that the pending motion for a final order finding Medoff in civil contempt (Dkt. No. 803) is meritorious.

The SEC's request for an order requiring disgorgement of the net revenue Medoff received as a result of violating ¶V of the Final Judgment is also meritorious. Where, as here, the court finds civil contempt has been proven, it has wide discretion in its choice of sanctions. See AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 420, 426 (1st Cir. 2015); Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 77 (1st Cir. 2002). A sanction "reasonably proportionate to the offending conduct" is appropriate. Goya Foods, Inc. v. Wallack Management Co., 344 F.3d 16, 20 (1st Cir. 2003).

In this case, Medoff obtained $1,549,961 in violation of ¶V of the Final Judgment. It is appropriate to order disgorgement in this amount plus $222,067.59 in prejudgment interest, amounting to a total of $1,772,028.59, as the SEC proposes.

However, it is the court's present view that an order requiring disgorgement would not alone be sufficient in the circumstances of this case. Medoff has repeatedly disobeyed such orders in the past. He has not paid any much less all of the $20,000 fine he was ordered to pay immediately as part of his sentence for criminal contempt on August 7, 2024.

The SEC's Proposed Contempt Order would, if entered, provide that the SEC "may enforce the Court's judgment for disgorgement and prejudgment interest by using all collection procedures authorized by law." Dkt. No. 809-1 at 2. However, it appears from the SEC's related Memorandum that it does not intend to take any action to collect on the judgment it is receiving. See Dkt. No. 804 at 6-7. ("[I]f [] in the future Medoff has the financial wherewithal to pay some or all of the [$1,722,028.59], he should be required to do so.").

"[C]ivil contempt sanctions may be imposed with merely notice and an opportunity to be heard." AngioDynamics, Inc., 780 F.3d at 426. Therefore, the court is hereby informing Medoff and the SEC of additional provisions it proposes to include in a final order finding Medoff in civil contempt of ¶V of the Final Judgment.

First, the court proposes ordering that Medoff make the required $1,772,028.59 payment within 90 days of the commencement of his Supervised Release. If Medoff fails to do so, he will have the burden "to come forward with evidence showing categorically

14

and in detail why he is unable to comply." Rylander, 460 U.S. at 755 (internal quotation omitted). Among other things, Medoff will be required to show that he has made in good faith all reasonable efforts to comply. See In re Power Recovery Systems, Inc., 950 F.2d 798, 804 (1st Cir. 1991); Combs v. Ryan's Coal Co., Inc., 785 F.2d 970, 975 (11th Cir. 1986). Medoff will have failed to meet this burden of production if he offers no evidence of his inability to comply or offers only his own denial if the court finds it not credible. AngioDynamics, Inc., 780 F.3d at 427; United States v. Puerto Rico, 642 F.3d 103, 108 n.8 (1st Cir. 2011). This means, among other things, that Medoff and other potential affiants or witnesses may be required to testify and be cross-examined concerning any representations they make or that are made about them. See Rylander, 460 U.S. at 783.

In this case, to satisfy his burden of production Medoff will have to show that he made in good faith all reasonable efforts to persuade the trustee of the Trust holding more than $900,000 for his benefit to provide him those funds in order to satisfy partially the order now being issued. As indicated earlier, the trustee is Medoff's cousin. He evidently complied with Medoff's request for funds to retain counsel to represent him in connection with the SEC's September 2023 motion for civil contempt. If the trustee does not comply with any request by Medoff for additional funds, they may both be required to testify concerning the matter.

15

Similarly, Medoff will be required to produce evidence that Mark Levy, who paid more than $200,000 of Medoff's credit card bills from July 2023 to May 2024, Cr. No. 24-10048, Dkt. No. 103-1, is not holding money that belongs to Medoff or is, in any event, unwilling to assist Medoff in satisfying the disgorgement order now being issued. Levy too may be required to testify.

If Medoff satisfies his burden of production concerning any alleged inability to satisfy the order of disgorgement, the burden of persuasion will shift to the SEC to demonstrate that he is able to pay the required amount. See Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992); Combs, 785 F.2d at 984.

The court also proposes ordering that if Medoff does not make payment in full by the date ordered, he be required to pay the SEC 20% of his income quarterly until the order of disgorgement is satisfied.

Second, the court proposes ordering that Medoff not participate, directly or indirectly, in any activity involving the issuance, offering, or sale of securities, for 10 years from the date of that order. One purpose of a civil contempt sanction is to compensate a party harmed by non-compliance. See Puerto Rico, 642 F.2d at 108; Goya Foods, Inc, 344 F.3d at 20. While the SEC is the plaintiff in this case, its role is to protect the public from the risk of fraud in the sale of securities. In 2016, the Final

Judgment included an order that Medoff not participate in the issuance, offer, or sale of securities for 10 years to provide that protection to the public. Medoff violated that order, as he violated comparable orders in the past. The SEC and the public did not receive the 10 years of protection the order was intended to provide. Ordering Medoff not to participate in the issuance, offering, or sale of securities for 10 years from the date of the order would provide that protection and, in effect, require and coerce Medoff to comply with the Final Judgment in the only manner now possible. See Marquardo, 149 F.3d at 39. It would, therefore, be reasonable and appropriate.

Accordingly, Medoff and the SEC are being ordered to, by January 6, 2025, file memoranda and affidavits concerning their respective views on the foregoing additional provisions that the court proposes to include in an amended version of the following order.

IV. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The Motion by the SEC for Final Order Finding Defendant Craig Medoff in Civil Contempt and Ordering Disgorgement and Prejudgment Interest (Dkt. No. 803) is ALLOWED.

2. Medoff shall pay disgorgement in the amount of $1,549,961, and prejudgment interest in the amount of $222,067.59, for a total of $1,772,028.59.

3. The parties shall, by January 6, 2025, file memoranda and affidavits concerning their respective views on the additional provisions the court proposes including in an amended version of this order.

                                                          _____
                                                          UNITED STATES DISTRICT JUDGE