UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    Plaintiff,<br><br>v.<br><br>CRAIG MEDOFF,<br>    Defendant. | Cv. No. 12-12324-MLW |

MEMORANDUM AND ORDER

WOLF, D.J.                                              April 18, 2025

On November 27, 2024, the court issued a Memorandum and Order (Dkt. No. 812): (a) allowing the Securities and Exchange Commission's (the "SEC") motion for an order finding defendant Craig Medoff in civil contempt for violating the May 25, 2016 Final Judgment in this case that prohibited him from participating in the issuance, offer, or sale of securities for 10 years; and (b) ordering Medoff to disgorge the $1,549,961 he obtained in violation of the Final Judgment plus $222,067.59 in prejudgment interest, amounting to a total of $1,772,028.59.

However, the court found that the SEC's proposed Contempt Order (Dkt. No. 809-1) was inadequate. The court proposed three possible additional provisions, and gave the parties an opportunity to address whether they should be included in the final order and judgment in this case.

More specifically, the court ordered the parties to address: (a) whether Medoff should be ordered to pay the required $1,772,028.59 within 90 days of the commencement of his Supervised Release in the related criminal case in which he was sentenced to serve 20 months for criminal contempt; (b) whether, if he does not timely make that payment, Medoff should be ordered to pay the SEC 20% of his income quarterly until the order of disgorgement is satisfied as Medoff offered to do before the criminal contempt proceeding was initiated; and (c) whether Medoff should be ordered not to participate, directly or indirectly, in any activity involving the offering or sale of securities for 10 years, which was ordered in the 2016 Final Judgment and promptly violated by Medoff operating under an alias.[1]

---

[1] As further briefing was ordered and a judgment was not entered based on it, the November 27, 2024 Memorandum and Order was not an appealable order. See 28 U.S.C. §1291. Nevertheless, on January 24, 2025, Medoff filed a notice of appeal of what he characterized as a "contempt Order dated January 6, 2025" and every other order contained in it. See Dkt. No. 816. The First Circuit docketed the notice of appeal on February 3, 2025. See Court of Appeals Dkt. No. 25-1096. On April 15, 2025, the SEC filed in the First Circuit a motion to dismiss the appeal for lack of jurisdiction based primarily on the fact that the November 27, 2024 Memorandum and Order is not final. See Document 00118272878 at 7-9.

The SEC responded that it agreed that proposals (a) and (c) should be included in the final order and judgment in this case. See Dkt. No. 814. More specifically, it wrote that Medoff should be required to pay the full amount ordered to be disgorged within 90 days of the commencement of his Supervised Release and, if he does not, be required to satisfy his burden of producing evidence showing his inability to pay in the manner required by the Supreme Court and the First Circuit in the cases cited in the November 27, 2024 Memorandum and Order at 14-16. See United States v. Rylander, 460 U.S. 752, 755 (1983); AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 420, 426-27 (1st Cir. 2015); In re Power Recovery Systems, Inc., 950 F.2d 798, 804 (1st Cir. 1991); Combs v. Ryan's Coal Co., Inc., 785 F.2d 970, 975 (11th Cir. 1986); United States v. Puerto Rico, 642 F.3d 103, 108 n.8 (1st Cir. 2011); Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992).

However, the SEC requests that the court not include in the final order and judgment in this case a requirement that if Medoff does not make timely payment of the amount ordered to be disgorged he be ordered to pay the SEC 20% of his income quarterly until the order of disgorgement is satisfied. The SEC states that attempting to monitor orders of this type has proven to be "unduly difficult because they inherently rely on the veracity of the information

3

provided by the Defendant regarding his income." Dkt. No. 814 at 3-4; 814-1, ¶ 6.

In his pro se response to the November 27, 2024 Order (Dkt. No. 815) Medoff opposes inclusion in the final order and judgment in this case of any of the three provisions the court proposed for consideration by the parties. Among other things, Medoff asserts that if he does not comply with the order of disgorgement, the court does not have the authority to require him "to come forward with evidence showing categorically and in detail why he is unable to comply." Dkt. No. 815 at 6, ¶ 21. This is not correct. As the court wrote in the November 27, 2024 Order, at 14-15, the language to which Medoff objects is exactly what the Supreme Court wrote concerning the burden of production in Rylander, 460 U.S. at 755. The burden of production is explained in that Order at pages 15-16. As the court also explained, "[i]f Medoff satisfies his burden of production concerning any alleged inability to satisfy the order of disgorgement, the burden of persuasion [meaning of proof] will shift to the SEC to demonstrate that he is able to pay the required amount." Id. at 16 (citing CFTC, 950 F.2d at 1529; Combs, 785 F.2d at 975).

Medoff also objects to the court's statement in the November 27, 2024 Memorandum and Order, at 15-16, that to satisfy his burden of production Medoff will have to show that he made in good faith a reasonable effort to persuade the trustee of the Trust holding

4

more than $900,000 for his benefit to contribute to satisfying partially the order of disgorgement. Dkt. No. 815 at 7, ¶ 23. However, Medoff states that the trustee, who is his cousin, complied with Medoff's request for $10,000 to retain counsel in this case because attempting to avert the institution of criminal contempt proceedings and a possible prison sentence would be good for Medoff's health and welfare. It is possible that the trustee would also reasonably decide that contributing some or all of the trust funds to settle and finally resolve this case would also serve Medoff's health and welfare.

Similarly, Medoff objects to the court's discussion in the November 27, 2024 Memorandum and Order, at 16, of Mark Levy. In his request for appointment of Criminal Justice Act counsel Medoff represented that Levy had loaned him at least $206,935 to be paid back monthly in whatever amount Medoff could afford. See United States v. Medoff, Cr. No. 24-10048, Dkt. Nos. 4 (unsealed), 103, 121. The "loan" included no provision for interest initially. See Cr. No. 24-10048, Dkt. Nos. 103, 121.[2] After being ordered to report to the court concerning the "loan" Medoff prepared a Promissory Note dated April 30, 2024. See Cr. No. 24-10048, Dkt. No. 121. According to a schedule filed by Medoff on May 14, 2024,

---

[2]The cited documents were unsealed and provided to Probation and the government in connection with Medoff's sentencing. See Dkt. No. 167.

5

the debt to Levy appears to be for credit card and other bills of Medoff's that Levy paid, including payments for numerous purchases Medoff described as "Drizly," "Eurocupid," "Beautcella," "Amazon," "Nordstrums," "Bloomingdales," "Spotify," and "Dentist." See Cr. No. 24-10048, Dkt. No. 103-1. As summarized on pages 9 and 10 of the November 27, 2024 Memorandum and Order, these facts, among others, caused the court at the conclusion of Medoff's sentencing in the criminal case to state that if Medoff did not pay the $20,000 fine that he had been ordered to pay immediately it hoped that the United States Attorney's Office would be serious about trying to determine if Levy was holding Nova funds for the benefit of Medoff. Consistent with this, in the November 27, 2024 Memorandum and Order, at 16, the court wrote that to satisfy his burden of production Medoff will be required to produce evidence that Levy is not holding money that is Medoff's.

In its response to the November 27, 2024 Memorandum and Order, the SEC wrote:

> Should the Office of Collections find evidence that Medoff's failure to pay the judgment constitutes civil contempt because he has the ability to pay and he has not, it will file the appropriate civil contempt motion with the Court and, by virtue of the Court's order, Medoff should have already produced whatever evidence he possesses to demonstrate categorically and in detail why he cannot comply with the Court's Order. Schlutze Declaration, ¶ 6. The Commission anticipates that the parties would then immediately proceed to an evidentiary hearing regarding civil contempt.

6

Dkt. No. 814 at 3 n.1. The SEC's position that the SEC should already have all of the evidence concerning why Medoff might not be able to comply with the order of disgorgement being issued suggests that the SEC is again ignoring the questions concerning Levy that the court raised at Medoff's sentencing and amplified in the November 27, 2024 Memorandum and Order, at 9-10. It also indicates that the SEC does not intend to attempt to determine whether Medoff made a good faith, reasonable effort to persuade the trustee of the Trust for his benefit to contribute some or all of the trust funds to resolve this matter in an agreement satisfactory to the court.

The court expects that, if necessary, the SEC will investigate these issues. In any event, if necessary, the court will explore them in hearings to determine whether Medoff has satisfied his burden of production concerning any asserted inability to pay any or all of the $1,772,028.59 Medoff is being ordered to disgorge.

Having considered the parties' submissions, the court has decided that it will not include in the final order and judgment in this case a requirement that Medoff pay the SEC 20% of his income if he does not timely pay disgorgement in the amount of $1,772,028.59. The court's other two proposed conditions are being included.

Therefore, it is hereby ORDERED that:

1. The Motion by the Securities and Exchange Commission for Final Order Finding defendant Craig Medoff in Civil Contempt and Ordering Disgorgement and Prejudgment Interest (Dkt. No. 803) is again ALLOWED.

2. Medoff shall pay disgorgement in the amount of $1,549,961, and prejudgment interest in the amount of $222,067.59, for a total of $1,772,028.59 to the Securities and Exchange Commission within 90 days after the commencement of his Supervised Release in United States v. Medoff, Cr. No. 24-10048, or 90 days after his release from custody if his sentence in that case is vacated (the "Payment Date").

Medoff may transmit payment electronically to the Securities and Exchange Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the Securities and Exchange Commission website at http://www.sec.gov/about/offices/ofm.htm. Medoff may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to:

>    Enterprise Services Center
>    Accounts Receivable Branch
>    6500 South MacArthur Boulevard
>    Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this court; Craig Medoff as a defendant in this action; and specifying that payment is made pursuant to this order.

Medoff shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Securities and Exchange Commission's counsel in this action. By making this payment, Medoff relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Medoff.

Medoff also shall file with the court, no later than 7 days after the Payment Date, a status report indicating evidence of payment of $1,772,028.59 to the Securities and Exchange Commission or, in the alternative, a statement indicating that the required payment has not been made.

3. If Medoff does not timely make the $1,772,028.59 payment required in paragraph 2 hereinabove by the Payment Date, Medoff shall file with the court within 30 days of the Payment Date evidence showing categorically and in detail why he is unable to make the required payment, including, but not limited to, evidence concerning:

   a) efforts made by him to obtain funds from the Evelyn Medoff Irrevocable Inter Vivos Trust to make all or part of the required payment; and

9

b) whether and to what extent Mark Levy is holding money or assets that belong to Medoff and/or is willing to provide Medoff funds to pay his debt in this case as Levy has paid other debts of Medoff in the past.

If Medoff does not make the $1,772,028.59 payment required in paragraph 2 hereinabove, by the Payment Date, the Securities and Exchange Commission may engage in expedited discovery regarding the non-payment including, but not limited to:

a) efforts made by Medoff to obtain funds from the Evelyn Medoff Irrevocable Inter Vivos Trust to make all or part of the required payment; and

b) whether and to what extent Mark Levy is holding money or assets that belong to Medoff and/or is willing to provide Medoff funds to pay his debt in this case as Levy has paid other debts of Medoff in the past.

4. Medoff, any entity owned or controlled by him, his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are restrained and enjoined for a period of ten years from the date of this order from participating in the issuance, offer, or sale of any security; provided, however, nothing shall prevent Medoff from purchasing or selling securities for his own account.

5. The Securities and Exchange Commission may enforce the court's judgment for disgorgement and prejudgment interest by using all collection procedures authorized by law. The Securities and Exchange Commission shall hold any funds paid pursuant to this order, together with any interest and income earned thereon, pending further order of the court.

                                                                                    _____
                                                                                    UNITED STATES DISTRICT JUDGE